In the United States District Court for the District of Columbia

*Michael F. Wasserman v. Denise Rodacker*

# Case 1:06-cv-01005-RWR

**Plaintiff's Motion for Sanctions for Contentions Made in Support of Defendant's Motion to Dismiss**

# Exhibit A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Criminal Division

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | : | |
| | : | **Case No: D-339-05** |
| **v.** | : | **Closed Case** |
| | : | **Judge Doyle** |
| **MICHAEL F. WASSERMAN** | : | |

## MOTION TO SEAL ALL RECORDS RELATING TO ARREST RECORD

Pursuant to Rule 118 of the Superior Court Rules of Criminal Procedure, Michael F. Wasserman moves this Court for an order (1) directing the United States Attorney to collect all the records from movant's arrest on February 20, 2005, for Assault on a Police Officer and Dog at Large in the files of the United States Attorney's Office, the United States Park Police (USPP) and the Metropolitan Police Department (MPD) or that have been disseminated by USPP or MPD to other law enforcement agencies, and directing that those records be sealed in a properly secured file upon representation to the Court that the records so collected are complete; (2) directing the Attorney General for the District of Columbia to collect all the records from movant's arrest on February 20, 2005, for Assault on a Police Officer and Dog at Large in the files of the United States Attorney's Office and the Office of the Attorney General for the District of Columbia, the USPP or the MPD or that have been disseminated by USPP or MPD to other law enforcement agencies, and directing that those records be sealed in a properly secured file upon representation to the Court that the records so collected are complete; and (3) directing the Clerk of the Superior Court to seal the record of movant's arrest. The movant further requests that the Court make a finding that the supposed offenses did not occur.

In support of this motion, defendant states:

1.      On February 20, 2005, the movant was arrested by Officer Denise Rodacker of the United States Park Police and charged by her with Assault on a Police Officer and Dog at Large.

2.      At movant's first appearance on February 21, 2005, the United States Attorney did not pursue any charge against movant.

3.      The District of Columbia's information against movant was dismissed by the Superior Court of the District of Columbia on May 23, 2005.

4.      This motion is timely filed within 120 days after termination of the movant's prosecution, as contemplated by Sup. Ct. Crim. R. 118 (a).

5.      If this Court finds by clear and convincing evidence that "the offense for which the movant was arrested did not occur or that the movant did not commit the offense," this Court should seal movant's arrest record. See Sup. Ct. Crim. R. 188 (e).

6.      In this case, there is clear and convincing evidence that the movant did not commit a criminal offense. As to the charge of assault of a police officer, under D.C. Code § 22-405(a) (2001), provides for the punishment of one who "without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or inteferes with any officer or member of any police force operating in the District of Columbia while engaged in or on account of the performance of his official duties." The movant's mere failure to comply with Officer Rodacker's requests to answer questions, even if construed as an order to stop, do not constitute an assault. The District of Columbia Court of Appeals has held that a person who ignores a police officer's command to stop, uses abusive language, and walks away from the officer, prior to being placed under arrest, does not violate D.C. Code § 22-405. In re C.L.D., 739 A.2d 353,

357 (D.C. 1999). Nor was movant in this case under arrest until Officer Rodacker physically restrained movant by placing her hand on his shoulder. "Ordinarily, an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer." Mack v. United States, 772 A.2d 813 (2001) (internal quotations and citations omitted); accord, e.g., California v. Hodari D., 499 U.S. 621, 624-25 (1991). After being placed under arrest through physical restraint, the movant did not resist the officer in any way.

7.      On February 20, 2005, Mr. Wasserman was arrested by Officer Denise Rodacker. In the brief encounter (see attached affidavit), Mr. Wasserman refused to comply with Officer Rodacker's request that he answer her questions and continued on his way until Officer Rodacker physically arrested him by placing her hand on his shoulder. Thus, no assault on a police officer was committed in this case.

8.      Although Mr. Wasserman's dogs were not on a leash, that does not constitute a criminal offense under District of Columbia law. As explained in the motion to dismiss filed in this case, the Police Regulation under which the Attorney General charged movant was never validly adopted and, furthermore, if it had ever been in effect was repealed by the enactment of the District of Columbia Animal Control Act of 1979, which provides that permitting a dog to go at large is punishable by a fine only, to be recovered by a summons and complaint, rather than by criminal prosecution (see attached memorandum). Therefore, no crime was committed in this case.

9.      The existence of records of the movant's arrest in this matter serves no valid law enforcement purpose. Records of the arrest of a person for a crime that did not occur could have no potential usefulness in assisting in the prevention of crime or in the apprehension of offenders in the District of Columbia. District of Columbia v. Hudson, 404 A.2d 175, 179 (D.C. 1979) (en

3

banc). It would simply be wrong to draw any inference that the movant was connected with the commission of an offense only because he was arrested in the present case. Id.

10.    For the reasons set forth above, the movant requests that this Court order the movant's arrest records retrieved and sealed. See Sup. Ct. Crim. R. 188 (e); Hudson, 404 A.2d at 179.

WHEREFORE, for these and such other reasons as may appear to the Court, movant Michael F. Wasserman respectfully requests that this Motion to Seal All Records Related to Arrest Record be granted.

Respectfully submitted,

Michael F. Wasserman, *pro se*
1030 South Barton St. No. 279
Arlington, VA 22204
(703) 521-3728

## CERTIFICATE OF SERVICE

This is to certify that I mailed a copy of the foregoing four-page Motion to Seal All Records Related to Arrest Record to the Special Proceedings Division, Office of the United States Attorney for the District of Columbia, 555 Fourth Street, Northwest, Washington, D.C., and to the Office of the Attorney General for the District of Columbia, 441 Fourth Street, Northwest, Washington, D.C. this 20th day of September 2005.

Michael F. Wasserman

4

## MEMORANDUM OF POINTS AND AUTHORITIES ADDRESSING THE FORCE AND EFFECT OF COMMISSIONERS' ORDER NO. 61-1734 (OCT. 12, 1961), CONCERNING THE LEASHING OF DOGS

On October 12, 1961, the former Commissioners of the District Columbia adopted

Order No. 61-1734.[1] Section 2 of the Order, now codified at 24 D.C.M.R. § 900.3,

required all dogs to be leashed while on public space. Section 4 provided a penalty of up

to $300 or imprisonment up to 10 days. *Id.* § 900.9. That regulation is not in force. The

only leash law in effect in the District of Columbia is found in section 9 of the Animal

Control Act of 1979, D.C. Law 3-30, 26 D.C. Reg. 765, *codified as amended* D.C.

Official Code § 8-1808 (2001). That law provides for process consisting of a notice of

---

[1] As printed in 8 D.C. Register 107 (Oct. 30, 1961), the Order reads:

ORDERED:

That, pursuant to the provisions of the Act of Congress entitled "An Act to authorize the Commissioners of the District of Columbia to regulate the keeping and running at large of dogs", approved September 13, 1961 (Public Law 87-227; 75 Stat. 498), Sections 1, 2 and 3 of Article 18 of the Police Regulations of the District of Columbia (1955 ed.) as the said sections now appear in such regulations are hereby reinstated, effective October 13, 1961, said sections reading as follows:

Section 1. No person shall own or keep in the District of Columbia any animal of the dog kind which shall by barking, howling, or in any other manner whatsoever disturb the comfort or quiet of any neighborhood, or any person.

Section 2. No animal of the dog kind shall be allowed to go at large without a collar or tag, as now prescribed by law, and no person owning, keeping or having custody of a dog in the District shall permit such dog to be on any public space in the District, unless such dog is firmly secured by a substantial leash, not exceeding four feet in length, held by a person capable of managing such dog, nor shall any dog be permitted to go on private property without the consent of the owner or occupant thereof.

Section 3. No person owning, keeping or having custody of a dog in the District shall permit such dog to be confined in any yard, or other enclosure, or on any private property, or in any automobile or other vehicle, in such a manner that such dog can bite or menace persons lawfully using any public street, or highway, or public space.

Section 4 of Article 18 of the Police Regulations of the District of Columbia (1955 ed.) is amended to read as follows:

Section 4. Any person violating any provision of Sections 1, 2 or 3 of this Article shall be punished by a fine of not more than $300 or by imprisonment not exceeding 10 days.

By order of the Board of Commissioners, D.C.

G.M. Thornett

Secretary to the Board

violation, specifies a penalty of $25, and gives the defendant the right to post and forfeit collateral. *Id.* §§ 8-1811, 8-1813.

The leash regulation contained in section 2 of the Commissioners' 1961 Order, and now codified at 24 D.C.M.R. § 900.3 is not in force for two reasons. First, it was never validly adopted. On the day the Commissioners adopted the Order, they had no authority to require dogs to be leashed at all times. Consequently, the regulation is void and of no effect.[2]

Second, even if § 900.3 had ever been in effect, it was superseded by the Council's adoption of a leash law in section 9 of the Animal Control Act of 1979, D.C. Official Code § 1808. The Animal Control Act covers the same ground as § 900.3 while imposing a lesser penalty. Under binding precedent, that had the effect of impliedly repealing the earlier Police Regulation adopted by the Commissioners.

## Section 900.3 Is Void Because the Board of Commissioners Adopted It Before They Had Authority to Require That Dogs Be Leashed.

Put simply, the Commissioners jumped the gun in 1961. The background is this: In 1955, the Commissioners adopted a police regulation requiring all dogs to be leashed at all times. A few years later, in a prosecution under the new leash law, a court ruled that the leash regulation conflicted with Congress's 1878 dog control statute, which expressly permitted dogs wearing the required tax-tag to "run at large". Therefore, the Commissioners had exceeded their authority and the leash regulation was void. In 1961, Congress

---

[2] Chapter 9 of title 24 of the District of Columbia Municipal Regulations was compiled by the District of Columbia Office of Documents and Administrative Issuances. Publication in the D.C.M.R. only creates a rebuttable presumption that a regulation was duly adopted. D.C. Official Code § 2-561 (2001).

responded by repealing the statutory impediments and expressly authorizing the Commissioners to adopt a leash regulation. The Act provided that it would go into effect thirty days after its approval. President Kennedy signed it on September 13, 1961. The Commissioners adopted their purported leash regulation on October 12, 1961—the *twenty-ninth* day after the President approved the Act. Because the Commissioners lacked authority to act when they did and the leash regulation has never since been readopted or ratified, the leash regulation is void.

To be sustained, the leash law must be supported by a specific grant of authority to the Commissioners. The leash law now codified at 24 D.C.M.R. § 900.3 was adopted by the board of three Commissioners, who governed the District from 1874 until the advent of home rule in 1975. The basic organic acts of June 20, 1874, 18 Stat. 116, and June 11, 1878, 20 Stat. 102, had constituted the District as a municipal corporation, and established the Commissioners as its governors. The organic Acts, however, gave the Commissioners administrative powers only, reserving to Congress the District's legislative powers. *See, e.g., District of Columbia v. Bailey*, 171 U.S. 161, 175-76 (1898). Therefore, to be sustained, a regulation passed by the Commissioners must be authorized by some particular Act of Congress. "Undoubtedly, the commissioners have such powers only as have been delegated to them by Congress." *Smithson v. District of Columbia*, 42 App. D.C. 184, 185 (1914).

The absence of authority at the time a municipal regulation is adopted renders it a nullity. "Aside from a curative legislative act, the proposition is indisputable that no given ordinance can have force or vitality unless it emanates from power existing in the

- 3 -

municipal corporation *at the time of its adoption*." 5 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 16:8, at 290 (3d ed. 2004 rev.) (footnotes omitted; emphasis added). "An invalid or illegal ordinance is wholly inoperative. It is not made valid by an ordinance continuing in force all existing ordinances until repealed or changed." 6 MCQUILLIN § 20.01, at 3 (3d ed. 1998 rev.). Subsequent "legislation, in order to have a curative effect, 'must name or identify in some way the void ordinance or clearly indicate an intent to validate the ordinance.'" *District of Columbia v. Jones*, 287 A.2d 816, 819 (D.C. 1972) (quoting *State ex rel. Brelsford v. Retirement Board*, 41 Wis.2d 77, 163 N.W.2d 153, 156 (1968)). Moreover, a "regulation beyond the enabling act then in force does not become valid by the subsequent enactment of an enabling act which is broad enough to support a similar regulation if one should be adopted under it." *Commonwealth v. Rivkin*, 329 Mass. 586, 589, 109 N.E.2d 838 (1952); *accord Edwards v. Borough of Moonachie*, 3 N.J. 17, 21, 68 A.2d 744 (1949):

> A subsequent grant of such authority, without more, does not serve to validate the measure. The mere inclusion of the power by legislative amendment does not give legal force to a prior local enactment void ab initio for want of such power. The amendment here is not in terms curative legislation, operating prospectively upon the invalid regulation. The validation of the ordinance was plainly not within legislative contemplation. And its subject matter was not re-enacted by the local legislative tribunal after the adoption of the amendment.

Tested by the foregoing precepts, the leash regulation must fail. Historically, dogs were permitted to run at large:

> [D]ogs [are] a domestic animal which everybody in every place owns and keeps, and suffers to go at large. The custom is almost as old as time, for Tobit had his

dog.[3] The universality of this custom has made the practice lawful, unless where it is interdicted by statute ....

*Olson v. Pederson*, 206 Minn. 415, 420, 288 N.W. 856 (1939) (quoting *Goodman v. Gay*, 15 Pa. 188, 193 (1850)). Thus, at common law, there was no general duty on owners to prevent their dogs from going at large. Restatement (Second) of Torts § 518 cmt. j,[4] *quoted in Jackson v. Mateus*, 2003 UT 18 ¶ 14 n.1, 70 P.3d 78 (Utah 2003); *see also, e.g.*, *Like v. Glaze*, 126 S.W.3d 783 (Mo. Ct. App. 2004) ("Unless forbidden by statute, certain animals, such as dogs, are permitted to run at large.") (citing Restatement); *Van Houten v. Pritchard*, 870 S.W.2d 377, 379-80 (Ark. 1994) (same).

In 1878, Congress formally endorsed the common-law rule in the District when it passed "An Act to create a revenue in the District of Columbia by levying a tax upon all dogs therein, to make such dogs personal property, and for other purposes." Ch. 323, 20 Stat. 173 (June 19, 1878), *reprinted in* 1 Supp. Rev. Stat. 197 (2d ed. 1891). As originally enacted, § 4 of the Act provided, 20 Stat. 174 (emphasis added):

> Any dog wearing the tax-tag hereinbefore provided for *shall be permitted to run at large in the District of Columbia*, and shall be regarded as personal property in all the courts of said District; and any person injuring or destroying the same shall be liable to a civil action for damages, which, upon proof of said injuring or killing may be awarded in a sum equal to the value usually put upon such property by persons buying and selling the same, subject to such modification as the particular circumstances of the case may make proper.

---

[3] *See* Tobit 6:2 and 11:4.

[4] Comment j states:

There are certain domestic animals so unlikely to do harm if left to themselves and so incapable of constant control if the purpose for which it is proper to keep them is to be satisfied, that they have traditionally been permitted to run at large. This class includes dogs ....

It should be noted that "running at large" does not connote merely the condition of not being leashed. A dog may be off leash and yet not "at large":

> The charge or care sufficient to take a case out of the purview of a prohibitory statute does not always imply direct physical power to control the actions of the animals. In some instances moral means are sufficient for the purpose, such as the proximity of the animals, the human voice, gestures, and the like. Whether, in a given case, physical or moral power over the animals is necessary depends on their nature, age, character, habits, discipline, and business or use at the time.

4 AM. JUR. 2d, *Animals* § 50, at 390 (1995). That has been the recognized rule with respect to dogs since at least 1845. *See, e.g., Commonwealth v. Dow*, 51 Mass. (10 Metcalf) 382, 386 (1845); *People v. Noone*, 17 N.Y. Supp. 2d 524, 526, 173 Misc. 259 (City Ct. 1940) (citing AM. JUR. and *Dow*); *Johnston v. Poulin*, 844 A.2d 707 (R.I. 2004) (citing *Dow*).

Between 1874 and 1974, Congress had enacted numerous statutes giving the Commissioners power to make various regulations binding on the public. In 1887 Congress authorized the Commissioners to issue "usual and reasonable police regulations" in eleven enumerated areas. Ch. 49, 24 Stat. 368 (Jan. 26, 1887), *reprinted in* 1 Supp. Rev. Stat. 523 (2d ed. 1891). The seventh paragraph authorized the Commissioners to "*regulate* the keeping and running at large of dogs and fowls." 24 Stat. 369 (emphasis added).

By granting the Commissioners the power to "regulate … the running at large of dogs," Congress did not authorize them to prohibit it entirely. The power to regulate is not the power to prohibit. *Crane v. District of Columbia*, 53 App. D.C. 159, 162, 289 F. 557 (1923); *Perry v. County Board of Appeals for Montgomery County*, 211 Md. 294, 305,

- 6 -

127 A.2d 507 (1956) ("It has often been said by this Court that the power to regulate is not the power to prohibit."); *see also, e.g., Town of Gaithersburg v. Dosh*, 201 Md. 291, 93 A.2d 747, 749 (1953); *Mount Airy v. Sappington*, 195 Md. 259, 262, 73 A.2d 449 (1950); *Peace v. McAdoo*, 110 App. Div. 13, 15, 96 N.Y.S. 1039 (1905).

*Crane* involved a challenge to a police regulation adopted under the 1887 Act. The court observed that of the eleven paragraphs, "seven authorized the commissioners to regulate, two to prohibit, one to regulate or prohibit, and one to prescribe reasonable penalties for the violation of the regulations." 53 App. D.C. at 162. From that choice of language, the Court concluded that the grant of authority in the 1887 Act to "locate" stands for vending on public streets did not confer the power to prohibit such vending.

With respect to the control of dogs, the Commissioners had prior to 1955 observed the distinction between regulation and prohibition. Shortly after the 1887 Act, the Commissioners adopted and published their first set of police regulations in the form of booklet.[5] Section 2 of Article 7 provided, "No animal of the dog kind shall be allowed to go at large without a collar and tag, as now prescribed by law, and if he be of a quarrelsome or dangerous disposition, he shall furthermore be secured by a chain or cord held in the hand of some person accompanying him." *Id.* at 14. The penalty prescribed

---

[5] *Police Regulations in and for the District of Columbia, Made by the Commissioners of Said District, Under and by virtue of the authority and power conferred upon the said Commissioners by, among others, an Act of the Congress of the United States, approved January 26th, 1887, Entitled: "An Act to Authorize the Commissioners of the District of Columbia to Make Police Regulations for the Government of Said District."* (Washington: Judd & Detweilter, Printers, 1887). A copy is in the Washingtonia Collection of the District of Columbia Public Library.

was strictly pecuniary. After 1892, it was fixed at not less than five dollars and not more than twenty dollars; section 2 continued unchanged until 1955.[6]

Meanwhile, in 1902, Congress had amended the 1878 dog tax act to permit dogs in heat to be seized and impounded.[7] Thus, § 4 of the 1878 Act was reenacted to read as follows (additional portion italicized):

> That any dog wearing the tax tag hereinbefore provided for, *except female dogs in heat,* shall be permitted to run at large within the District of Columbia, and *any dog wearing the tax tag hereinbefore provided for* shall be regarded as personal property in all the courts of said District, and any person injuring or destroying the same shall be liable to a civil action for damages, which, upon proof of said injuring or killing, may be awarded in a sum equal to the value usually put upon such property by persons buying and selling the same, subject to such modification as the particular circumstances of the case may make proper.

32 Stat. 547. Thus, with the exception of dogs in heat, Congress retained the express permission for dogs wearing tax tags to run at large.

Notwithstanding those statutes and the long custom to the contrary in the District, in 1955 the Commissioners approved an order which, among other things, amended § 2 to read:

> No animal of the dog kind shall be allowed to go at large without a collar or tag, as now prescribed by law, and no person owning, keeping or having custody of a dog in the District shall permit such dog to be on any public space in the District, unless such dog is firmly secured by a substantial leash, not exceeding four feet in length, held by a person capable of managing such dog, nor shall any dog be permitted to go on private property without the consent of the owner or occupant thereof.

---

[6] *See* Police Regulations of the District of Columbia published 1892 (art. 7, at 12), 1894 (art. 7, at 20), 1896 (art. 7, at 27), 1898 (art. 7, at 31), 1902 (art. 7, at 30), 1906 (art. 7, at 34), 1910 (art. 8, at 47), 1915 (art. 8, at 57), 1921 (art. 8, at 63), 1925 (art. 8, at 91), 1929 (art. 8, at 82), 1933 (art. 18, at 76), 1940 (art. 18, at 104), 1944 (art. 18, at 110), 1955 (art. 18, at 103).

[7] *An Act Relative to the control of dogs in the District of Columbia,* ch. 1332, 32 Stat. 547 (June 30, 1902).

Order No. 55-1183, ¶ 11 (June 28, 1955), printed in 2 D.C. Reg. 3, 4 (July 18, 1955); *see also Police Regulations of the District of Columbia Amended to August 25, 1955*, at 103.

Paragraph 11 of Order No. 55-1183 essentially made permanent a standard provision of the Commissioners' periodic proclamation of a rabies emergency. *Cf.* "A Proclamation Relating to Dogs Within the District of Columbia," Order No. 55-1166, § 1, ¶ 9 (June 23, 1955), 1 D.C. Reg. 379, 381 (July 5, 1955). Those proclamations had been made pursuant to special authority granted by Congress in 1945. Act of July 5, 1945, Pub. L. 128, § 3, 79th Cong., 1st Sess. (amending the Act of 1878, § 7). Order No. 55-1166, *recitation*, para. 2, 1 D.C. Reg. at 380.

Sometime afterward, a District court ruled that the permanent amendment of the Police Regulations to require leashing at all times conflicted with the 1878 Act. As explained in a newspaper article announcing the Commissioners' October 12, 1961 order:

> The dogs had been enjoying a reprieve from municipal leashing requirements .... A year or two ago, a dog complaint case in Municipal Court brought to light the District's two conflicting dog laws. Acting under one law, dated 1887, the District had established police regulations requiring:
>
> > That on public space in the city a dog must be "firmly secured by a substantial leash, not exceeding 4 feet in length, held by a person capable of managing such dog.["] ....
>
> But the court held that this regulation was unenforceable because of another old law that allowed dogs—except female [sic] dogs in heat—to run at large. So city officials trotted through an amendment during the last session of Congress that eliminated the statutory conflict. Today, acting under this new legislation, the Commissioners pounced once more on dog leas[h]ing requirements.
>
> The Commissioners also increased the penalty for violation. The old penalty was a fine ranging from $5 to $20. A violator now will be subject to a fine of up to $300 and [sic] 10 days in jail. The Commissioners' order made the reinstatement of the dog restrictions effective tomorrow.

"Board Puts Leashes on District Dogs," *Evening Star*, B-1 (Oct. 12, 1961); *see also* "Day in Court Costs $10 for Unleashed Dog," *Evening Star*, A-21[8] (July 4, 1957) (noting that an Assistant Corporation Counsel in a dog leash prosecution had to rely on the Commissioners' emergency authority under the 1945 Act to overcome the 1902 Act); H. Rep. 458, at 2, 87th Cong., 1st Sess. (June 7, 1961) (noting that 1902 deprived Commissioners of power to establish leash regulations, although not mentioning any judicial decision); S. Rep. 789, at 1, 87th Cong., 1st Sess. (Aug. 28, 1961) (same).

The "new legislation" cited in the *Evening Star* article was Public Law 87-227, 75 Stat. 498. The first section of that Act authorized the Commissioners of the District of Columbia to "regulate the keeping and *leashing* of dogs and to regulate or *prohibit* the running at large of dogs." (emphasis added). Sections 2 and 3 struck out the provisions of the 1878 Act and 1887 Act referring to dogs "running at large." Section 4 of the Act provided that it "shall become effective thirty days after the date of its approval." President Kennedy signed the Act on September 13, 1961; therefore, Public Law 87-227

---

[8] The article is short and reads as follows:

Every dog may have his day in court, but there's no guarantee the law is on his side.

   "Butch," a pet of mixed breed, was perfectly correct in running around public streets without his owner on the end of a leash, according to Gilbert Giordano, lawyer for C.L. Shield of the 2700 block of North Capitol street.

   But police regulations make it illegal for a dog to run around unleashed.

   The provision of the District Code invoked by Mr. Giordano was passed by Congress in 1902. But Assistant Corporation Counsel said Congress, in 1945, gave the Commissioners the power to make regulations on muzzling and leashing dogs when there is a danger of rabies.

   Municipal Court Judge Thomas C. Scalley ruled that Butch and his owner were breaking the law.

   Mr. Shield was fined $10.

became effective on October 13, 1961—one day *after* the Commissioners adopted Order No. 61-1734 on October 12, 1961.[9] The Commissioners acted without authority.

The fact that the Public Law 87-227 was slated to become effective the next day is immaterial to the validity of the Commissioners' prior act. As noted above, a subsequent grant of authority is ineffective to validate a municipal ordinance void for want of authority. The rule holds true even where the legislation granting the authority has been enacted, but, by its terms, has not yet gone into effect.

The Supreme Court's decision in *McClure v. Township of Oxford*, 94 U.S. 429 (1876), is controlling.[10] *McClure* concerned the validity of certain bonds issued by a municipality in order to purchase stock in a railroad. The state statute authorizing such bonds required that the municipality publish thirty days' notice of a special election to approve their issuance. *Id.* at 433. The state statute had been enacted on March 1, but by its terms did not go into effect until it had been published in a newspaper identified by name in the statute. *Id.* at 432. That publication happened on March 21. *Id.*

The election for the bonds at issue in *McClure* had been held on April 8; therefore, the notice of election had to have been given sometime on or before March 9. *Id.* at 433.

---

[9] Order No. 61-1734 (October 12, 1961), *printed in* 8 D.C. Register 97 (Oct. 30, 1961). Order No. 61-1734 "reinstated" the 1955 regulations and increased the penalty for violation to a $300 fine or ten days imprisonment.

[10] In 1876—as now—the Supreme Court of the United States was the highest court of the District of Columbia. *See* Rev. Stat., D.C. § 846 (1874) (review by Supreme Court of the United States of judgments of the Supreme Court of the District of Columbia same as of United States circuit courts); D.C. Code § 11-110(1)(A) (2001) ("The judicial power in the District of Columbia is vested in the following courts: ... The Supreme Court of the United States."); *cf. Whalen v. United States*, 445 U.S. 684, 687-88 (1980) (noting that the Court defers to interpretations of District law by the District of Columbia Court of Appeals, but is not bound by them, and declining to follow the latter court's construction of an Act of Congress at issue in the case).

Thus, the Court held, the bonds could not have been validly issued because, although the election had been held and the bonds issued after the authorizing statute went into effect, nevertheless as of March 9 the municipality lacked authority even to *call* the election. *Id.*

It is also immaterial to the validity of the 1961 leash regulation that the Commissioners acted just one day in advance of receiving their authority. A single day makes just as much difference as a whole year. In *United States v. Locke*, 471 U.S. 84 (1985), for example, the Court ruled that where a statute required federal mining claimants to file a notice of intention to hold their claims "prior to December 31" of every year, a notice filed *on* December 31 was necessarily too late. The Court explained that to "attempt to decide whether some date other than the one set out in the statute is the date actually 'intended' by Congress is to set sail on an aimless journey ...." *Id.* at 93.

Congress expressly provided that the 1961 Dog Act not "become effective" until *thirty* days after its approval. It could as easily have provided that the Act take effect in twenty-nine days, or upon enactment, or even that the previously-adopted regulations be deemed valid—but it did none of those things.

Significantly, in 1961, there was no Administrative Procedure Act requiring the Commissioners to give notice of proposed regulations. It is very possible that Congress intended that the Act's effective date be delayed so that residents of the District—who had no voice in the selection of Commissioners—could at least make known their views as to what form the resulting regulations should take. The federal Administrative Procedure Act exempted the District. *See id.* § 2(a), 60 Stat. 237 (June 11, 1946) ("'Agency' means each authority ... of the Government of the United States other than

… the District of Columbia."). Congress did not enact the District of Columbia Administrative Procedure Act until 1968. *See* Pub. L. 90-614, 82 Stat. 1203 (Oct. 21, 1968). The lack of such notice and comment procedures was, however, a well-known deficiency in 1961.[11] Thus, Congress may well have thought it important that some time be afforded for comment, particularly since the 1961 Act authorized the Commissioners to establish criminal penalties for the violation of any regulations under the Act. Pub. L. 87-227, § 1, 75 Stat. 498.

Whatever the reason for Congress' delaying the effective date of the enabling Act and the Commissioners' failure to observe it, the consequence is that the Commissioners' 1961 police regulation requiring all dogs to be leashed was and is void and of no effect.

### Even Had the Commissioners' Police Regulation Been Validly Adopted in 1961, It Was Superseded by the Leash Law Provided in the Animal Control Act of 1979.

On July 3, 1979, the Council of the District of Columbia passed the Animal Control Act of 1979. 26 D.C. Reg. 765 (Aug. 17, 1979). Section 9(a) provides: "No owner of an animal shall allow the animal to go at large."[12] D.C. Code § 8-1808(a) (2001). Section 9(e) provides: "No dog shall be permitted on any school ground when school is in session or on any public recreation area unless the dog is leashed." D.C. Code § 8-1808(e)

---

[11] *See, e.g., A Bill to prescribe administrative procedures for the government of the District of Columbia, to require maintenance of an official publication for such government, and for other purposes,* H.R. 5545, 85th Cong., 1st Sess. (introduced Mar. 4, 1957); Committee on the District of Columbia, House of Representatives, *Hearing on Administrative Procedure Act for the District of Columbia* (H. R. 5545), May 23, 1958 (unprinted typed transcript).

[12] Section 2(a) provided: "The term 'animal at large' means any animal found off the premises of its owner and neither leashed nor otherwise under the immediate control of a person capable of physically restraining it." D.C. Code § 8-1801(1) (2001).

(2001). Section 12 provided for a penalty of fine not to exceed \$25.[13] Section 13 provides for the issuance of "notice of violation" and gave the defendant the right to respond by depositing collateral and then either forfeiting it or requesting a trial. D.C. Code § 8-1813 (2001).

The courts of the District of Columbia have on repeated occasions held that where a subsequent penal statute or regulation covers the same ground as an earlier penal regulation, while prescribing different conduct or a different penalty or method of enforcement, the earlier penalty is superseded. *Willis v. District of Columbia*, 54 App. D.C. 191, 295 F. 1012 (1924); *Callan v. District of Columbia*, 16 App. D.C. 271 (1900); *District of Columbia v. Libbey*, 9 App. D.C. 321, 329-30 (1896); *Stevens v. Stoutenburgh*, 8 App. D.C. 513 (1896). In *United States v. Tynen*, 11 Wall. (78 U.S.) 88, 20 L. Ed. 153 (1870), the Court held that where the difference between two penal statutes involved the severity of the penalty and discretion of the court in fixing the same, that was such a repugnancy between the two that the earlier statute was impliedly repealed.

It must be acknowledged that the Animal Control Act of 1979 expressly repealed a number of earlier statutes and regulations, but not Police Regulation Art. 18, § 2. There seems, however, to be an explanation for that omission. In June 1979, a month before the Animal Control Act passed the Council, the District of Columbia Office of Documents

---

[13] In 1992, the Council added increased penalties for subsequent violations within twenty-four months. D.C. Code § 8-1811 (2001).

had issued its *District of Columbia Rules and Regulations Updater*.[14] On page 51 of the *Updater*, sections 1 *through* 7 of Article 18 of the Police Regulations were indicated as having been repealed. It appears, however, that that was a typographical error. In fact, sections 1 *and* 7 of Article 18 had been repealed by the Council a year and a half earlier, in the Noise Control Act of 1977, § 15(b), 24 D.C. Reg. 5293, 5332. Given that the Animal Control Act of 1979 contains redundant leash provisions and a far lighter penalty provision, which was also more in line with pre-1961 statutes and regulations, the omission to include a repealer may well have been induced by the error in the *Updater*.

---

[14] In fact, in January 1979 an earlier draft, identical in all material respects, had been circulated by the Legal Counsel Division of the Office of Corporation Counsel to all government agencies and courts, including the Council.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Criminal Division

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | : | |
| | : | **Case No: D-339-05** |
| **v.** | : | **Closed Case** |
| | : | **Judge Doyle** |
| **MICHAEL F. WASSERMAN** | : | |

## <u>AFFIDAVIT</u>

This is the affidavit of Michael F. Wasserman, D.O.B. March 24, 1965, 1030 South Barton Street, Arlington, Virginia, in relation to case number D-339-05.

1.    On February 20, 2005, at approximately 7:55 a.m., I was walking my two dogs in Montrose Park, located on the North side of the 3000 block of R Street, N.W., Washington, D.C. The dogs were under my immediate control.

2.    From behind me, I heard a woman call, "Sir! Sir!" When I turned, I saw a police officer, who I later learned was Private Denise Rodacker of the United States Park Police. Officer Rodacker was standing about fifty feet behind me.

3.    When I turned, she asked whether I "could" or "would" "answer some questions" for her. I stated that I did not have to answer any of her questions. I then continued walking.

4.    When I continued walking, Officer Rodacker asserted that I was in fact obliged to answer her questions, although she did not give any authority for her assertion, nor did she state what the occasion was for her questions nor what the nature of the questions would be. I continued to assert that I was then and there free to go on about my business. That exchange continued back and forth for approximately thirty seconds or a minute. At no time prior to arresting me did she state that she was charging me with a violation of any law.

5.      During the foregoing exchange, I had continued walking with my dogs while Officer Rodacker ran to catch up with me. When Officer Rodacker caught up with me, she placed her hand on my left shoulder. When I felt her hand on my shoulder, I stopped walking and stood still, facing away from her in the direction of my former travel. I made no other motion.

6.      At about that time, I verbally informed Officer Rodacker that dog at large was not an arrestable offense in the District of Columbia.

7.      Officer Rodacker took hold of one of my arms, twisted it behind my back, and pushed it upward to point where I felt pain in my shoulder. She then handcuffed me. She did not ask me any questions. She did not state why I was being arrested. When I inquired, she first said that I was under arrest for resisting arrest. Despite my inquiry, she did not explain at that time in what way I had resisted arrested. Later, after she had booked me at the station house and before she took me to the Central Cell Block, she stated to me that I had committed an assault on her in violation of D.C. Code § 22-405 (2001), because I had "opposed" or "impeded" her by not stopping to answer her questions in response to her request.

8.      As Officer Rodacker handcuffed and frisked me, I saw two of my friends, Richard Fletcher and James Ryan, and called them over to be witnesses to the arrest.

9.      At no time did I offer any violence or physical resistance to Officer Rodacker or to any other person. At no time did either of my dogs or any other person or animal offer any violence or resistance to Officer Rodacker.

10.     Having served as an Assistant Corporation Counsel in the Appellate Division of the District of Columbia Office of Corporation Counsel from April 2002 to May 2004, I knew that under D.C. Code § 22-405(a) (2001), since 1970 the illegality of an arrest has not been a justification for assaulting a police officer or resisting arrest. I had in fact discussed that very

provision within the previous year in a brief I filed on behalf of the District of Columbia in the case of *Evans-Reid v. District of Columbia*, No. 00-CV-1083 (currently pending decision), at page 19 and note 29.

11.    After arresting me, Officer Rodacker escorted me to her squad car, placed me in it and drove me to the Rock Creek station house, where I was processed. Before we arrived at the station, the only questions Officer Rodacker asked me were, first, whether I had any weapons on my person, which I denied, and second, whether I wanted my friends to take charge of my dogs, to which I assented.

I wrote this three-page affidavit and I affirm under penalty of perjury that it is true.

_____
Michael F. Wasserman

SUBSCRIBED AND AFFIRMED before me this 20th day of September, 2005.

District of Columbia: SS
Subscribed and sworn to before me, in my presence,
this ⟶20th day of _September_ , _2005_
by _Wasserman Michael Francis_
_Chang ⟶ Cho_
Notary Public, D.C.

Chang Ho Choi
Notary Public District of Columbia
My Commission Expires 6/14/09

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Criminal Division

| | | |
|---|---|---|
| **DISTRICT OF COLUMBIA** | : | |
| | : | **Case No: D-339-05** |
| **v.** | : | **Closed Case** |
| | : | **Judge Doyle** |
| **MICHAEL F. WASSERMAN** | : | |

### <u>ORDER</u>

This matter having come before the Court on Defendant's Motion To Seal All Records

Relating to Arrest Record, and the Court having reviewed such Motion, the Court hereby

ORDERS that Defendant's Motion be GRANTED and that all records in the possession of the

government relating to the arrest of Mr. Wasserman be collected, expunged and sealed by United

States Attorney for the District of Columbia and the Attorney General for the District of

Columbia.  It is so ORDERED this _____ day of _____ 2005.


_____
Honorable Judge

cc:

Michael F. Wasserman
1030 South Barton St. No. 279
Arlington, VA 22204

Office of the United States Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530

Office of the Attorney General for the District of Columbia
441 4th Street, NW
Washington, DC 20001