UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael F. Wasserman

vs.                                        Civil Action No. 06-1005 (RWR)

Denise Rodacker, *et al*.

**APPENDIX TO MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS [17]**

Dated: September 25, 2006

Respectfully submitted,


Michael F. Wasserman
Plaintiff, *pro se*
D.C. Bar No. 442898
9355 Tovito Dr.
Fairfax, VA 22031-3824
(703) 591-0807
mfwddc@gmail.com

# DEFINITIONS

[JOHN RASTELL], LES TERMES DE LA LEY 296 (1721):

### *Enquest.*

*Enquest* is that inquiry which is made by Jurors in all Causes civil or criminal touching the matter of fact. And such Inquiry is either *ex officio*, which are called Inquests of Office, and are traversable, or at the mise of the parties. This word is used in the Statutes of 25 E. 3. c. 3. 28 E. 3. c. 13. and almost in all Statutes that speak of Trials by Jurors.

[JOHN RASTELL], LES TERMES DE LA LEY 416 (1721):

### *Issue.*

*Issue*, *Exitus*, cometh of the French *Issuer*, i.e., to go out. It has divers Applications in the Common Law; sometimes it is used for the Children begotten between a Man and his Wife; sometimes for Profits growing from Amerciaments and Fines; sometimes for Profits of Lands or Tenements; and sometime for that Point of Matter depending in Suit, whereupon the Parties join, and put their Cause to the Trial of the Jury: *Issue* in this last Signification is either General, or Special: General Issue is that whereby it is referred to the Jury to bring in their Verdict, whether the Defendant hath done any such Thing as the Plaintiff layeth to his Charge. Special Issue is when Special Matter is alledged by the Defendant for his Defence, and both Parties join thereupon, and so go rather to a Demurrer, if it be *Quæstio Juris*, or to Trial by the Jury, if it be *Quæstio Facti*.

[JOHN RASTELL], LES TERMES DE LA LEY 446 (1721):

### *Monstrans de Droit.*

*Monstrans de Droit* is a Suit in Chancery for the Subject to be restored to Lands and Tenements which he shews to be his Right, but are by Office found to be in the Possession of another that is lately dead, by which Office the King is intitled to a Chattel, Free-hold, or Inheritance in the said Lands. And this *Monstrans de Droit* is given by the Statutes of *34 E. 3. cap. 14.* and *36 E. 3. cap. 13.* See *Coke, lib. 4. fol. 54. B.* in the Case of the Wardens and Commonalty of *Sadlers*.

[JOHN RASTELL], LES TERMES DE LA LEY 456 (1721):

### *Nisi prius.*

*Nisi prius* is a Writ judicial, and lies where an Enquest is empanelled and returned before the Justices of the Bench; then the Plaintiff or the Defendant may have this Writ directed to the Sheriff, commanding him to cause the Enquest to come before the Justices in the same County at their coming, and that for the Ease of the Enquest.

GILES JACOB, A NEW LAW-DICTIONARY (Dublin: Owen Ruffhead & J. Morgan, eds., 10th ed. 1773):

### *Nisi prius.*

NISI PRIUS, Is a commission to justices of *Nisi prius*; so called from a judicial writ of *Distringas*, whereby the sheriff is commanded to distrain the impanelled jury to appear at *Westminster* before the justices at a certain day in the following term, to try some cause, *Nisi prius Justic.' Domini Regis ad assises capiend. venerint, viz.* unless the justices come before that day to such a place, *&c.* 2 *Inst.* 424. 4 *Inst.* 159. A writ of *Nisi prius* is where an

issue is joined, then there goes a *venire* to summon the jury to appear at a day in court; and upon the return of the *Venire*, with the panel of the jurors names, the record of *Nisi prius* is made up and sealed, and there goes forth the writ of *Distringas* to have the jurors in court, *Nisi prius Justic.' venerint, &c.* such a day in such a county, to try the issue joined between the parties. 2 *Lill.* 215. ... All civil causes at issue in the courts at *Westminster*, are brought down in the *Vacation* before the day of appearance appointed for the jury above, in the county where the action is laid, to be tried there; which is usually done in two or three days: And then upon the return of the verdict given by the jury to the court above, the judges there give judgment for the party for whom the verdict is found: and these trials by *Nisi prius* are for the ease of the country, the parties, jurors, and witnesses, by saving them the charge and trouble of coming to *Westminster*; but in matters of great weight and difficulty, the judges above upon motion and information, will often retain causes to be tried there, tho' laid in the country, and then the juries and witnesses in such causes must come up to the courts at *Westminster* for trial at the bar: And the King hath his election to try his suits at the bar, or in the country, *&c. Wood's Inst.* 479.

[JOHN RASTELL], LES TERMES DE LA LEY 462 (1721):

### *Office.*

*Office* doth not only signifie that Function, by Vertue whereof a Man hath some Employment in the Affairs of another, but also an Inquisition made to the King's Use of any Thing by Vertue of his Office who enquireth.

[JOHN RASTELL], LES TERMES DE LA LEY 564 (1721):

### *Travers.*

*Travers* sometimes signifies to deny, sometimes to overthrow or undo a Thing done. ...

The other Signification is found in *Staundf. Prerog. cap. 20.* the whole Chapter, who speaking of Traversing an Office, saith, That it is nothing else but to prove that an Inquisition taken of Goods or Lands by the Escheator is defective, and untruly made. ...

[JOHN RASTELL], LES TERMES DE LA LEY 569-70 (1721):

### *Venire facias.*

*Venire facias*, it is a Process directed to the Sheriff, or to the Coroners (if the Sheriff be challenged) to summon a Jury to try an Issue joined between Party and Party, or the King and a Subject; and it is also a Process upon an *Audita Querela*, or upon an Indictment in the [*570] King's Bench, or *Venire facias ad computandum*, against Tenant by *Elegit*.

## TREATISES

WILLIAM STAUNFORD, AN EXPOSICION OF THE KINGES PREROGATIVE 77 (1567):

*Ouster le main* is the judgement that is geven for hym that tendeth a traverse or such a *Monstrans de droit* or peticion, for when it appeareth upon the matter discussed that the kinge hathe no righte nor title to the thinge he seised, then judgement shalbee geven in the Chauncerie that the handes bee amoved: and thereuppon *Amoveas manum* shalbee awarded to theschetour, which contervailes as muche as if the judgemente weare geeven that hee shoulde have againe his lande as appeareth, in 24 E.3 f. 34. and this jugement sometime is geven in the kinges bench and not in the chauncerie, & that is in case where the parties descende to an issue, then for the tryall thereof theye of the chauncerie muste awarde a *venire facias* returnable in the kings benche at a certaine daye, at whiche day notwithstandinge that the shirife returne not the writ, yet the *Alias venire facias* shall not bee awarded out of the chancerie but oute of the kinges bench: for there and no where els it is recorded, *quod vicecomes non misit breve*, as appeareth in. 13. E.4. f.8. And when the issu is found for the partie they of the kinges bench shall gave judgement & awarde an *ouster le maine* without suinge for the same in the chauncerie as appeareth in 21. H.7. & 29. li. ass. and yet the recorde of the issue that was tried was not sent thether but onelye the transcript thereof, but what then, the judgement is to be geven upon the verdit which is there of recorde, and when bothe courtes bee courtes of the common lawe and the kynges courts, theye use not to remaunde anye thynge to the place from whence it came but to geve jugement there where it is tried, and *Sharde* sayde that when a recorde comes once into the kynges benche, it shall never go from thence.

Henry Finch, Nomotexnia; Cestascavoir, Un Description del Common Leys Dangleterre Solonque les Rules del Art fo. 76-77 (1613):

*Nul* [a] *action gist vers Roy, mes* En lieu de action vers Roy, petition serra fait a luy en le [b] Chauncerie, lou pleas sont tenus [c] coram Rege, *& lentrie est, Coram Domino Rege in Cancellaria, mes* [d] *Coram Rege generalment est entend en Banke le Roy. Ascun foits auxy petition est sue en* [e] *Parliament.*

a   14. H.8. 3.b. Stamf. Prærog. 41.b.
b   21. E.3. 47.
c   28. Ass. pl. 52.
d   Coke 9. Rep. 99.
e   Stamf. Pr. 72.

... **[\*77]** ...

*Si Escheator seise biens sans cause, ou biens dun home utlage, & accompt* [6] *pur eux en Lexchequer, coment que lutlag. est puis reverse, uncore partie suer a pur eux per petition:* Mes cy long que personel choses, seisie pur le [7] Roy, remaine en maines del Officer, cesty qui droit ad poet *traverser les records que entitler' le Roy, & issint aver ses biens arere,* ou suer le Officer, ou luy disturber a prend' les profits, *come lou est trove que un utlag. en personel action fuit seisie de certeine terres, Et en ceo case il ne serra mis a son petition: auter est en case del franktenement ou enheritance.*

6   [in the margin:] 34. H.6. 5.
7   [in the margin:] 4. E.4. 24.

...

*En quecunque case, lou Roy, estant fait partie poet este al pard, come lou en Præcipe quod reddat ou auter reall action envers son lessee il prie en aid de luy, mes nemy en* [\*] *Trespasse,* [†] *Ejectione firmæ, ou tiels personel actions, car la il peràr' rien,* briefe de Search issera, le quel est a searcher en le treasurie devant que le plea procede, si per likelihood ascun matter poet estre la a mainteyne son title:

\*   27. H.8. 28.b.
†   15. Eliz. Dyer 320.

No action lies against the King, but instead of an action against the King, petition should be made to him in the Chancery, where pleas are held before the King, and the entry is, "Before the Lord King in Chancery," though "Before the King" is generally understood as the King's Bench. Sometimes as well, petition is sued in Parliament.

...

If an escheator siezes goods without reason, or the goods of a man outlawed, and accounts for them in the Exchequer, [then] although the outlawry is later reversed, yet the party shall sue for them by petition. But as long as the personalty siezed for the King remain in the hands of the officer, he who has right to them may traverse the records that entitle the King, and thereby have his goods back, or else sue the officer, or prevent him from taking the profits. For example, if it is found that one who is outlawed in a personal action was seised of certain lands, in that case, he will not be put to his petition; but it is otherwise in case of a freehold or inheritance.

...

In whatever case the King, being made a party, may be put loss, for example, in a *Praecipe quod reddat* or other real action against his lessee, the lessee prays aid of him —but not in trespass or ejectment or other such personal action, for there he [the King] can lose nothing—a writ of search shall issue, which is to search in the treasury before the plea proceeds, if by chance something may be there to maintain his [the King's] title:

[1] *Come sur office trove que A. morust seisie del certeine terres tenus de Roy sans heyre, & un traverse mis eins que A. ne teigne del Roy; Mes si home dit que A. ad issue B. qui luy enfeoffe, la nul search serra, car nul matter poet estre en le treasurie a prover si A. avoit issue ou nemy: Mesme ley si title del Roy soit per alienation en mortmaine. [*] Search ne serra mes ou home sue al Roy per petition, [†] mes serra cibien ou petition est sue en Parliament come aylors, & coment que Roy ad grant les terres ouster.*

For example, an office finds that A died without heir seised of certain land held of the King and a traverse is put in that A did not hold of the King. But if a man says that A had issue B who he enfeoffed, then there will not be a search, for nothing might be in the treasury to prove whether or not A had issue. The law is the same if the King's title be by alienation or mortmain. Search will be had not only where a man sues the King by petition, but also where petition is sued in Parliament as elsewhere, and despite the King has granted the land to another.

1    [in the margin:] 9. E.4. 52.b.
*    7. H.5. Fitzh. Petition 6.
†    Stamf. Pr. 73.

[2] Issue joyne sur matter en fait serra mis en Banke Roy deste trie, *& la judgement serra done & execution sue, sans remaunder en Chauncerie.*

Issue joined upon matter of fact shall be sent to the King's Bench to be tried, and judgment will be given there, and execution sued, without sending it back to Chancery.

2    [in the margin:] 21. H.7. 35. & 36.

[3] Sur judgement vers Roy, il est maintenant hors de possession; *Et pur ceo chescun Judgement est en luy mesme un Amoveas manum, ou un ouster le maine.*

Upon judgment against the King, he is immediately out of possession; and therefore, every judgment is to him the same as an *amoveas manum* or an *ouster le main*.

3    [in the margin:] 10. E.3. per Stamf. Pr. 78.

*Nota, le Chauncerie est auxy Court de equitie a moderater le strictnesse* [4] *del common ley, solonque equitie & bon conscience, per an absolute power, & la il proceede per English bill: mes en matters dependants devant luy per originall briefe & solonque ordinarie power, il est a judger solonque common ley.*

Note that the Chancery is also a court of equity to moderate the strictness of the common law, according to equity and good conscience, by an absolute power, and there it proceeds by English bill. But in matters depending before [the Chancellor] by original writ and according to ordinary power, he is to judge according to the common law.

4    [in the margin:] 11. E.4. 9. | 5. E.6. 71.

Henry Finch, Law, or a Discourse Thereof 77, 82-83, 254-256, 323-26, 423, 437 (1678) (Although this English version of Nomotexnia was first published in 1627, subsequent to the Law French version, *supra*, it represents an earlier version of the text. *See* Wilfrid Prest, 'Finch, Sir Henry (c.1558–1625)' *in* Oxford Dictionary of National Biography (2004) [http://www.oxforddnb.com/view/article/9436].)

**[\*77]** …

### [Second Book,] Chap. I.

*Of the Common Law of England, whereof the partes of the Realm, and of the persons in it. of Custom and Prerogative.*

…

**[\*82]** [1] The King cannot take, he cannot part **[\*83]** from any thing but by matter of record. And that is for the Majesty of his person. His supream Sovereignty makes him immediate under God. *Omnis quidem sub eo & ipse sub nullo nisi tantum sub Deo,* saith *Bract.*[2] It makes all lands to be holden of him, every surrender unto him to be good, no action to lie against him, for who shall command the King?

---

1 [in the margin:] (a) *Stam. præ.* 731. [sic] (b) 7 *E.* 4. 17. (c) 50 *Ass. pl.* 1. 18 *Eliz.* 498.

2 ["Indeed, all are below him and he himself below no one, except only God." 2 Bracton on the Laws and Customs of England 33 (Woodbine, ed., Thorne, tr., 1968).]

**[\*254]** …

### [Fourth Book,] Chap. III.

*Of Common Pleas.*

… **[\*255]** …

### Prerogative.

[3] Here in place of action against the King petition must be made unto him in the Chancery, (*a*) or in (*b*) Parliament, for (*c*) no action did ever lie against the K. at the Common Law, but the party is driven to his petition, and (*d*) if the Escheator seize goods without cause, or seize the goods of one out-lawed, which outlawry is after reversed, and account for them in the Exchequer; the party must sue by petition for them. And that (in the case of hereditaments) though the King have granted the same away.[4] For upon an office finding *J.S.* (who was attainted of felony or treason by matter of record before) to be seized of certain Land, if the King seize and grant it over; yet a stranger that hath right to enter, or bring his action, may do neither against the Patentee, but must [sue] to the King by petition. Whereupon Process shall go out against the Grantee to maintain his title.[5] As the **[\*256]** King grants over his wardship, or any other certain estate in the land. The *Scire facias* for him that sueth the petition, must be against the patentee, not against the heir, in whose right the King is seized; for he is not to plead with the heir, but with the King, or him that

---

3 [in the margin:] *(a b) Stamf. prer.* 73. *(c) Stamf. prer.* 42. *(d)* 34 *H.* 6. 5.

4 [in the margin:] 9 *H.* 6. 15.

5 [in the margin:] *Stamf. prer.* 76.

hath his Interest.[1] And in a petition to revoke Letters Patents made to two, &c. a *Scire facias* upon it; the death of one of the patentees abateth not the petition; for the petition is not sued against the patentees, but against the King; nor they need not to be named in the petition, but in the *Scire facias*.

1    [in the margin:] 7 *H.* 4. 33.

[2] But whilst personal things seized for the King remain in the Officers hands, the party that hath right may traverse the Records that entitle the King, and so have his goods again, or sue the Officer, or disturb him to take the profits: As where it is found that one out-lawed in a personal account [sic], was seized of certain land; and in this case he shall not be driven to a petition; otherwise it is in case of a freehold or inheritance.

2    [in the margin:] 4 *E.* 4. 24.

[3] Petition is a supplication declaring the parties right, where mention must be made of all the King's title, else it shall abate. For upon an issue in the petition found against the King, he shall be concluded for ever to claim by any of the points contained in the petition.

3    [in the margin:] 9 *E.* 4. 52.

**[\*323]** ...

[Fourth Book,] Chap. XXIV.

*Of Offices for the King*.

These are the Suits that every one may have. Enquiry for the King is, when matter for the King is found by a Jury called an Enquest of Office, whether the Enquiry be by Officers themselves, as Sheriffs, Escheators, Coroners, &c. *virtute officii*, or *virtute brevis*, or Commissions to them directed. And here the just number of twelve is not of necessity requisite, but may be sometimes more or less.[4]

4    [in the margin:] *F.N.B.* 170.c.

**[\*324]** [5] An Enquiry is an office or presentment. An office which findeth matter to entitle the King to some possession; for an office is a title for the King, but finding but for a common person, it is but an evidence.

5    [in the margin:] 21 *E.* 3. 2.

If such an office be found for hereditaments, and the King entitled by matter *enfait*, that is to say, by no other Record but that only; as if the office find that *J.S.* the Kings Tenant died seized, the party may either traverse, to say *J.S.* was not seized, or confess and avoid it by saying, that himself was the King's Tenant, and disseised by *J.S.* and so *J.S.* died seized, being in by disseisin, &c. and this is called a *monstrans de droit*. But if the office entitle the King by matter of Record, as that *J.S.* was attainted of Treason, and seized of certain Lands, there only a Petition lieth to the King, because this is a double matter of Record, and therefore neither can the party traverse it by denying *J.S.* to be so seized, nor have his *monstrans de droit* to shew that *J.S.* did disseise him, &c. or that he enfeoffed *J.S.* upon condition, and that *J.S.* brake the condition before the attainder. All this is to be understood so long as the Record of the attainder continueth in his force. But the party may traverse the

attainder well enough, as to say, *nul tiel attainder*,[1] i. that there is no such attainder, and upon that being found for him, he shall have the land, without being driven to his petition, **[\*325]** otherwise not; and the reason is, because the office entitling the King by a matter of Record, this title cannot be avoided but by as high a matter, and not by the plea or allegation of the party; upon as high a matter of Record to avoid the office, as the office it self, a man may traverse it, though the King be intitled by double matter of record. As being found by office that *J.S.* was attainted of Treason by Parliament, and his Lands forfeit, and that he was seized of *B.* acre, whereby the King seizeth it. Now if another Act of Parliament restore the heir to all the Lands whereof the ancestor was seized & adnul the ancestors attainder, his heir shall have this by way of plea, without petition.

---

1   [in the margin:] 4 *H.* 7. 7.

---

   [2] If the office be for personal goods, the party may always have a traverse or plea any matter unto it, and so have his goods again, unless the escheator have accompted for them. [3]And that though the office find the King's title to be by matter of record: as that *J.S.* was attainted of Felony or Treason, or outlawed in Debt or Trespass, and was at the time possessed of a horse, or of such and such goods, wherein in truth the property was unto a stranger; that stranger may have a Traverse. The King upon office finding for him, if his entry be lawful, and the possessions to be had at the time, is presently in possession, as in wardship or escheat of land found by office: [4] but an office finding that the **[\*326]** King's tenant hath ceased, or his Tenant for life committed waste,[5] vesteth no possession in the King, for his entry is not lawful, but he is driven to sue a *Scire facias*. So if an office entitling the King to things not manual; that is to say, whereof no profit is to be taken forthwith, until they fall as a Rent-common, &c. this vesteth no possession till the day. Also he shall be answered of all the mean profits from the time of his title.[6] As upon an alienation in Mortmain found by office, from the time of this alienation appearing of record, upon the King's Letters Patents adnulled for insufficiency from the very time of the grant.

---

2   [in the margin:] 4 *E.* 4. 24.
3   [in the margin:] *Ibid.* 34 *H.* 6. 5. 4 *E.* 4. *ibid.*
4   [in the margin:] 14 *H.* 7. 23, 25.
5   [in the margin:] *Stamf. Prer.* 54.
6   [in the margin:] 14 *E.* 3. 11. 11 *H.* 4. 5.

---

   [7] An Escheator here may find offices *ex officio*, as well as *virtute brevis*, or *commissionis*. But not of Outlawry of Felony, or such high matter of record without warranty paramount, and certification by writ of Record. Those *virtute brevis*, or *commissionis* are returnable in the Chancery. The other properly in the Exchequer; but may also be returned into the Chancery.

---

7   [in the margin:] 4 *E.* 4. 24. 2 *H.* 4. 5.

   **[\*423]** ...

[Fourth Book,] Chap. 38.

*Of Trial by Witnesses.*

[1] In a writ of dower issue taken upon the death of her husband shall be tried by witnesses. So shall no other case in the Law.

1    [in the margin:] 8 *H.* 6. 23. [*I.e.*, Y.B., Trin. 8 Hen. VI. fo. 22, 23, pl. 7 (C.P. 1430): "... Et Babington [C.J.] dit. En ceo ple si la vie del' baron soit pled' en brief de Dower, & la feme dit que mort, ceo sera trie per preuves, et en nul cas forsque en cel'. *Ad quod Omnes Justiciar' concord'*...." And Babington, Chief Judge, said, In that plea, if the life of the husband be pleaded in writ of dower, and the wife says that he is dead, that will be tried by witnesses (*i.e.*, to the court), and in no other case except that. To which all the justices agreed.]

**[\*436]** …

[Fourth Book,] Chap. 43.

*Of Mesne, Judicial process*.

… **[\*437]** …

[2] In petitions, whether in Parliament, or elsewhere, and though the King have granted the lands over, or wheresoever the King being made party, may be at loss: as when he is prayed in aid of, in a *præcipe quod reddat*, or other real action against his lessee, but not in *(b)* trespass *(c) Ejectione firmæ*, or other *(d)* personal action, for there he is to lose nothing.[3] A writ of search lyeth, which is to search in the treasury before the plead proceed, if by likelihood some matter may be there to maintain his title. As upon finding by office that *A.* died seised (of certain Land holden of the King) without heir, and a traverse put in that *A.* held not of the King. But if one come and say that *A.* had issue *B.* who enfeoffed him, there no **[\*438]** search shall be, for no matter can be in the treasury, to prove whether *A.* had Issue, no more if the Kings title be by an alienation in mortmain.

2    [in the margin:] *Stam. prær.* 73.
3    [in the margin:] *(b)* 27 *H.*8.28. (*c*) 15 *Dy.* 320 (*d*) 27 *H.*8.*ib.*

Edward Coke, The Fourth Part of the Institutes of the Laws of England: Concerning the Jurisdiction of Courts 79-82 (London: W. Lee & D. Pakeman, 1648) (*i.e.* the second edition; the first was published in 1644, ten years after Coke's death)

### The Jurisdiction of the Court [of Chancery].

In the Chancery are two Courts, one ordinary, *Coram Domino Rege in Cancellaria*, [a] wherein the Lord Chanceleur or Lord Keeper of the Great Seale proceeds according to the right line of the laws and statutes of the Realm, *secundum legem & consuetudinem Angliæ.* [b] Another extraordinary according to the rule of equity, *secundum æquum & bonum*. And first of the former Court.

a   8 E.4. 5. 9 E.4. 15. 14 E.4. 7.
b   Stan. prær. c. 20 fo. 65.b. Pl. com. fo. 72.

[c] He hath power to hold plea of *Scire fac'* for repeal of the Kings Letters patents, of Petitions, *monstrans de droits*, traverses of Offices, Partitions in Chancery, of *Scire fac'* upon recognisances in this Court, Writs of *Audita querela*, and *Scire fac'* in the nature of an *Audita querela* to avoid executions in this Court; [d] dowments in Chancery, the Writ *de dote assiganda* upon offices found, execution upon the Statute staple, or Recognisance in nature of a Statute staple upon the Act of 23 H.8. but the Execution upon a Statute merchant is returnable either into the Kings bench, or into the Common pleas, and all [*80] personall actions by or against any Officer or Minister of this Court in respect of their service or attendance there. [a] In these if the parties descend to issue, this Court cannot try it by Jury, but the Lord Chanceleur or Lord Keeper delivereth the Record by his proper hands into the Kings Bench to be tried there; because for that purpose both Courts are accounted [b] but one, and after triall had to be remanded into the Chancery, and there judgement to be given. But if there be a demurrer in law, it shall be argued and adjudged in this Court. Nota, the legall proceedings of this Court be not inrolled in Rols, but remaine *in filaciis* being filed up in the Office of the Pety-bag. [c] Upon a judgement given in this Court a Writ of Error doth lye retornable into the Kings Bench: [d] The stile of the Court of the Kings Bench is *coram rege* (as hath been said) and the stile of this court of Chancery is *coram domino rege in Cancellaria, & additio probat minoritatem*. And in this Court the Lord Chancelour or the Lord Keeper is the sole Judge: and in the Kings Bench there are four Judges at the least. ...

c   Rot. Par. 8 H.4. nu. 122. 2 R.3. 1.
d   Regist. 297. F.N.B. 263. Stanf. prær. ca. [sic] Rot. Par. 18 E.3. nu. 41.42.
a   13 E.2. coram Rege. Rot. 51. London.
b   10 E.3. 61. 24 E.3. 65. 73.
c   18 E.3. 25. 17. ass. 24 14 Eliz. Dier 315 Pl. com. 393.a.
d   In Par. Tr. 9 h.6. Rot. 5 int. placita regis.

[*81] ... Divers Acts of Parliament give authority to the Lord Chancelour to heare [*82] & determine divers offences and causes in the Court of Chancery, which is ever intended in this Court proceeding in Latin, *secundum legem & consuetudinem Angliæ*, and the Defendant shall not be sworne to his answer, nor examined upon Interrogatories, and upon issue joyned it shall be tried in the Kings Bench, *Ut in similibus casibus solet*.[1] ...

1   [in the margin:] 27 E.3. cap. 13. 2 R.3. fo. 3. 13 E.4. [sic] Dier 12 El. 288.a. resolve.

Francis Buller, An Introduction to the Law Relative to Trials at Nisi Prius 214-16 (Dublin, 1791) (The first edition was published anonymously in London, 1760; subsequent editions were published in London, 1767, 1772 (by Buller), 1775, 1781, 1785, 1790, 1793, and 1817; reprinted in Dublin 1768, 1773, and 1791. *See* 1 Sweet & Maxwell, Legal Bibliography of the British Commonwealth of Nations 335 (2d ed. 1955).)

Part V.

Containing One Book.

Of Traverses and Prohibitions.

Introduction.

There still remain two other species of suits which may be tried at *Nisi Prius*, and which therefore fall within the compass of this treatise; and they are traverses of inquisitions of office, and prohibitions.

[*215]

Chapter I.

Of Traverses.

[2] There are two sorts of offices; the one vests the estate and possession of the land, *&c.* in the king where he had onlyright or title before. The other is when the estate is lawfully in the king before, but the particularity of the land does not appear of record, so that it may be put in charge. The first of these is called the office of intituling; the second is called the office of instruction.

2   [in the margin:] 10 Co. 115.

[3] By the common law, wherever the king was in possession by virtue of the inquisition, the subject was put to his petition of right, unless the right of the party appeared in his inquisition, and then at the common law he might have a *monstrans de droit*; but where the inquisition only intitled the king, and he was obliged to bring a *sci. fa.* against the party to recover possession, there at common law the party might traverse the king's title, for there the king being in nature of a plaintiff, the party in possession might by pleading put him to prove the title upon which he would recover. But where the king was in possession by virtue of the inquisition, there the party that would get that possession from him was in nature of a plaintiff, and therefore had no method to proceed in but by way of petition; for no action could lie against the king, because no writ could issue, as he could not command himself.

3   [in the margin:] 4 Co. 54.

But as this suit by petition was of great delay and charge to the party grieved, the statutes of 34 *E.* 3. *c.* 14. 36 *E.* 3. *c.* 13. and 2 *& 3 Ed.* 6. *c.* 8. were made to enable the subject to traverse inquisitions, or otherwise to shew their right.

[4] Thus were traverses and *monstrans de droit* introduced in lieu of petitions. The only difference between the one and the other is, that in a traverse the title set up by the party is

4   [in the margin:] 3 H. 7. 3.

inconsistent with the king's title found by the inquisition, which he therefore must traverse; in a *monstrans de droit* he confessed and avoids the king's title. [1] But in both cases he must make a title in himself, and if he cannot prove his title to be true, although he be able to prove that the king's title is not **[\*216]** good, it will not serve him. But in traverses at common law the party is in nature of a defendant, and therefore need not set up any title in himself.

---

1   [in the margin:] Stamford Prerog. c. 20. p. 65. Salk. 448.

The method of proceeding at common law by petition was that the king's title being found by inquisition, the party petitioned to have an inquest of office to inquire into his title; if his title was found by such office, then he came into court and traversed the king's title: so that the record began by setting out the first inquisition taken upon the petition, and then went on with *et modo ad hunc diem venit*, and so traversed the king's title. In conformity to these proceedings at common law, the traverse and *monstrans de droit* given by the statute begin by stating the inquisition, and then go on "*et modo ad hunc diem venit, &c.*"

(Note; the only difference between the pleading in a traverse and *monstrans de droit* is, that one is *pro placito dicit*, the other *pro placito et monstratione juris dicit*.)

[2] And from this manner of pleading, some have considered the party traversing as defendant; but when it is considered that this traverse comes in lieu of the petition at common law, and that it does not suspend the vesting in the king by the inquisition, and that the judgment for the party is an *amoveas manum*, and the judgment against him a *nil capiat*,[3] it seems clear he ought to be deemed a plaintiff, and as such is capable of being nonsuited.

---

2   [in the margin:] Rex v. Roberts, E. 17 G. 2. Stra. 1208.
3   [in the margin:] Salk. 448. 4 H. 6. 12.

[4] These proceedings are in the petty-bag office, and the record is brought from thence into the king's bench by the chancellor, in order that it may be tried.

---

4   [in the margin:] Trem. P. C. 652. [*I.e.*, John Tremaine, Placita Coronae; or, Pleas of the Crown in Matters Criminal and Civil (London, 1723).]

3 William Blackstone, Commentaries on the Laws of England 46-49, 254-62, 428-29 (~~Oxford 1768~~) (London, 1772) (London, 1800)

### Chapter the fourth.

### Of the Public Courts of Common Law and Equity.

… [**\*46**] …

VIII. The high court of chancery is the only remaining, and in matters of civil property by much the most important of any, of the king's superior and original courts of justice. It has it's name of chancery, *cancellaria*, from the judge who presides here, the lord chancellor or *cancellarius*; who, sir Edward Coke tells us, is so termed *a cancellando*, from cancelling the king's letters patents when granted contrary to law, which is the highest point of his jurisdiction [k]. But the office and name of chancellor (however derived) was certainly known to the courts of the Roman emperors; where originally it seems to have signified a chief scribe or secretary, who was afterwards invested with several judicial powers, and a general superintendency over the rest of the officers of the prince. From the Roman empire it passed to the Roman church, ever emulous of imperial state; and hence every bishop has to this day his chancellor, the principal judge of his consistory. And when the modern kingdoms of Europe were established upon the ruins of the empire, almost every state preserved it's chancellor, with different jurisdictions and dignities, according to their different constitutions. But in all of them he seems to have had the supervision of all charter, letters, and [**\*47**] such other public instruments of the crown, as were authenticated in the most solemn manner; and therefore, when seals came in use, he had always the custody of the king's great feal. So that [**\*47**] the office of chancellor, or lord keeper, (whose authority by statute 5 Eliz. c. 18. is declared to be exactly the same) is with us at this day created by the mere delivery of the king's great seal into his cuftody [l]: whereby he becomes, without writ or patent, an officer of the greatest weight and power of any now subsisting in the kingdom; and superior in point of precedency to every temporal lord [m]. He is privy councellor by his office, and, according to lord chancellor Ellesmere [n], prolocutor of the house of lords by prescription. To him therefore belongs the appointment of all justices of the peace throughout the kingdom. Being formerly usually an ecclesiastic, (for none else were then capable of an office so conversant in writings) and presiding over the royal chapel [o], he became keeper of the king's conscience; visitor, in right of the king, of all hospitals and colleges of the king's foundation; and patron of all the king's livings under the value of ~~20 l.~~ twenty marks. [s] *per annum* in the king's books. He is the general guardian of all infants, idiots, and lunatics; and has the general superintendence of all charitable uses in the kingdom. And all this, over and above the vast and extensive jurisdiction which he exercises in his judicial capacity in the court of chancery: wherein, as in the exchequer, there are two distinct tribunals; the one ordinary, being a court of common law; the other extraordinary, being a court of equity.

k   4 Inst. 88.
l   Lamb. *Archeion*. 65. 1 Roll. Abr. 385.
m   Stat. 31. Hen. VIII. c. 10.
n   of the office of lord chancellor. *edit*. 1651.
o   Madox. hist. of exch. 42.
s   38 Edw. III. 3. F.N.B. 35. though Hobart (214.) extends this value to twenty *pounds.*

THE ordinary legal court is much more antient than the court of equity. It's jurisdiction is to hold plea upon a *scire facias* to repeal and cancel the king's letters patent, when made against law, or upon untrue suggestions; and to hold plea of petitions, *monstrans de droit*, traverses of offices, and the like; when the king hath been advised to do any act, or is put in possession of [*48] any lands or goods, in prejudice of a subject's right [p]. On proof of which, as the king can never be supposed intentionally to do any wrong, the law questions not but he will immediately redress [*48] the injury; and refers that conscientious task to the chancellor, the keeper of his conscience. It also appertains to this court to hold plea of all personal actions, where any officer or minister of the court is a party [q]. It might likewise hold plea (by *scire facias*) of partitions of lands in coparcenary [r], and of dower [s], where any ward of the crown was concerned in interest, so long as the military tenures subsisted: as it now may also do of the tithes of forest land, where granted by the king and claimed by a stranger against the grantee of the crown [t]; and of executions on statutes, or recognizances in nature thereof by the statute 23 Hen. VIII. c. 6. [u] But if any cause comes to issue in this court, that is, if any fact be disputed between the parties, the chancellor cannot try it, having no power to summon a jury; but must deliver the record *propria manu* into the court of king's bench, where it shall be tried by the country, and judgment shall be there given thereon [w]. And, when judgment is given in chancery, upon demurrer or the like, a writ of error, in nature of an appeal, lies out of this ordinary court into the court of king's bench [x]: though so little is usually done on the common law side of the court, that I have met with no traces of any writ of error [y] being actually brought, since the fourteenth year of queen Elizabeth, *A. D.* 1572.

IN this ordinary, or legal, court is also kept the *officina justitiae*: out of which all original writs that pass under the great seal, all commissions of charitable uses, sewers, bankruptcy, [*49] idiocy, lunacy, and the like, do issue; and for which it is always open to the subject, who may there at any time demand and have, *ex debito justitiae*, any writ that his occasions may call for. These writs (relating to the business of the subject) and the returns [*49] to them were, according to the simplicity of antient times, originally kept in a hamper, *in hanaperio*; and the other (relating to such matters wherein the crown is immediately or mediately concerned) were preserved in a little sack or bag, *in parva baga*; and thence hath arisen the distinction of the *hanaper* office, and *petty bag* office, which both belong to the common law court in chancery.

...

p   4 Rep. 54.
q   4 Inst. 80.
r   Co. Litt. 171. F. N. B. 62.
s   Bro. *Abr. tit. dower.* 66. Moor. 565.
t   Bro. *Abr. t. dismes.* 10.
u   2 Roll. Abr. 469.
w   Cro. Jac. 12. Latch 112.
x   Yearbook, 18 *Edw. III.* 25. 17 *Ass.* 24. 29 *Ass.* 47. Dyer. 315. 1 Roll. Rep. 287. 4 Inst. 80.
y   The opinion of lord keeper North in 1682 (1 Vern. 131. 1 Equ. Cas. abr. 129.) that no such writ of error lay, and that an injunction might be issued against it, seems not to have been well considered.

[\*254]

### Chapter the seventeenth.

#### Of injuries proceeding from or affecting, the Crown.

Having in the nine preceding chapters considered the injuries, or private wrongs, that may be offered by one subject to another, all of which are redressed by the command and authority of the king, signified by his original writs returnable in his several courts of justice, which thence derive a jurisdiction of examining and determining the complaint; I proceed now to inquire of the mode of redressing those injuries to which the crown itself is a party: which injuries are either where the crown is the aggressor, and which therefore cannot without a solecism admit of the same kind of remedy [a]; or else is the sufferer, and which then are usually remedied by peculiar forms of process, appropriated to the royal prerogative. In treating therefore of these, we will consider first, the manner of redressing those wrongs or injuries which a subject may suffer from the crown, and then of redressing those which the crown may receive from a subject.

I. That the king can do no wrong, is a necessary and fundamental principle of the English constitution; meaning only, as has formerly been observed [b], that, in the first place, whatever may be amiss in the conduct of public affairs is not chargeable [\*255] personally on the king; nor is he, but his ministers, accountable for it to the people; and, secondly, that the prerogative of the crown extends not to do any injury; for, being created for the benefit of the people, it cannot be exerted to their prejudice [c]. Whenever therefore it happens, that, by misinformation or inadvertence, the crown hath been induced to invade the private rights of any of it's subjects, though no action will lie against the sovereign [d], (for who shall command the king [e]?) yet the law hath furnished the subject with a decent and respectful mode of removing that invasion, by informing the king of the true state of the matter in dispute: and, as it presumes that to *know of* an injury and to *redress* it are inseparable in the royal breast, it then issues as of course, in the king's own name, his orders to his judges to do justice to the party aggrieved.

The distance between the sovereign and his subjects is such that it rarely can happen, that any *personal* injury can immediately and directly proceed from the prince to any private man: and, as it can so seldom happen, the law in decency supposes that it never will or can happen at all; because it feels itself incapable of furnishing any adequate remedy, without infringing the dignity and destroying the sovereignty of the royal person, by setting up some superior power with authority to call him to account. The inconveniency therefore of a mischief that is barely possible, is (as Mr. Locke has observed [f]) well recompensed by the peace of the public and security of the government, in the person of the chief magistrate being set out of reach of coercion. But injuries to the rights of *property* can scarcely be committed by the crown without the intervention of it's officers; for whom the law in

---

a    Bro. *Abr. t. petition.* 12. *t. prerogative.* 2.
b    Book I. ch. 7. pag. 243—246.
c    Plow. 487 587.
d    Jenkins. 78.
e    Finch. L. 83. [*I.e.*, Henry Finch, Law, or a Discourse Thereof (1627). *See supra.*]
f    on Gov. p. 2. §. 205.

matters of right entertains no respect or delicacy, but furnishes various methods of detecting the errors or misconduct of those agents, by whom the king has been deceived, and induced to do a temporary injustice.

[*256]

THE common law methods of obtaining possession or restitution from the crown, of either real or personal property, are, 1. By *petition de droit*, or petition of right, which is faid to owe it's original to king Edward the first [g]. 2. By *monstrans de droit*, manifestation or plea of right: both of which may be preferred or prosecuted either in the chancery or exchequer [h] . The former is of use, where the king is in full possession of the hereditaments or chattels, and the party suggests such a right as controverts the title of the crown, grounded on facts disclosed in the petition itself; in which case he must be careful to state truly the whole title of the crown, otherwise the petition shall abate [i]: and then, upon this answer being endorsed or underwritten by the king, *soit droit fait al partie* (let right be done to the party [j]) a commission shall issue to inquire of the truth of this suggestion [k]: after the return of which, the king's attorney is at liberty to plead in bar; and the merits shall be determined upon issue or demurrer, as in suits between subject and subject. Thus, if a disseisor of lands, which are holden of the crown, dies seised without any heir, whereby the king is *prima facie* intitled to the lands, and the possession is cast on him either by inquest of office, or by act of law without any office found; now the disseisee shall have remedy by petition of right, suggesting the title of the crown, and his own superior right before the disseisin made [l]. But where the right of the party, as well as the right of the crown, appears upon record, there the party shall have *monstrans de droit*, which is putting in a claim of right grounded on facts already acknowleged and established, and praying the judgment of the court, whether upon those facts the king or the subject hath the right. As if, in the case before supposed, the whole special matter is found by an inquest of office, (as well the disseisin, as the dying without any heir) the party grieved shall have *monstrans de droit* at the common law [m]. But as this seldom happens, and [*257] the remedy by *petition* was extremely tedious and expensive, that by *monstrans* was much enlarged and rendered almost universal by several statutes, particularly 36 Edw. III. c. 13. and 2 & 3 Edw. VI. c. 8. which also allow inquisitions of office to be traversed or denied, wherever the right of a subject is concerned, except in a very few cases [n]. These proceedings are had in the petty bag office in the court of chancery: and, if upon either of them the right be determined against the crown, the judgment is, *quod manus domini regii amoveantur et possessio restituatur petenti, salvo jure domini regis* [o]; which last clause is always added to judgments against the king [p], to whom no *laches* is ever imputed, and whose right is (till

---

g  Bro. Abr. t. prerog. 2. Fitzh. Abr. t. error. 8.
h  Skin. 609.
i  Finch. L. 256.
j  State Tr. vii. 134.
k  Skin. 608. Raft. Entr. 461.
l  Bro. Abr. t. petition. 20. 4 Rep. 58.
m  4 Rep. 55.
n  Skin. 608.
o  2 Inst. 695. Rast. Entr. 463.
p  Finch. L. 460.

some late statutes <u>q-1772) was</u> never defeated by any limitation or length of time. And by such judgment the crown is instantly out of possession <sup>q</sup>; so that there needs not the indecent interposition of his own officers to transfer the seisin from the king to the party aggrieved.

II. Tʜᴇ methods of redressing such injuries as the crown may receive from a subject, are,

1. Bʏ such usual common law actions, as are consistent with the royal prerogative and dignity. As therefore the king, by reason of his legal ubiquity, cannot be disseised or dispossessed of any real property which is once vested in him, he can maintain no action which supposes a dispossession of the plaintiff; such as an assise or an ejectment <sup>r</sup>: but he may bring a *quare impedit* <sup>s</sup>, which always supposes the complainant to be seised or possessed of the advowson: and he may prosecute this writ, as well as every other, as well in the king's bench <u>u-1800</u> as the common pleas, or in whatever court he pleases. So too he may bring an action of trespass for taking away his goods; but <u>such actions are</u> not <u>usual (though in strictness maintainable)</u> for breaking his close, or any injury done upon his soil or possession <sup>t</sup>. It would be equally tedious and difficult, to run through every minute **[*258]** distinction that might be gleaned from our antient books with regard to this matter; nor is it in any degree necessary, as much easier and more effectual remedies are usually obtained by such prerogative modes of process, as are peculiarly confined to the crown.

2. Sᴜᴄʜ is that of *inquisition* or *inquest of office:* which is an enquiry made by the king's officer, his sheriff, coroner, or escheator, *virtute officii*, or by writ to them sent for that purpose, or by commissioners specially appointed, concerning any matter that intitles the king to the possession of lands or tenements, goods or chattels <sup>u</sup>. This is done by a jury of no determinate number; being either twelve, or less, or more. As, to enquire, whether the king's tenant for life died seised, whereby the reversion accrues to the king: whether A, who held immediately of the crown, died without heirs; in which case the lands belong to the king by escheat: whether B be attainted of treason; whereby his estate is forfeited to the crown: whether C, who has purchased lands, be an alien; which is another cause of forfeiture: whether D be an idiot *a nativitate*; and therefore, together with his lands, appertains to the custody of the king: and other questions of like import, concerning both the circumstances of the tenant, and the value or identity of the lands. These inquests of office were more frequently in practice than at present, during the continuance of the military tenures amongst us: when, upon the death of every one of the king's tenants, an inquest of office was held, called an *inquisitio post mortem*, to enquire of what lands he died seised, who was his heir, and of what age, in order to intitle the king to his marriage, wardship, relief, *primer-seisin*, or other advantages, as the circumstances of the case might turn out. <mark>To superintend and regulate these enquiries the court of wards and liveries was</mark>

---

q-1772     <u>21 Jac. I. c. 2. 9 Geo. III. c. 16.</u>
q    Ibid. 459.
r    Bro. *Abr. t. prerogative*. 89.
s    F.N.B. 32.
u-1800     *Dyversite de courtes. c. bank le roy.*
t    Bro. *Abr. t. prerog.* 130. F.N.B. 90. <u>Year book. 4 Hen. IV. 4.</u>
u    Finch. L. 323, 4, 5.

instituted by statute 32 Hen. VIII. c. 46. which was abolished at the restoration of king Charles the second, together with the oppressive tenures upon which it was founded.

[\*259]

WITH regard to other matters, the inquests of office still remain in force, and are taken upon proper occasions; being extended not only to lands, but also to goods and chattels personal, as in the case of wreck, treasure-trove, and the like; and especially as to forfeitures for offences. For every jury which tries a man for treason or felony, every coroner's inquest that sits upon a *felo de se*, or one killed by chancemedley, is, not only, with regard to chattels, but also as to real interests, in all respects an inquest of office: and if they find the treason or felony, or even the flight of the party accused (though innocent) the king is thereupon, by virtue of this *office found*, intitled to have his forfeitures; and also, in the case of chancemedley, he or his grantees are entitled to such things, by way of deodand, as have moved to the death of the party.

THESE inquests of office were devised by law, as an authentic means to give the king his right by solemn matter of record; without which he in general can neither take, nor part from, any thing [w]. For it is a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon or seise any man's possessions upon bare surmises without the intervention of a jury [x]. It is however particularly enacted by the statute 33 Hen. VIII. c. 20. that, in case of attainder for high treason, the king shall have the forfeiture instantly, without any inquisition of office. And, as the king hath no title at all to any property of this sort before office found, therefore by the statute 18 Hen. VI. c. 6. it was enacted, that all letters patent or grants of lands and tenements before office found, or returned into the exchequer, shall be void. And, by the bill of rights at the revolution, 1 W. & M. st. 2. c. 2, it is declared, that all grants and promises of fines and forfeitures of particular persons before conviction (which is here the inquest of office) are illegal and void; which indeed was the law of the land in the reign of Edward the third [y].

[\*260]

WITH regard to real property, if an office be found for the king, it puts him in immediate possession, without the trouble of a formal entry, provided a subject in the like case would have had a right to enter; and the king shall receive all the mesne or intermediate profits from the time that his title accrued [z]. As on the other hand, by the *articuli super cartas* [a], if the king's escheator or sheriff seise lands into the ~~king's~~ kings hand without cause, upon taking them out of the king's hand again, the party shall have the mesne profits restored to him.

IN order to avoid the possession of the crown, acquired by the finding of such office, the subject may not only have his *petition of right*, which discloses new facts not found by the office, and his *monstrans de droit*, which relies on the facts as found; but also he may (for the most part) *traverse* or deny the matter of fact itself, and put it in a course of trial by the

w   Finch. L. 82.
x   Gilb. hist. exch. 132. Hob. 347.
y   2 Inst. 48.
z   Finch. L. 325, 326.
a   28 Edw. I. st. 3. c. 19.

common law process of the court of chancery: yet still, in some special cases, he hath no remedy left but a mere petition of right [b]. These *traverses*, as well as the *monstrans de droit*, were greatly enlarged and regulated for the benefit of the subject, by the statutes before-mentioned, and others [c]. And in the traverses thus given by statute, which came in the place of the old petition of right, the party traversing is considered as the plaintiff [d]; and must therefore make out his own title, as well as impeach that of the crown, and then shall have judgment *quod manus domini regis amoveantur, &c.*

3. WHERE the crown hath unadvisedly granted any thing by letters patent, which ought not to be granted [e], or where the patentee hath done an act that amounts to a forfeiture of the [*261] grant [f], the remedy to repeal the patent is by writ of *scire facias* in chancery [g]. This may be brought either on the part of the king, in order to resume the thing granted; or, if the grant be injurious to a subject, the king is bound of right to permit him (upon his petition) to use his royal name for repealing the patent in a *scire facias* [h]. And so also, if upon office untruly found for the king, he grants the land over to another, he who is grieved thereby, and traverses the office itself, is intitled before issue joined to a *scire facias* against the patentee, in order to avoid the grant [i].

4. AN *information* on behalf of the crown, filed in the exchequer by the king's attorney general, is a method of suit for recovering money or other chattels, or for obtaining satisfaction in damages for any personal wrong [k] committed in the lands or other possessions of the crown. It differs from an information filed in the king's bench, of which we shall treat in the next book; in that *this* is instituted to redress a private wrong, by which the property of the crown is affected, *that* is calculated to punish some public wrong, or heinous misdemesnor in the defendant. It is grounded on no writ under seal, but merely on the intimation of the king's officer the attorney-general, who "gives the court to understand and be informed of" the matter in question; upon which the party is put to answer, and trial is had, as in suits between subject and subject. The most usual informations are those of *intrusion* and *debt*: *intrusion* for any trespass committed on the lands of the crown [l], as by entering thereupon without title, holding over after a lease is determined, taking the profits, cutting down timber, or the like; and *debt*, upon any contract for monies due to the king, or for any forfeiture due to the crown upon the breach of a penal statute. This is most commonly used to recover forfeitures occasioned by transgressing those laws, which are enacted for the establishment and [*262] support of the revenue: others, which regard mere matters of police and public convenience, being usually left to be inforced by common informers in the *qui tam* informations or actions of which we have formerly spoken [m]. But

---

b   Finch. L. 324.
c   Stat. 34 Edw. III. c. 13. 36 Edw. III. c. 13. 2 & 3 Edw. VI. c. 8.
d   Law of *nisi prius*. 201, 202. [*I.e.*, INTRODUCTION TO THE LAW RELATIVE TO TRIALS AT NISI PRIUS (eds. 1760, 1767, 1768, etc.). *See supra.*]
e   See book II. ch. 21.
f   Dyer. 198.
g   3 Lev. 220. 4 Inst. 88.
h   2 Ventr. 344.
i   Bro. *Abr. t. scire facias.* 69. 185.
k   Moor. 375.
l   Cro. Jac. 212. 1 Leon. 48. Savil. 49.
m   See pag. 160.

after the attorney general has informed upon the breach of a penal law, no other information can be received [n]. There is also an information *in rem*, when any goods are supposed to become the property of the crown, and no man appears to claim them, or to dispute the title of the king. As antiently in the case of treasure-trove, wrecks, waifs, and estrays, seised by the king's officer for his use. Upon such seisure an information was usually filed in the king's exchequer, and thereupon a proclamation was made for the owner (if any) to come in a claim the effects; and at the same time there issued a commission of *appraisement* to value the goods in the officer's hands: after the return of which, and a second proclamation had, if no claimant appeared, the goods were supposed derelict, and condemned to the use of the crown [o]. And when, in later times, forfeitures of the goods themselves, as well as personal penalties on the parties, were inflicted by act of parliament for transgressions against the laws of the customs and excise, the same process was adopted in order to secure such forfeited goods for the public use, though the offender himself had escaped the reach of justice. ...

n  Hard. 201.
o  Gilb. hist. of exch. ch. 13.

[*426]

CHAPTER THE THE TWENTY SEVENTH.

OF PROCEEDINGS IN THE COURTS OF EQUITY.

[*428] ...

On the other hand, the jurisdiction of the court of chancery doth not extend to some causes, wherein relief may be had in the exchequer. No information can be brought, in chancery, for such mistaken charities, as are given to the king by the statutes for suppressing superstitious uses. Nor can chancery give any relief against the king, or direct any act to be done by him, or make any decree disposing of or affecting his property; not even in cases where he is a royal trustee [i]. Such causes must be determined in the court of exchequer, as a court of revenue; which alone has power over the king's treasure, and the officers em-[*429]ployed in it's management: unless where it properly belongs to the duchy court of Lancaster, which hath also a similar jurisdiction as a court of revenue; and like the other, consists of both a court of law and a court of equity.

i  Huggins *v.* Yorkbuildings Company. *Canc.* 24 Oct. 1740. Reeve *v.* Attorney-general. *Canc.* 27 Nov. 1741. Lightboun *v.* Attorney-general. *Canc.* 2 May, 1743.

21

## STATUTES

27 Hen. VIII. ch. 27, sec. 10 (1536), COLLECTION OF ALL THE STATUTES NOW IN USE (Ferdinando Pulton, ed. 1670)

   ...

  First The King our said Sovereign Lord, by authority aforesaid, ordaineth, maketh establisheth, and erecteth a certain Court, commonly to be called the Court of the Augmentations of the Revenues of the Kings Crown, which Court by the authority aforesaid continually shall be a Court of Record, and shall have one great seal, and one privy seal, to be engraved, and made after such form, fashion, and manner, as shall be appointed by the Kings Highness, and shall remain and be ordered as hereafter shall be declared.

  And be it enacted by authority aforesaid, That there shall be one certain person to be named and assigned by the Kings Highness, which shall be Chancellor of the said Court, and shall be chief and principal Officer of the same Court, and shall be called Chancellor of the Court of the Augmentations of the Revenues of the Kings Crown, and shall have the keeping of the said great seal and privy seal to be assigned for the said Court.

   ...

  Also the said Chancellor shall have power and authority to take recognisances of every particular Receiver, which shall be  assigned for the said Court, and of his sureties, for the sure paiment of his receits: and also to take recognisances in the Kings name of every Fermer, Bailiff, Reve, or other accomptants, for the true paiment of the receits, and of every person and persons which shall be indebted to the Kings Highness for any arrerages of his receit, ferm, or charge, and for any other cause, for and concerning any of the premisses, and that all such recognisances of what sum soever they be, shall be as good and effectual in the Law, to all intents and purposes, as recognisances taken in the Kings Chancery, or elsewhere before any Judge of Record.

  Also it is ordained by authority aforesaid, That the Chancellor of the same Court for the time being, shall have full power and authority to award writs of Scire facias under the Great Seal of his Office, upon every such recognisance in the said Court to be taken, if case so require, and to hold plee upon the same, and to award execution to all intents and purposes, as is used and accustomed to be done in the Kings High Court of Chancery. Provided always, That if any issue or trial, triable by the verdict of twelve men, fortune to arise in the pleading of the same, that then in every such case, the said Chancellor shall and may deliver the record thereof to the Justices of the Kings Bench for the time being, and thereupon the said Court of the Kings Bench to do every thing for the trial of the same issue, as they ought to do in case the said issue or trial had been sent or delivered to them out of the Kings Court of Chancery. And after the trial thereof in due form had, and the judgment thereupon given, the Justices of the Kings Bench to have power to award execution accordingly, and the money thereof coming, to be delivered by the same Justices or Clerk of the papers of the same Court, to the Treasurer of the said Court of Augmentations to the Kings use.

18 Eliz. I, ch. 18 (1576), 2 THE STATUTES AT LARGE 621 (Owen Ruffhead, ed., 1770):

An Act for Trial of *Nisi prius* in the County of *Middlesex*.

'Whereas heretofore all Issues joined in any of the Courts of Record at *Westminster*, triable in the County of *Middlesex*, have been usually tried at the Bars in the said Courts in *Westminster:* (2) And whereas a great Number of Actions have of late Years been brought in the said County of *Middlesex*, for Speediness of Trial, and that for small Causes, (3) by Reason whereof, the Judges of the same Courts have not only been letted and hindred in their Proceedings in Matters of great Weight depending before them by Demurrer or otherwise, to the great Delay of Justice, and Occasion of great Expences and Charges of a Number of the Queen's Majesty's most loving Subjects, but also to the great Trouble and Charge of the Freeholders of the said County, who are compelled to give daily Attendance at the several Bars of the same several Courts for the Trial of the said Issues:' (4) For Reformation whereof, Be it enacted ... That from henceforth the Chief Justice of *England* for the Time being, upon Issues joined or to be joined in the Court called the King's Bench, or in the Court of Chancery, the Chief Justice of the Common Pleas for the Time being, upon Issues joined or to be joined in the Court of Common Pleas, and the Chief Baron of the Exchequer for the Time being, upon Issues joined or to be joined in the Court of the Exchequer, (5) or in the Absence or Default of any of them, two other Judges or Barons of the same several Courts where it shall happen either of the same Chief Justices, or the Chief Baron, for the Time being, to be Absent, (6) shall or may at their Discretions, within the said Hall called *Westminster-Hall* in *Westminster*, or in the Place where the Court of Exchequer is commonly kept in the said County of *Middlesex*, as Justices of *Nisi prius* for the said County of *Middlesex*, within the Term-time, or within four Days next after the End of every or any Term severally, try all Manner of Issues joined or to be joined in any of the said several Courts, which by the ordinary Course of the Laws of this Realm ought to be tried in any of the said Courts by an Inquest of the said County of *Middlesex:* (7) And that Commissions and Writs of *Nisi prius* shall be awarded in such Cases, and in such Form, as they are or have been used in any other Shire of this Realm: (8) And that it shall be lawful for any Person or Persons henceforth, upon reasonable Warning given to the adverse Party or his or their Attorney, as hath been accustomed in such like Cases, to take or sue forth Writs and Records of *Nisi Prius*, for the Trial of the said Issues in the said County of *Middlesex*, as they may do upon any Issue joined, triable in any other County, (9) and thereupon take the Jury in such Manner and Form, and with awarding of *Tales de Circumstantibus*, and awarding the Nonsuit, as is used for the Trial of Issues joined, or Nonsuits to be awarded, in the said Courts or any of them, triable within the City of *London*, or within any other County of this Realm of *England:* (10) And that the Sheriffs of the said County of *Middlesex* for the Time being, shall make Return of all Writs of *Nisi prius* which shall be delivered to them, or to their or to any of their sufficient Deputy for the Time being, before the said Judges, Baron or Barons and every of them, and shall give their Attendance upon the said Justices, Baron and Barons, as well for the Returning of such *Tales* as shall be prayed *de Circumstantibus*, for the Trying of the said Issues, as for the Doing and Executing of all other Thing and Things to the Office of Sheriff in such Case belonging and appertaining: (11) And that all Persons to be impanelled in such Juries, and the Parties to the same Issues and Suits, and the Witnesses for the same, shall be

23

charged and bound in such and the like Sort, and upon like Pains and Penalties for their not Appearance and Attendance, or for their or any of their Misdemeanour or Default before the said Justices of *Nisi prius*, as they should have been, if the same Issue had been tried in the Court from whence the *Nisi prius* thereof was awarded: (12) All which several Trials so to be had before the said several Justices, Baron or Barons, shall by Authority of this present Parliament stand and be as good and available in Law, as if the same had been tried in Term-time, at the Bar in the Court where such Issue was joined or triable; any Law, Usage or Custom heretofore made, used or accustomed to the contrary hereof in any wise notwithstanding.

## CASES

Y.B. Trin. 38 Ed. III fo. 14., Fitz. Abr. tit. *Ayd de roy*, pl. 49, Seipp No. 1364.069
<http://www.bu.edu/phpbin/lawyearbooks/display.php?id=13066> (C.P. 1364)

    H. of C., Earl of D., brought a writ against R. of C., who prayed aid of the king, because the king had given the manor that was in demand to his ancestor in fee tail, saving the reversion to himself and his heirs, and the aid was granted. And he sued in the Chancery to try the warranty to expedite (in hast de) his suit. And when the warranty was tried, they pleaded to the action of the demandant (plaintiff), so that the king was apprised by their plea that he did not have the right to recover. Therefore counsel came to the bar and showed a writ to the Court for the tenant (defendant), by which the king had sent his will to the Justices, which stated the whole case, how they had (esploit) in the Chancery, and commanded them (Latin begins) that they supersede all (Latin ends). Therefore Thorp CJCP commanded the tenant (defendant) to go away (aller a Dieu). And Thorp CJCP said that if one prayed in aid of the king, and had a warranty against the king, the parties would come into the Chancery, and there the warranty would be tried between them, and when the warranty was tried, then they would plead to the action in the same place, because otherwise by assent between the demandant (plaintiff) and the tenant (defendant) the king could be put to loss to compensate to the value by force of the warranty, where perhaps the demandant (plaintiff) did not have the right to recover. And in case they pleaded to the country (Pais), then they would surcease in Chancery, and the king would send the Court a writ to proceed to take the inquest.

Y.B. Trin. 13 Ed. IV fo. 8, pl. 1, Fitz. Abr. tit. *Prerogative*, pl. 8, Seipp No. 1473.001
<http://www.bu.edu/phpbin/lawyearbooks/display.php?id=20081> (Chancery 1473)

    and then it was rehearsed that the course of the Court (place) is (that) when an issue is taken on a Traverse, etc. that this Court will make the Venire facias returnable in King's Bench, so that there they can have Venire facias sicut alias, etc and the opinion of the Court was that this Court of the Chancery cannot make the Allias (Venire facias sicut alias), because they (Chancery) cannot record here 'that the sheriff did not send the writ' (quod vicecomite non mandavit breve) in King's Bench, so the Alias (Venire facias sicut alias) ought to be (awarded) in (King's) Bench, etc.