UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael F. Wasserman

     vs.                   Civil Action No. 06-1005 (RWR)

Denise Rodacker, *et al*.

**APPENDIX I TO MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS [17]**

These materials related to plaintiff's argument that the Seventh Amendment preserves the right to a trial by jury in cases of claims brought against the sovereign where the sovereign has waived immunity and the claimant has not waived the right to a trial by jury.

For an explanation of the abbreviations used in the sources, see, *e.g.*, *Table of Abbreviations Used in Jurisprudence in* 1 Benjamin V. Abbott, Dictionary of Terms and Phrases Used in American or English Jurisprudence viii-xliii (1878); see also Law Reports and Abbreviations Database at the University of New South Wales Freehills Law Library.

Dated: November 6, 2006

Respectfully submitted,


Michael F. Wasserman
Plaintiff, *pro se*
D.C. Bar No. 442898
9355 Tovito Dr.
Fairfax, VA 22031-3824
(703) 591-0807
mfwddc@gmail.com

# TABLE OF CONTENTS

Definitions.................................................3

"Enquest," [John Rastell], Les Termes de la Ley (1721):............................................ 3

"Issue," [John Rastell], Les Termes de la Ley (1721):............................................ 3

"Monstrans de Droit," [John Rastell], Les Termes de la Ley (1721):........................3

"Nisi prius," [John Rastell], Les Termes de la Ley (1721):............................................ 3

"Nisi prius," Giles Jacob, A New Law-Dictionary (Dublin, 1773):....................... 3

"Office," [John Rastell], Les Termes de la Ley (1721):............................................ 4

"Travers," [John Rastell], Les Termes de la Ley (1721):............................................ 4

"Venire facias," [John Rastell], Les Termes de la Ley (1721):.................................... 4

Treatises..................................................5

William Staunford, An Exposicion of the Kinges Prerogative (1st ed. 1567) & (last ed. 1607)............................................. 5

Henry Finch, Nomotexnia: Cestascavoir, Un Description del Common Leys Dangleterre Solonque les Rules del Art (1613):........ 20

Henry Finch, Law: or a Discourse Thereof (1678).............................................. 22

Edward Coke, The Second Part of the Institutes of the Laws of England: Containing the Exposition of Many Ancient and Other Statutes (1669)....... 26

Edward Coke, The Fourth Part of the Institutes of the Laws of England: Concerning the Jurisdiction of Courts (1648)............................................... 39

Thomas Wood, An Institute of the Laws of England (1st ed. 1720)....................... 43

Thomas Wood, An Institute of the Laws of England (3d ed. 1724)........................ 44

Thomas Wood, An Institute of the Laws of England (9th ed. 1768) & (10th ed. 1772) .......................................................... 46

A General Abridgment of Cases in Equity, Argued and Adjudged in the High Court of Chancery (4th ed. 1755).................. 48

Francis Buller, An Introduction to the Law Relative to Trials at Nisi Prius (Dublin, 1791).................................................. 50

3 William Blackstone, Commentaries on the Laws of England (Oxford, 1768) (Philadelphia, 1772) (London, 1800).....52

Francis S. Sullivan, An Historical Treatise on the Feudal Law, and the Constitution and Laws of England (1772)....................... 60

Statutes...................................................63

36 Edw. III, ch. 13 (1362), 1 The Statutes at Large 310 (Owen Ruffhead, ed., 1763): .......................................................... 63

27 Hen. VIII. ch. 27, sec. 10 (1536), Collection of All the Statutes Now in Use (Ferdinando Pulton, ed., 1670)............. 64

18 Eliz. I, ch. 18 (1576), 2 The Statutes at Large 621 (Owen Ruffhead, ed., 1770):.... 65

Cases.....................................................67

Y.B. Mich. 24 Ed. III, f. 64-65, pl. 69 (C.P. 1350)................................................. 67

Seipp's Abridgment, No. 1350.182........ 67

Y.B. Ass. 29 Ed. III, f. 145, pl. 43 (K.B. 1355)................................................. 70

Seipp's Abridgment, No. 1355.221ass.... 70

Y.B. Trin. 38 Ed. III fo. 14. (C.P. 1364).....71

Seipp's Abridgment, No. 1364.069........ 71

Y.B. Trin. 13 Ed. IV fo. 8, pl. 1 (Ch. 1473)... 72

Seipp's Abridgment, No. 1473.001........ 72

Y.B., Mich. 21 Hen. VII, f. 35, pl. 44 (K.B. 1505)................................................. 73

The Case of the Abbot of Strata Mercella, 9 Coke Rep. 24, 30-33, 77 Eng. Rep. ___, ___ (K.B. 1591).................................... 74

Wikes's Case, Lane 54, 145 Eng. Rep. ___ (Ex. Ch. 1609)..................................... 77

**DEFINITIONS**

"Enquest," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

*Enquest.*

*Enquest* is that inquiry which is made by Jurors in all Causes civil or criminal touching the matter of fact. And such Inquiry is either *ex officio*, which are called Inquests of Office, and are traversable, or at the mise of the parties. This word is used in the Statutes of 25 E. 3. c. 3. 28 E. 3. c. 13. and almost in all Statutes that speak of Trials by Jurors.

"Issue," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

*Issue.*

*Issue*, *Exitus*, cometh of the French *Issuer*, i.e., to go out. It has divers Applications in the Common Law; sometimes it is used for the Children begotten between a Man and his Wife; sometimes for Profits growing from Amerciaments and Fines; sometimes for Profits of Lands or Tenements; and sometime for that Point of Matter depending in Suit, whereupon the Parties join, and put their Cause to the Trial of the Jury: *Issue* in this last Signification is either General, or Special: General Issue is that whereby it is referred to the Jury to bring in their Verdict, whether the Defendant hath done any such Thing as the Plaintiff layeth to his Charge. Special Issue is when Special Matter is alledged by the Defendant for his Defence, and both Parties join thereupon, and so go rather to a Demurrer, if it be *Quæstio Juris*, or to Trial by the Jury, if it be *Quæstio Facti*.

"Monstrans de Droit," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

*Monstrans de Droit.*

*Monstrans de Droit* is a Suit in Chancery for the Subject to be restored to Lands and Tenements which he shews to be his Right, but are by Office found to be in the Possession of another that is lately dead, by which Office the King is intitled to a Chattel, Free-hold, or Inheritance in the said Lands. And this *Monstrans de Droit* is given by the Statutes of *34 E. 3. cap. 14.* and *36 E. 3. cap. 13*. See *Coke, lib. 4. fol. 54. B.* in the Case of the Wardens and Commonalty of *Sadlers*. [76 Eng. Rep. 1012, 1013-14 (Ch. 1588).]

"Nisi prius," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

*Nisi prius.*

*Nisi prius* is a Writ judicial, and lies where an Enquest is empanelled and returned before the Justices of the Bench; then the Plaintiff or the Defendant may have this Writ directed to the Sheriff, commanding him to cause the Enquest to come before the Justices in the same County at their coming, and that for the Ease of the Enquest.

"Nisi prius," GILES JACOB, A NEW LAW-DICTIONARY (Dublin, 1773):

*Nisi prius.*

NISI PRIUS, Is a commission to justices of *Nisi prius*; so called from a judicial writ of *Distringas*, whereby the sheriff is commanded to distrain the impanelled jury to appear at *Westminster* before the justices at a certain day in the following term, to try some cause,

3

*Nisi prius Justic.' Domini Regis ad assises capiend. venerint, viz.* unless the justices come before that day to such a place, *&c.* 2 *Inst.* 424. 4 *Inst.* 159. A writ of *Nisi prius* is where an issue is joined, then there goes a *venire* to summon the jury to appear at a day in court; and upon the return of the *Venire*, with the panel of the jurors names, the record of *Nisi prius* is made up and sealed, and there goes forth the writ of *Distringas* to have the jurors in court, *Nisi prius Justic.' venerint, &c.* such a day in such a county, to try the issue joined between the parties. 2 *Lill.* 215. ... All civil causes at issue in the courts at *Westminster*, are brought down in the *Vacation* before the day of appearance appointed for the jury above, in the county where the action is laid, to be tried there; which is usually done in two or three days: And then upon the return of the verdict given by the jury to the court above, the judges there give judgment for the party for whom the verdict is found: and these trials by *Nisi prius* are for the ease of the country, the parties, jurors, and witnesses, by saving them the charge and trouble of coming to *Westminster*; but in matters of great weight and difficulty, the judges above upon motion and information, will often retain causes to be tried there, tho' laid in the country, and then the juries and witnesses in such causes must come up to the courts at *Westminster* for trial at the bar: And the King hath his election to try his suits at the bar, or in the country, *&c. Wood's Inst.* 479.

"Office," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

### Office.

*Office* doth not only signifie that Function, by Vertue whereof a Man hath some Employment in the Affairs of another, but also an Inquisition made to the King's Use of any Thing by Vertue of his Office who enquireth.

"Travers," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

### Travers.

*Travers* sometimes signifies to deny, sometimes to overthrow or undo a Thing done. ...

The other Signification is found in *Staundf. Prerog. cap. 20.* the whole Chapter, who speaking of Traversing an Office, saith, That it is nothing else but to prove that an Inquisition taken of Goods or Lands by the Escheator is defective, and untruly made. ...

"Venire facias," [JOHN RASTELL], LES TERMES DE LA LEY (1721):

### Venire facias.

*Venire facias*, it is a Process directed to the Sheriff, or to the Coroners (if the Sheriff be challenged) to summon a Jury to try an Issue joined between Party and Party, or the King and a Subject; and it is also a Process upon an *Audita Querela*, or upon an Indictment in the King's Bench, or *Venire facias ad computandum*, against Tenant by *Elegit*.

4

# TREATISES

WILLIAM STAUNFORD, AN EXPOSICION OF THE KINGES PREROGATIVE (1st ed. 1567) & (last ed. 1607)

(1st ed. 1567)

[*41b] The fiftenthe chapiter.

*Quando dominus Rex dat vel concedit alicui manerium vel terram cum pertin', nisi faciat in charta sua vel scripto expressam mentionem de feodis mill' advocationibus ecclesiarum, et dotibus cum accidunt ad predictum manerium vel terram pertinen' tunc his diebus rex reservat sibi eadem feoda, advocationes cum dotibus licet inter alias personas non fuerint observata.*

[Stamf. 1567 *42a] It is agreed in.43.E.3. that by the order of the comon law before this statut, if the king had ben seised of a maner to the which advouson had bene appendant, & had geven it to me, notwithstanding that in the kinges grant there hadde bene no mencion made of the advowson nor of these woordes *cum pertin'*, yet thavouson hadde passed from his highnes by the sayde grant: for in those daies the king was but a comon parson, & a write of *Enter sur disseisin*, & all other accions did lye against him as against any other comon person. And therefore in 20.H.3.[1] A write of entrie was brought againste one supposing that he had no entrie but by disseisin, which the king did to the demaundant when he was within age, & also *Wilby*. 24.E.3.[2] reporteth that hee hath sene a write which was *Precipe H. regi Angliæ*, in place whereof is now geven Peticion by hys Prerogative. And so it is said .22.E.3.[3] that in tyme of king H.3. and before the king should be empleded as any other comen person. But king E. his sonne ordeined that none should sue him but be driven to their peticion. Howbeit (saving reformacion of these bookes) I think the law was never so that a man should have any suche accion against the kinge. For *Bracton* which wrote in king H.3. time or nere thereupon, saith in his .iii. booke, under the title *Contra quem competit assisa* in this wise: *Inter cetera videndum est quis sit ille qui deiecit, Princeps*

(last ed. 1607) (matter in [brackets] translated)

[*41b] *Cap. xv.*

[When our Lord the King gives or grants land or a manor with appurtenances, without making express mention in his deed or writing of knights fees, advowsons of churches, and dowers when they fall, belonging to such manor or land, then at this day the King reserves to himself such fees, advowsons, and dowers, albeit that among other persons it has been observed otherwise.[4]]

[Stamf. 1607 *42a] It is agreed in T.43.E.3.f.22. that by the order of the common law before this statut, if the king had beene seised of a manor to the which advowson had beene appendant, & had geeven it to me, notwithstanding that in the kinges grant there had beene no mention made of the advowson nor of these words *cum pertin'*, yet thavouson had passed from his highnes by the said grant: for in those daies the king was but a common person, and a writ of *Entre sur disseisin*, and al other actions did lye against him as against any other common person. And therefore in As.431.A.20.H.3. A writ of entry was brought against one supposing that he had no entry but by disseisin, which the king did to the demaundant when he was within age, & also *Wilby*. M.24.E.3.54. reporteth that hee hath seene a writ which was [*Command Henry, King of England*], in place whereof is now given peticion by his prerog-ative. And so it is said.l.H.22.E.3.3. that in the time of K. H.3. & before the king should be empleded as any other common person. But king E. his son ordeined that none should sue him but be driven to their petition. Howbeit (saving reformation of these bookes) I think the law was never so that a man should have any such action against the king. For *Bracton*, which wrote in king H.3. time or neere thereupon, saith in his third booke, under the title [*Against whom the assise lies*] in this wise: [*Among other things we must see who it*

---

1    [in the margin:] A.20.H.3. ti. assise. in Fitz p.431.
2    [in the margin:] M.24.E.3.f.23
3    [in the margin:] H.22.E.3.f.3.

---

4    *See* 1 THE STATUTES AT LARGE 182-83 (Owen Ruffhead, ed., 1763).

ex potentia vel aliquis nomine suo vel iudex qui male iudicaverit, an privata persona, si ~~autem~~ princeps vel rex vel alius qui superiorem non habuerit nisi deum, contra ipsum non habebitur remedium per assisam, imo tantum erit locus supplicationi, ut factum suum corriget et emendet, quod si non fecerit, sufficiat ei pro pena quod deum expectet ultorem, qui dicit, mihi vindictam et ego retribuam, nisi sit qui dicat quod universitas regni et Barronagium suum ~~hoc~~ facere possit et debeat in Curia ipsius regis, sed si alius ex facto et disseisina principis statim vel ex post facto in seisina~~m~~ ~~extiterit~~ institerit, quamvis talis incidat in assisam et in penam vel tantum ad restitutionem secundum quod seisina ad ipsum pervenerit statim vel **[Stamf. 1567 *42b]** ex post facto sine principe tamen conveniri non poterit per assisam, quia licet ipse quodamodo disseisinam fecerit tamen non per se sed cum alio.s.cum principe et ita quod sine eo respondere non ~~potest~~ potuit, et ~~ideo~~ ita non procedit assisa. Indirecte tamen et quasi ex incidenti etiam sine brevi comprehendi poterit persona principis ad hoc quod factum suum emendet, vel in personam suam redundabit iniuria manifeste, ut ecce. Esto quod impetretur assisa tantum super eum ad quem res translata est sine principe, et qui tenetur ad restitutionem et ad penam, vel ad minus ad restitutionem, et ipse respondeat quod sine principe qui fecit iniuriam per se vel per suos respondere non debeat, quia ipse princeps per se fecit iniuriam vel ipsi duo simul, extunc erit factum et iniuria in manu domini regis, qui dici debet in hoc facto quasi warrantus, et ~~extunc~~ quod tunc poterit si warrantus voluerit factum suum emendare quasi a lege compulsus, et quam in persona sua cum sit ei submissus debet firmiter observare.[1] So that by *Bracton* it appeareth that no action lyeth against the king, but the partie greeved is driven to sue to the King by petition.

is that ejects, a prince by virtue of his power or another in his name, or a judge who has decided improperly, or a private person. If it is the prince or king or another who has no superior except God, the remedy by assise will not lie against him; there will only be opportunity for a petition, that he correct and amend his act. If he fails so to do, let it suffice him for punishment that he await God the Avenger, who says, 'Vengeance is mine and I will repay,' unless one says that the universitas regni and his baronage may and ought to do this in the king's own court. But if another is in seisin by the act and disseisin of the prince, immediately or after a time, though he falls into the assise and is subject to a penalty, or only to restitution according as seisin has come to him at once or **[Stamf. 1607 *42b]** after a time, he nevertheless may not be sued by the assise without the prince, because, though in one sense he has committed the disseisin, he has not done so alone but with another, that is, with the prince, and thus cannot answer without him. The assise, therefore, does not proceed. But indirectly and, so to speak, incidentally, even without writ, the person of the prince may be brought in, to the extent that he amend his deed, or the injuria will clearly fall upon him. For example, suppose that the assise is brought only against him to whom the thing was transferred, who is bound both to restitution and a penalty, or at least to restitution, and he replies that he ought not to answer without the prince because the prince, by himself or by his people, committed the injuria, [or] both together did; from then on the act and the injuria will be on the head of the lord king, who ought to be called the warrantor, so to speak, of the act, and from then on he can if he wishes amend his act, compelled, so to speak by the law, which, since he is subject to it, he ought faithfully to observe.[2]] So that by *Bracton* it appeareth that no action lyeth against the king, but the partie greeved is driven to sue to the King by petition.

---

1   *Cf.* 3 Bracton de Legibus et Consuetudinibus Angliæ 42-43 (George Woodbine, ed., 1977) (underscored words in Staundford; ~~struckout~~ in Woodbine's text).

2   3 Bracton on the Laws and Customs of England 42-43 (Samuel Thorne, rev. & tr., 1977).

**[Stamf. 1567 *59b]**

### Travers.

Traverse for goods was at the common law, but travers for lands found by inquisition before theschetor is geven by the statut made in the 34. yere of E.3. ca. 14. which saieth in this wise. *Item accord est que la ou terres ou tenements sont seisies en la maine le roy per office del eschetor conteignont que le tenant le roy ent fist alienacion sans conge le roy ovesque le tenant le roy per service de chivalier morust seisi des terres & tenements avantdits en son demene come de fee et son heire deins age et puis la cause ratifie en la chauncerie et celuy qui terres sont seisie veigne en la chancerie et voet traverser loffice qui fuit primes pris per mandement le roy, que les dites terres ne soyent my seisables soit a ceo rescev & soit le proces maundes en bank le roy a tryer et oustre faire droit.* This statut extends only to the offices taken *virtute brevis aut commissionis*, & not to offices taken *virtute officii*. And also by this statut though the traverse were founde for the partie, yet might he not have had judgement til *a precedendo ad judicium* had ben awarded. And therefore was ther an other statut made in the 36. yere of the said king the .13. cha. the tenor whereof is this, [*see infra, 36 Edw. III, ch. 13* (1362)]. **[Stamf. 1567 *60a]** By the comon lawe beefore the making of these statutes a man had no other remedy to avoid a false office but onelye his peticion. Howbeit in .24. E.3.[1] *wylby* saieth that if thoffice had bene found before commissioners or any other thanne theschetor, the party should have had his traverse by thorder of the common law. Paraventure he may be moved so to say **[Stamf. 1567 *60b]** because those statutes geve a traverse onely to offices & beefore eschetors, making no mention of any offices & before any commissioners. ...

_____
1  [in the margin:] 24 E.3.f.4.

**[Stamf. 1607 *60a]**

### Travers. Cap. xx.

Traverse for goodes was at the common Law, but travers for lands found by inquisition before theschetors is given by the statute made in the 34th yeare of E.3.ca.14. which saith in this wise. [*Item, it is agreed that when lands or tenements be siezed in the hand of the king by office of the escheator finding that the tenant of the king had alienated without the license of the king, or that the tenant of the king by military service died seised of lands and tenements aforesaid in his demesne as of fee and his heir is within age, and then the cause is ratified in the chancery, and he whose lands be siezed comes in the chancery and wishes to traverse the office that was first taken by order of the king, that the said land were not siezable, let him be received and let the process be sent to the King's Bench for trial and to do right.*] This statute extends only to the offices taken [*by virtue of writ or commission*], and not to offices taken [*by virtue of office*]. And also by this statut, though the traverse were found for the party, yet might hee not have had judgment till a [*proceed to judgment*] had been awarded. And therefore was there another statute made in the 36. yere of the said king, the 13. cha. the tenor whereof is this, [*see infra, 36 Edw. III, ch. 13* (1362)]. **[Stamf. 1607 *60b]** By the common law before the making of these statuts a man had no other remedy to avoid a false office but onely his petition. Howbeit in T.24. E.3.f.54. *Wilby* saith, that if thoffice had been found before commissioners, or any other than thescheator, the party should have his traverse by thorder of the common law. Paradventure he may be moved so to say, **[Stamf. 1607 *61a]** because those statutes give a traverse onely to offices found before thescheators, making no mention of any offices found before any commissioners. ...

**[Stamf. 1567 *65a]** ... And note that if the partie take a travers whiche is judged insufficient in the lawe, thys is peremptorie unto him, & he shall not bee received after to take a newe, as it appeareth .40. lib. Ass.[1] Howbeit .14. E.4. fo. 1. the contrarie oppinion is holden, and that it is not peremptorie, because it procedeth in the Chauncerie which is the court of conscience. But as to that a manne maye answere and saie that a Chaunceller hathe two powers, the one absolute the other ordinarie, and this traverse is before him by an ordinarie power, in whiche case all thinges touchinge the same must proceede as it shoulde before anye other ordinarie judge of the common lawe, and therefore it shoulde appeare by a booke in .4. H.6. fo. 12. et 22. Edward 4. fo. 9.[2] that if the partie be nonsuit in this traverse it is peremptorie unto him, for so might hee delaie the kinge infinitely, *tamen quere*, .... **[Stamf. 1567 *66b]** ... And laste of all it is to bee noted that this traverse extendes not to everie recorde that entitleth the king, but onelye to suche recordes as bee traversable, as an office or suche like, as I shall shewe my mynde therein more fullye in the chapter of Peticion. Other traverses there bee which bee traverses by order of the common lawe. And not by any statute, as traverses upon enditements or presentmentes, whereof I entend not to entreat in this place, amonge which traverses there is also by order of the common lawe a traverse concerninge goodes and cattelles of persons attainted, for the whiche a manne shall traverse with the kinge althoughe his title thereunto bee by double matter of recorde. As take the case to bee, a manne is attainted of treason or felonye or outlawed in a personel accion and after by office it is founde that hee was possessed of a horse or anye other gooddes as his owne proper cattell where in deede they bee the goodes of a straunger, in thys case the saide straunger shall traverse this office with the kinge. So is it if it

[1] [in the margin:] Travers. 24. [*i.e.*, 23.]
[2] [in the margin:] Travers. 12.

**[Stamf. 1607 *65b]** ... And note that if the party take a travers which is judged insufficient in the law, this is peremptory unto him, and he shall not be received after to take anewe, as appeareth in 40. Ass. 24 [1376]. Howbeit T.14. E.4. the contrary opinion is holden, and that it is not peremptory, because it proceedeth in the Chauncerie, which is the Court of Conscience. But as to that a man may answeare and say, that a Chauncellour hath two powers, the one absolute, the other ordinarie, and this travers is before him by an ordinarie power, in which case all things touching the same, must proceed as it should before any other ordinary Judge of the common Lawe, and therefore it should appear by a booke in H.4.H.6.f.2. & H.11.H.4.f.25. P.22.E.4.f.9. Travers 12. H.3.H.7. that if the partie be nonsuit in this traverse, it is peremptorie unto him, for so might he delay the king infinitely, *tamen quere*, .... **[Stamf. 1607 *67a]** ... And last of al, it is to be noted that this travers extends not to every record that entytleth the King, but onely to such records as bee traversable, as an office or such like, as I shall shew my minde therein more fully in the chapter of Petition. Other traverses there bee which bee traverses by order of the common law. And not by any Statute, as traverses upon Endictments or Presentments, whereof I entend not to entreat in this place, among which traverses there is also by order of the common law a traverse concerning goods and cattels of persons attainted, for the which a man shall traverse with the King, although his tytle thereunto bee by double matter of record. As take the case to bee, a man is attainted of treason, or felonie, or outlawed in a personall action, and after by office is found that hee was possessed of a horse or any other goods as his own propper cattell, where indeede they bee the goods of a straunger, in this case the said straunger shall traverse this office with the King. M.4.E.4.fo.24. P.13.E.3.fo.8. & M.47. E.3.fol.26. So is it if it be found by office that a

bee founde by office that a manne outlawed in a personall accion is seised of certeine lands which in deede are my landes, and theschetour by force of that fals office takes the profites, in this case I maye disturbe hym **[Stamf. 1567 \*67a]** without traversinge thoffice. And those cases appeare .4. Edwarde .4. fol. 21. 13. Edward .4. fol. 18. T. 9. H.6. fo. 20. & M. 47. E.3. fo. 29. ... **[Stamf. 1567 \*70a]** ... And note that in the court where thoffice is first returned into, there I shall tende my travers: as if it bee retourned into the Chauncerie, then in the Chauncerye, and if in the Eschequer, then in theschequer, as in deede all offices *virtute officii* are retournable in theschequer onelye, and such as bee *virtute breuis vel commissionis* bee retournable in the Chauncerie. And now by the Statute of .33. H.8. cap. 22. No eschetour maye sitte *virtute officii* onely to fynde anye office of landes holden of the kinge of the value of v. li. or above uppon paine to forfait v. li.

man outlawed in a personall action is seised of certeine lands, which indeede are [my] lands, and theschetour by force of that false office takes the profites, in this case I may disturb him **[Stamf. 1607 \*67b]** without traversing thoffice. And this case appeareth T.9 H.6.fo.20. ... **[Stamf. 1607 \*70b]** ... And note that in the court where the office is first returned into, there I shall tend my travers: as if it be returned into the Chauncery, then in the Chauncerie: and if in the Exchequer, then in the Exchequer, as indeed all offices [*by virtue of office*] are returnable in the Exchequer onely, and such as be [*by virtue of writ or commission*] be returnable in the Chauncery, M.4.E.4.fol.24. And now by the statute of 33.H.8. cap.22. no Eschetor may sit, [*by virtue of office*], onely to find any office of lands holden of the king of the value of [five pounds] or above, upon paine to forfeit [five pounds].

### Monstrance de droit.

The Statute of an. 36. E. 3. that geeveth a traverse saithe in this wise. *Et sil eit nul home qui met challenge ou claime aus terres issint seisies que leschetour maunde lenquest en la chauncellarie deins le mois apres le terres issint seises, et que briefe luy soit livere de certifier la cause de sa seisin en la Chancellarie, et illeoques soit oye sauns delaye de traverser loffice ou auterment iure son droit, et illeoques maunde devant le roye a faire final discussion sauns attender auter maundement.* This statute speakes bothe of traverse and *Monstrance de droit* disjunctively, whereby a man may gather that if *Monstraunce de droit* were not by thorder of the common law as it is saide 13.E.4.f.8. that it is: yet were it geeven by this estatute. And no book that beares date before this statut can I find that treates any thing of *Monstraunce de droit*. Wherfore **[Stamf. 1567 \*70b]** without prejudice to anye mans oppinion, mine oppinion is that it is geven onely by this statute, but whether it bee so or

### Monstraunce de droyt. Cap. 21.

The Statute of anno 36.E.3. that giveth a traverse, saith in this wise. *Et sil eit nul home qui met challenge ou claime ou terres issint seisies que lescheтor maunde lenquest en la chancellary deins le moys apres le terres issint seises, & que brief luy soit livere de certifier lacause de sa seisin en la chancellary, & illoques soit oye sauns delay de traverser loffice ou auterment monstrer son droit, & illoques maunde devant le roy affaire final discussion sans attender auter maundement.* This statute speakes both of Traverse and *Mon-straunce de droyt* disjunctively, whereby a man may gather, that if *Monstraunce de droyt* were not by the order of the common law, as it is said H.9.E.4. fol.52. & P.13.E.4.fol.8. that it is, yet were it given by this statute. And no booke that beares date before this statute can I find that treats any thing of *Monstraunce de droyt*. Wherefore **[Stamf. 1607 \*71a]** (without prejudice to any mans opinion) mine opinion is, that it is given onely by this statute: but whether it bee so, or

not so, I doe not greatly force. Let us see what it is, & in what cases it lieth. If the kinge bee entitled by office or other matter of recorde that is traversable. Howbeit there is no cause of traverse for that the office or recorde is true, in this case anye manne that hath right to the possession of the freeholde of this lande whiche in shewinge of his right is able to confesse this office and avoid it, shalbee receyved if hee be putte out of hys possession or greeved thereby to come into the Chauncerie and shewe his saide right, which beinge there proved to be true, judgement shalbee geeven that the kinges handes be amoved from the possession of the saide landes with the meane issues and profies [*sic*] to be restored unto the party that sueth the said *Monstraunce de droit* As for an example, it is founde by office that the kinges tenaunt by knightes service in chiefe dyed seised of certeine landes whiche are descended to his heir being within age, where in dede in his life time I recovered this land against him, and suing no execution suffred him to dye seised therof, now upon this office returned into the Chauncerie shall I come & shewe my right, that is to saye, this recovere and averre that this lande founde by office is the lande that I recovered or parcell thereof, which being so proved and tried I shall have an *Ouster le maine*. Like law it is if the kings tenaunt disseised me of those landes, and I made my continuall claime or that I had title to enter for condicion broken into the said landes in the life of the kinges tenaunt, and I entred and after was disseised by him. But *quere* if I did not enter in his life, whether now I may bee holpen by a *Monstraunce de droit* uppon the kinges possession. And me thinkes not because I have noe righte in that case till I enter, for until that time the right continueth still in hym, so that the kinge then hath a right ere I have a right which [**71a**] ought too bee preferred and take place since it is but for a tyme before myne. And for these cases see the books in .3.H 7.fo.2. But if the king bee entitled by matter of recorde not traversable as if he be

not so, I do not greatly force. Let us see what it is, and in what cases it lyeth. If the king bee intitled by office, or other matter of record, that is traversable. Howbeit there is no cause of traverse, for that the office or record is true, in this case any man [that] hath right to the possession of the freehold of this land, which in shewing of his right is able to confesse this office, and avoyd it, shall bee received (if hee be put out of is possession, or grieved thereby) to come into the Chauncery and shew his sayd right, which beeing there prooved to bee true, judgement shall be given that the kings hands bee amooved from the possession of the said lands with the meane issues and profits to bee restored unto the party that sueth the sayd *Monstraunce de droyt*. As for an example, It is found by office, that the kings tenaunt by knights service in chiefe died seised of certeine lands which are descended to his heire being within age, where indeed in his life time I recovered this land against him, and suing no execution, suffered him to dye seised thereof, now upon this office returned in the Chauncery shall I come and shew my right, that is to say, this recovery and averre that this land found by office is the land that I recovered, or parcell thereof, which beeing so prooved and tried, I shall have an *Ouster le main*, H.3.H.7. Like law is it if the kings tenaunt disseised mee of those lands, and I made my continuall clayme, or that I had title to enter for condition broken into the said lands in the life of the kings tenant, and I entred, and after was disseised by him. But *quære* if I did not enter in his life, whether now I may bee holpen by a *Monstraunce de droit* upon the kings possession. And mee thinkes not, because I have no right in that case till I enter, for untill that time the right continueth still in him, so that the king [then] hath a right ere I have a right which [**71b**] ought to be preferred and take place, since it is but for a time before mide [*sic*]. And for these cases see the booke of H.3.H 7.fol.2. But if the King bee entitled by matter of Record, not traversable, as

entytled by double matter of record, in this case I can not have my *Monstraunce de droit* no more than I can have in the like case of Traverse, unlesse my title be founde by one of the saide recordes. As take the case to bee, It is founde by office that one suche that holdeth of the kinge disseised mee, and then committed a felonye, upon whome I entred, after whiche entrie the saide tenaunt was attainted of the felonye, in this case I shal have the lande out of the kings hands by a *Monstrance de droit causa qua supra*. And yet the kinges tytle is here by a record and not traversable, that is to saye, thatteinder. But what then? My tytle is also founde by office, and appeareth by matter of recorde, whych beyinge proved true doth clearelye avoide the kynges possession, and that is the reason I shall be received in thys case to a *Monstraunce de droit*, as appeareth in .3. Edward.4.[1] And therewith agreeth the booke 4.Henry.7.[2] where kyng Richard the thirde was attainted of Treason by act of Parliament and found by office that he was seised of certeine land, cometh one B. and saith that in the saide Parliament it was enacted that an atteinder of treason had against the father of the saide B. shoulde bee avoided and adnulled, and hee restored to his landes, and that these lands comprised in the office were in the hands of the said king R. by attainder of his father, & ajudged that upon this *Monstraunce de droit* the party should have restitution because his right appered by mater of record. Like law [*sic*] is it wher it is found by office that such a one is attainted of felony & is seised of such landes which are holden of the king, nowe he that hath cause to sue his *Monstraunce de droit* can not be admitted therunto by reason of these two records. Howbeit if it bee so that there is noe suche attainder in deede, **[*71b]** then may the party that would sue a *Monstraunce de droit* saye that there is no such recorde of attainder, which beeing founde true, hee shalbe received

1   [in the margin:] M.3.E.4.26
2   [in the margin:] A.4.H.7.6

if hee bee entytled by double matter of Record, in this case I cannot have my *Monstraunce de droyt*, no more than I can have in the like case of Traverse, unlesse my title be founde by one of the said records, H.9.E.4.f.51. As take the case to be, it is found by office, that one such that holdeth of the king disseised me, & then committed a felony, upon whom I entred, after which entry the said tenant was attainted of the felony. In this case I shall have the land out of the kings hands by a *Monstraunce de droit*, *causa qua sapra* [*sic*]. And yet the kings title is here by a record, and not traversable, that is to say, thattainder. But what then? My title is also found by office, and appeareth by matter of record, which beeing proved true, doth cleerely avoyd the kings possession, and that is the reason I shall bee received in this case to a *Monstraunce de droyt*, as appeareth in M.3. E.4.f.26. A.4.H.7.fol.6. And therewith agreeth the booke P.4.H.7.fo.7. where king Richard the third was attaynted of treason by Act of Parliament, and found by office, that he was seised of certaine land, commeth one B. and sayeth that in the sayd Parliament it was enacted, that an attainder of treason had against the father of the sayd B. should be avoided and adnulled, and hee restored to his lands, and that these lands comprised in the office were in the hands of the said K.R. by attainder of his father, & adjudged that upon this *Monstraunce de droit* the party should have restitution because his right appeared by matter of record. Otherwise is it where it is found by office that such a one is attainted of felony, & is seised of such lands which are holden of the K. now hee that hath cause to sue his *Monstraunce de droyt* cannot be admitted therunto, by reason of these two Records. Howbeit, if it bee so that there is [no] such attainder indeed, **[Stamf. 1607 *72a]** then may the party that would sue a *Monstraunce de droyt* say, that there is no such record of attainder, which beeing found true, he shall be received

to his *Monstraunce de droit*, as appeareth in the saide booke.4.H.7. For nowe is there no recorde against him but onelye the office, and notwithstandinge that by thoffice thattaindour is founde, yet this fyndinge makes nothinge for the kinge: if it bee untrue: For the jurie can never finde a matter of recorde, and if they doe, it is to little purpose: for the recorde is ever triable by it selfe, and if there bee suche a record it will appeare thoughe they fynde it not, and if there bee none, the finding of it is voide. This may you see that a *Monstrance de droit* lyeth sometimes althoughe the kynge bee entytled by double matter of recorde, if it so bee that the parties tytle appeare by matter of recorde or else it lyethe not: And yet *Choke, Littleton* and *Nedham*, helde oppinion in .14.E.4.[1] that if it bee founde before theschetour that one was tenant in taile of certeine landes holden of the kinge the remaynder to another in fee, and that hee in the remainder is outlawed of felonye, and that tenaunt in taile is dead without issue, where in dede he beinge tenant in taile before the statute *De donis condicionabilis* after that hee hadde issue enfeffed one B. in this case the saide B. shall shewe this matter, and that the utlagarie was after the feffement made and so have the landes out of the kinges handes by a *Monstraunce de droit*: But it should seeme their oppinion is againste the lawe and the bookes beefore rehersed, unlesse this feffement were founde by office, because it appearethe that the kinge in this case is entytled by double matter of recorde.[2] And note that where the kinge is entitled but by office alone, there the partye maye have his *Monstraunce de droit* althoughe his title bee not founde by office, as wel as hee shoulde in the like case if he were to take a traverse, But otherwise it is where the kinge is entitled by another **[\*72a]** recorde beside the office whiche is not traversable, there hee shall not bee received unlesse the parties title appeare by mater of recorde. ...

to his *Monstraunce de droit*, as appeareth in the saide booke P.4.H.7.fol.7. For now is there no record against him, but onely the office: and notwithstanding that by the office the attainder is found, yet this finding makes nothing for the king, if it bee untrue. For the Jurie can never find a matter of record, and if they doe, it is to little purpose: for the record is ever triable by it selfe, and if there be such a record it will appeare though they find it not, and if there bee none, the finding of it is void. Thus may you see that a *Monstraunce de droyt* lieth sometimes althoughe the king be intitled by double matter of record, if it so be that the parties tytle appeare by matter of record, or els it lyeth not. And yet *Choke, Littleton* and *Nedham*, helde opinion in M.14.E.4.7. that if it bee founde before the Eschetor, that one was tenant in tayle of certain lands holden of the King, the remainder to another in fee, and that he in the remainder is outlawed of felony, and that tenaunt in tayle is dead without issue, where in deed he being tenant in tayle before the statute *De donis condicionabilis* after that hee had issue enfeoffed one B. in this case the sayd B. shall shew this matter, and that the utlagarie was after the feoffement, made and so have the lands out of the kings hands by a *Monstraunce de droit*. But it should seeme their opinion is against the law and the bookes before rehearsed, unlesse this feoffement were found by office, because it appeareth that the king in this case is intitled by double matter of record. And note, that where the King is intitled but by office alone, there the partye maye have his *Monstraunce de droyt*, although his title be not found by office, aswell as he should in the like case if he were to take a Traverse, H.9.E.4.5. but otherwise it is where the king is **[Stamf. 1607 \*72b]** entitled by another record beside the office, which is not traversable, there he shall not be received unlesse the parties tytle appeare by matter of recorde. ...

1   [in the margin:] M.14.E.f.1.&.7.
2   [in the margin:] Peticion.12. Travers.7.

[Stamf. 1567 *72a]

Peticion.

Peticion is al the remedie the subject hath
when the kyng seiseth his land or taketh away
his goods from him having no title by order of
his lawes so to do, in whyche case the subject
for his remedy is driven to sue unto his
soveraine lorde by way of peticion onely: for
other remedye hathe hee not, as it hath ben
sufficiently declared before upon the .15. cha.
of the kings prerogative. And therefore is his
peticion called a peticion of right, because of
the righte the subject hath against the king by
the order of his laws, to the thing he sueth for.
And this peticion may be sued as wel in the
parlement as out of the parlement, and if it be
sued in the parlement, then it may be enacted &
passe as an act of parlement, or els to be ordred
in like manner as a peticion that is sued out of
the parlement which is in this maner, first after
the peticion is endorsed it shal be delivered to
the Chaunceler of England, and then shal ther
be a commission awarded out of the chauncerie
to find the righte or title of him that sueth the
peticion, which being found by enquest, **[Stamf.
1567 *72b]** then he may enterplede with the kynge
and not before, as appeareth in 18. E.3. fol. 15.
4. E.4. f. 21. 11. H.4. f. 50. et 10. H.4. And if
uppon the sayde commission no title be found
for the partie but onely for the kinge, yet the
peticion shall not abate, but the party shall have
a newe commission in that case for the peticion
is butte as voide until the parties title be founde
by office, and is not to be sayde dependinge
until that time, as appearethe in 3. H.7. *Quere*
for he sued a newe peticion in that case. And
note that when the peticion is endorsed, the
partie muste followe and pursue the same
according to the endorsement, or otherwise his
suite is void: because the endorsement is his
warrant therin, as appearethe in 18. 22. et 46.
E.3. and therefore sometime billes of peticion
be endorsed and sent into the kyngs benche or
common place and not into the Chauncerie, and

[Stamf. 1607 *72b]

Petition. Cap. 22.

Petition is all the remedie the subject hath
when the king seizeth his land, or taketh away
his goods from him having no title by order of
his lawes so to do, in which case the subject for
his remedy is driven to sue unto his Soveraigne
lord by way of petition onely: for other remedy
hath he not, as it hath been sufficiently declared
before upon the 15. chapter of the kings
prerogative. And therfore is his petition called a
petition of right, because of the right the subject
has against the king by the order of his lawes,
to the thing he sueth for. And this petition may
bee sued aswell in the parliament as out of the
parliament, and if it bee sued in the parliament,
then it may be enacted, & passe as an act of
parliament, or els to be ordered in like maner as
a petition that is sued out of the parliament,
which is in this maner: first after the petition is
endorsed it shal be delivered to the
Chauncellour of England, & then shall there be
a commission awarded out of the Chauncery to
find the right or title of him that sueth the
petition, which beeing found by enquest, **[*73a]**
then he may enterplede with the king, and not
before, as appeareth in P.18.E.3.f.15. M.4.E.4.
f.23. H.11.H.4.f.52 & M.10.H.4.f.4. And if
upon the said commission no title bee found for
the partie, but onely for the king, yet the
petition shall not abate, but the party shall have
a new commission in that case, for the petition
is but as void untill the parties title be found by
office, & is not to be said depending, untill that
time, as appeareth in M.3.H.7.f.13. *Quære* for
hee sued a new petition in that case. And note
that when the petition is endorsed, the partie
must follow & pursue the same according to the
endorsement, or otherwise his suit is void,
because the endorcement is his warrant therein,
as appeareth in *Petition* 1. M.18.E.3. P.22.E.3.
5. & *Petition* 18. H.46.E.3. & therefore
sometime bils of petition bee endorced & sent
into the Kings bench or Common place, & not

13

that groweth upp on a special conclusion in his peticion and a speciall endorsement upon the same, for the generall conclusion *is que le roy luy face droit et reason*, which is as much as if he had prayed restitucion of that that he suethe for: And thereupon such a generall conclusion the endorsement is *Soit droit fait as parties* which ever is delivered unto the Chanceller, as is declared. But if the conclusion in the peticion bee speciall and the endorsement special, then they shal procede accordinge to the sayde speciall endorsement. As for example, the kinge recovereth in a *Quare impedit* by defaute against one that was never summoned, in this case the partie that lost can not have a writ of disceit until such time as he have sued unto the kinge by peticion for the sayde wrytt and if in his peticion he conclude and praye that the kynge do him right generally, nowe the justices before whom the recoverie was had can not examine the deceit without an originall writ directed unto them for that purpose, and yet before he obteined that writ his right shalbe enquired of by commission, but if he conclude specially in his peticion that **[*73a]** it maye please his higheness to commaunde the justices to procede to the examinacion, which peticion is endorsed accordinglye, then may they do it, without any such writ or commission to be sued, as appeareth in .10. H.4. So ever the folowynge and pursuynge of the thinge muste bee accordinge to thendorsement, for howsoever the conclusion in the peticion be, the endorsement may be always as it shall please the king as me semeth, and accordinge to that the party must pursue it. And note, that in everye peticion where the kynge hathe graunted the lande over to an other, a *Scire facias* muste bee awarded against the patentee like as it shallbe wheare a traverse or *Monstrans de droit* is tended, whiche patentee yf he have not the whole fee simple, but that ther is a reversion in the kynge or that the kynge is bounde to warrauntie, when hee appeareth upon the *Scire facias*, he maye praye a write of Searche

into the Chauncery, & that groweth upon a speciall conclusion in his petition and a special endorcement upon the same, for the generall conclusion is, *que le roy luy face droyt & reason*, which is as much as if he had prayed restitution of that that he sueth for: And there upon such a general conclusion, the endorcement is, *Soit droit fait as parties* which ever is delivered unto the Chauncellour, as is declared. But if the conclusion in the petition bee speciall, & the endorcement speciall, then they shall proceed according to the said speciall endorcement. As for an example, the king recovereth in a *Quare impedit* by default against one that was never summoned, in this case the party that lost can not have a writ of deceit, untill such time as he have sued unto the king by petition for the said writ, & if in his petition he conclude, & pray that the king doe him right generally, now the justices before whome the recovery was had, cannot examine the deceit, without an original Writ directed unto them for that purpose, and yet before hee obteined that Writ, his right shall be enquired of by commission, but if he conclude specially in his petition that **[Stamf. 1607 *73b]** it may please his highnesse to commaund the Justices to proceed to the examination, which petition is endorced accordingly, then may they doe it, without any such writ or commission to be sued, as appeareth in M.10.H.4.fo.4. So ever the following & pursuing of the thing must be according to thendorcement, for howsoever the conclusion in the petition be, the endorcement may bee alwayes as it shall please the king, as mee seemeth, & according to that the party must pursue it. And note, that in every petition where the king hath graunted the land over to another, a *Scire fac.* must be awarded against the patentee, like as it shall bee where a traverse or *Monstraunce de droyt* is tended, which patentee if hee have not the whole fee simple, but that there is a reversion in the king, or that the king is bound to warranty, when hee appeareth upon the *Scire facias*, he may pray a

14

to bee awarded into the tresorie to search what theye can finde for the kynges title, as appeareth in .9 E.4.f.54. where *Sottle* sayethe that everye peticion muste make mention of al the kyinges titles, for if it be found by the write of searche that anye be omitted, the peticion shall abate: & the reason of it is, because that yf on this sute of peticion the kinge take an issue with the partie which is found against him, his highnesse then shal be concluded for ever more to claime by any of the points conteyned in the sayd peticion. And here with agreeth the boke T.16.E.4.[1] But *quere* if search shallbee graunted upon a traverse or *Monstrans de droit*, because the statute of An 14.E.3.cap.13. that concerneth search doth speak only but of a petition, but to that it maye be sayde that at the time of making of the statut ther was noe traverse geeven. And *Skrene* sayeth .7. Henry the fifth[2] that search shal not be granted but where one suethe by peticion. And note also that in everye peticion whether it bee sued in the parliament or elles where, or whether the landes remaine in the kinges handes or not in the **[\*73b]** kins hands but be granted over, yet writs of search shallbee awarded to search the kinks title ere the party shal enterplead with the king. And it appereth in the boke of 16. E.4. beefore remembred that inon a peticion the kinges patentee had ayd of that king, & there appereth also that if the king be not entitled by any mater of record but without any title do entre into my land wherebye I sue unto his highnes by peticion, that in thys case no search shalbe granted, because no title can be entended for the kinge in suche case. Thus have I opened & declared the maner of suing a peticion, but to declare specially where yt lyeth & where not it were a long mater to entreate of. But generally, and by generall rules a man may brieflye declare it, that is to say, in all cases where the partie hath a right against the king, & yet no traverse or *Monstrans de droit*, will serve, ther

1   [in the margin:] 16.E.4.f.6.
2   [in the margin:] Petition 6.

writ of search to bee awarded into the Treasory, to search what they can find for the kings title, as appeareth in H.9.Edw.4.fol.51. where *Sottle* saith, that every petition must make mention of all the kings titles, for if it be found by the writ of search, that any be omitted, the petition shall abate: and the reason of it is, because that if on this suit of petition the king take an issue with the partie, which is found against him, his highnesse then shalbe concluded for evermore to clayme by any of the points contained in the said petition. And herewith agreeth the booke T.16.E.4.fol.6. But *quære* if search shall be graunted upon a Traverse or *Monstraunce de droyt*, because the statute of Anno 14.E.3.cap.13. that concerneth search, doth speake only but of a petition, but to that it may be said, that the time of making of the statute there was no traverse given. And *Screne* saith *Petition* 6. A.7.H.5. that search shall not bee graunted but where one sueth by petition. And note also that in every petition, whether it bee sued in the Parliament or els where, or whether the lands remaine in the kings hands or not in the **[\*74a]** kings hands, but bee graunted over, yet Writs of search shalbe awarded to search the kings title ere the party shall enterplead with the king. And it appeareth in the book of T.16.E.4.f.6. before remembred, that upon a petition the kings patentee had ayd of the king: and there appeareth also, that if the king be not intitled by any matter of record, but without any title do enter into my land, whereby I sue unto his highnesse by petition, that in this case no search shalbe granted, because no title can bee intended for the king in such case. Thus have I opened and declared the maner of suing a petition, but to declare specially where it lyeth and where not, it were a long matter to entreat of. But generally, and by generall rules a man may briefly declare it, that is to say, in all cases where the partie hath a right against the king, and yet no Traverse or *Monstraunce de droyt* will serve, there is he driven to his petition. As for an example, where the king is intitled by

is hee driven to his peticion. As for an example, wher the king is eintitled by double mater of recorde. Like law is where he is entitled by a record not traversable, as take the case, the kynge recovered by assent and wythout title, a straunger that hathe good title shall not falsifie this recoverie by a traverse or *Monstrans de droit*, but is driven to his peticion, so it is where the kinge recoverethe by erronyous proces the partie shall not have a write of errour, untill he have sued by peticion for it. So likewise it is if landes are holden of mee bye knightes service a straunger brynges a *Precipe in capite* of those lands against my tenant & recoٴvereth by defaut, although by this recoverie, I am not put out of possession of mye seignorie, but that the tenant holdethe of me as hee did before and also of the kinge by conclusion, yet in this case if the recoverer dye his heire wythin age, and the kynge seisethe the ward, I am driven nowe to my peticion for the ward, as appeareethe in 17.E.3.[1] for thys ys another thinge than ever I was seised of. Allso it is a generall rule that where a stranger that hathe title can not **[Stamf. 1567 *74a]** entre upon a common parson but is driven to his action, there he can have no remedy against the king, but only a peticion, as take the case to be. It is found by office the kings tenant in chiefe died seised his heire within age where in dede the sayd tenant had nothing but by disseisin done to me, & I suffred him to die seised without any claim made, in this case I get no remedy by *Monstraunce de droit* or traverse, but am driven to my peticion. And so in all cases like wheare mine entre should be tolled if the lands were in the hands of a common person, as appeareth in 8.&9.H.4.[2] Also where as the kinge doth entre upon me having no title by mater of recorde or otherwise and put me out, and deteines the possession from me that I can not have it againe by entrie without suite, I have then no remedie but onely by peticion. But if I bee suffred to enter, mine

double matter of record. Like law is where he is entitled by a record not traversable, as take the case, the king recovered by assent, and without tytle, a straunger that hath good title shall not falsifie this recovery by a Traverse or *Monstraunce de droyt*, but is dryven to his petition, so it is where the king recovereth by erronious Proces, the partie shall not have a writ of errour, until he have sued by petition for it, P.17.E.3.fo.31. So likewise it is if lands are holden of mee by knights service, a straunger brings a *Precipe in capite* of those lands against my tenant & recovereth by defaut, although by this recoverie I am not put out of possession of my Seigniorie, but that the tenant holdeth of me as he did before, and also of the king by conclusion, yet in this case if the recoverer dye, his heire within age, & the king seiseth the ward, I am driven now to my petition, for the ward, as appeareth in T.17.E.3.37. for this is another thing than ever I was seised of. Also it is a generall rule, that where a stranger that hath title can **[Stamf. 1607 *74b]** not enter upon a common person, but is driven to his action, ther he can have no remedy against the king, but only a peticion: as take the case to be, It is found by office the kings tenant in chiefe died seised his heire within age, where indeed the said tenant had nothing but by disseisin done to mee, and I suffered him to die seised without any claime made, in this case I get no remedy by *Monstraunce de droit* or Traverse, but am driven to my petition. And so in al cases like where mine entre should be tolled, if the lands were in the hands of a common person, as appeareth in M.7.H.4.f.33. T.9.H.4.f.5. Also where as the king doth enter upon me having no title by matter of record or otherwise, & put me out, & detaynes the possession from me that I cannot have it againe by entry without suit, I have then no remedy but only by petition. But if I be suffered to enter, mine entry is lawfull, & no intrusion: or if the king graunt over the lands to a straunger, then is my peticion determined, & I may now enter, or have my assise by the

---

1  [in the margin:] 17.E.3.f.36.
2  [in the margin:] M.7.H.4.f.27.36.et41.T.9.H.4.f.7et11.

16

entrie is laweful, and no intrusion: or if the king graunt over the lands to a straunger then is my peticion determined, and I may nowe entre or have mye assise by the order of the common law against the said straunger being the kings patentee, as appeareth in 4.E.4.f.25. & M.24. E.3.f.34.[1] And a great difference is betwene this case & the case where the king is entitled by double mater of record or suche like, for in these cases notwithstanding the graunt made over by his highnes of the lands to an other, yet am I driven still to my peticion to the king and have no other remedye, but it is not so in this case: and the reason of this diversitie is because that when his highnes seiseth by his absolute power contrarie to the order of his lawes, although I have no remedy against him for it but by peticion for the dignities sake of his person, yet when the cause is removed & a common person hath the possession, then is mine assise revived, for now the patentee entreth by his owne wrong and intrusion, and not by anye title that the kynge geveth hym for the king had never title ne possession to in that case: and **[Stamf. 1567 *74b]** therfore not lyke the other cases beefore, where the kynge hath the landes by the order of his lawes that is to saye by doble mater of record, or such other like. And this appereth in 4.E.4.f.21.et 25. et in 24.E.3.f.34. & 33.li.ass.[2] Like lawe is if I have a rent charge oute of certaine lande and the tenant of the land enfeffed the kinge by dede enrolled, nowe during the kinges possession I must sue by peticion, but if his highnes enfeffe a straunger I may distreine for my rent upon the stranger, and so is it in all the cases before, where a man may have his traverse or *monstrance de droit*, if the lands be once out of the kings hands, the party then may have his remedie that the comon law geveth him: for in all these cases the peticion did lye onely for the dignitie of his person and not for the right that he had to the possession of the thing. ...

order of the common law against the said straunger being the kings patentee, as appeareth in M.4.E.4.f.22. & M.24.E.3.f.65. H.10.E.3.f.2. And a great difference is betweene this case & the case where the king is intitled by double matter of record, or such like, for in these cases notwithstanding the grant made over by his highnes of the lands to another, yet am I driven still to my petition to the king, & have no other remedy, M.7.H.4.f.21. but it is not so in this case: & the reason of this diversitie is, because that when his Highnesse seiseth by his absolute power, contrary to the order of his lawes, although I have no remedy against him for it, but by peticion for the dignities sake of his person, yet when the cause is removed, & a common person hath the possession, then is mine assise revived, for now the patentee entreth by his owne wrong & intrusion, and not by any tytle that the king giveth him, for the king had never title ne possession to give in that case: and therefore not like the other cases **[Stamf. 1607 *75a]** before, where the king hath the lands by the order of his lawes, that is to say, by double matter of record, or such other like. And this appeareth in M.4.E.4.f.21.&25. & M.24.E.3.f.64. & *Traverse* 34.33.li.ass. Like law is if I have a rent charge out of certaine land, & the tenant of the land enfeoffeth the king by deed enrolled, now during the kings possession I must sue by petition, but if his highnesse enfeoffs a straunger, I may distraine for my rent upon the stranger, & so is it in all the cases before, where a man may have his traverse, or *Monstraunce de droit*, if the lands be once out of the kings hands, the partie then may have his remedy that the common law giveth him: for in all these cases the petition did lye only for the dignitie of his person & not for the right that he had to the possession of the thing. ...

1   [in the margin:] Assise.P.156.
2   [in the margin:] Traverse 134.

[Stamf. 1567 *77a]

Ouster le mayne.

*Ouster le main* is the judgement that is geven for hym that tendeth a traverse or sueth a *Monstrans de droit* or peticion, for when it appeareth upon the matter discussed that the kinge hathe no righte nor title to the thinge he seised, then judgement shalbee geven in the Chauncerie that the handes bee amoved: and thereuppon *Amoveas manum* shalbee awarded to theschetour, which contervailes as muche as if the judgemente weare geeven that hee shoulde have againe his lande as appeareth, in 24 E.3 f. 34. and this jugement sometime is geven in the kinges bench and not in the chauncerie, & that is in case ==where the parties descende to an issue,== then for the tryall thereof theye of the chauncerie muste awarde a *venire facias* returnable in the kings benche at a certaine daye, at whiche day notwithstandinge that the shirife returne not the writ, yet the *Alias venire facias* shall not bee awarded out of the chancerie but oute of the kinges bench: for there and no where els it is recorded, *quod vicecomes non miserit breve*, as appeareth in. 13. E.4. f.8. And when the issu is found for the partie they of the kinges bench shall gave judgement & awarde an *ouster le maine* without suinge for the same in the chauncerie as appeareth in 21. H.7. & 29. li. ass.[1] and yet the recorde of the issue that was tried was not sent thether but onelye the transcript thereof, but what then? the judgement is to be geven upon the verdit which is there of recorde, and when bothe courtes bee courtes of the common lawe and the kynges courts, theye use not to remaunde anye thynge to the place from whence it came but to geve jugement there where it is tried, and *Sharde* sayde that when a recorde comes once into the kynges benche, it shall never go from thence.

---

1  [in the margin:] Livery.P.10

[Stamf. 1607 *77b]

Ouster le maine. Ca. 24.

*Ouster le main* is the judgement that is given for him that tendeth a traverse or sueth a *Monstrans de droit* or petition, for when it appeareth upon the matter discussed that the king has no right nor title to the thing hee seised, then judgment shall be given in the Chauncery that the Kings hands be amoved: and thereupon *Amoveas manum* shall be awarded to theschetor, which contervailes as much as if the judgement were given that hee should have againe his land as appeareth, in M.24. E.3. 65. and this judgement sometimes is given in the Kings Bench and not in the Chauncery, and that is in case ==where the parties descend to an issue,== then for the tryall thereof, they of the Chauncery must award a *Venire facias* retournable in the Kings Bench at a certaine day, at which day, notwithstanding that the sheriff return not the writ, yet the *Alias venire facias* shall not bee awarded out of the Chauncery, but out of the Kings Bench: for there and no where els it is recorded, [*that the sheriff did not serve the writ*], as appeareth in P.13. E.4. f.8. [Ch. 1473]. And when the issue is found for the party, they of the Kings Bench shall gave judgement and awarde an *Ouster le maine* without suing for the same in the Chauncery as appeareth in M.21. H.7. f.5 [f.35, pl. 44 (K.B. 1505)] and 29 lib. ass. 43. [(K.B. 1355)] and yet the record of the issue that was tryed was not sent thither but only the transcript thereof, but what than? the judgment is to be given upon the verdict which is there of record, and when both courts be courts of the common law and the kings Courts, they use not to remaund any thing to the place from whence it came, but to give judgement there where it is tryed, and *Shard [i.e., Shareshull, C.J., K.B.]* said that when a record comes once into the Kings Bench, it shall never goe from thence.

**[Stamf. 1567 *77b]** Also note that sometime there goeth an *Ouster le mayne* as well to the kinges patentee as to the eschetoure, and that is where the kinge hath graunted the thing that hee seised to any other, but notwithstanding that there go such wryttes of *Amoveas manum* bothe to theschetor and to the partie, yet the kynge is out of possession as sone as jugement is geven in the chauncerie, not forcing whether any of these wryttes bee awarded or not either to theschetoure or to the partye: and thereupon the partie for whom judgemente is geeven, may entre forthwith into the landes and shalbee sayde no intrudor, as appeareth in H.10.Ed.3.[1] And the reason of yt is because the jugement tyethe not the kynge to the delyverye of the possession, but onely to leave hys handes of the possession.

1    [in the margin:] Assise p.156.

**[Stamf. 1607 *78a]** Also note that sometimes there goeth an *Ouster le maine* as well to the Kings patentee as to the Eschetour, and that is where the King hath graunted the thing that hee seised to any other, but notwithstanding that there goe such writs of *Amoveas manum* both to theschetor and to the partie, yet the King is out of possession as soone as judgement is given in the Chauncery, not forcing whether any of these writs bee awarded or not either to theschetour or to the partie: and thereupon the partie for whom judgement is given, may enter forthwith into the lands, and shall bee said no intrudor, as appeareth in H. 10. Ed. 3. fo.2. And the reason of it is because the judgement tyeth not the king to the deliverie of the possession, but onely to leave his hands of the possession.

19

Henry Finch, Nomotexnia: Cestascavoir, Un Description del Common Leys Dangleterre Solonque les Rules del Art (1613):

**[Finch 1613 *76]** *Nul* [a] *action gist vers Roy, mes* En lieu de action vers Roy, petition serra fait a luy en le [b] Chauncerie, lou pleas sont tenus [c] coram Rege, *& lentrie est, Coram Domino Rege in Cancellaria, mes* [d] *Coram Rege generalment est entend en Banke le Roy. Ascun foits auxy petition est sue en* [e] *Parliament.*

———————
a  14. H.8. 3.b. Stamf. Prærog. 41.b.
b  21. E.3. 47.
c  28. Ass. pl. 52.
d  Coke 9. Rep. Rep. 99. [*R. v. Reynel*, 77 Eng. Rep. ___, ___ (Ch. 1612).]
e  Stamf. Pr. 72.

**[*77]** *Si Escheator seise biens sans cause, ou biens dun home utlage, & accompt* [1] *pur eux en Lexchequer, coment que lutlag. est puis reverse, uncore partie suer a pur eux per petition:* Mes cy long que personel choses, seisie pur le [2] Roy, remaine en maines del Officer, cesty qui droit ad poet *traverser les records que entitler' le Roy, & issint aver ses biens arere,* ou suer le Officer, ou luy disturber a prend' les profits, *come lou est trove que un utlag. en personel action fuit seisie de certeine terres, Et en ceo case il ne serra mis a son petition: auter est en case del franktenement ou enheritance.* ...

———————
1  [in the margin:] 34. H.6. 5.
2  [in the margin:] 4. E.4. 24.

En quecunque case, lou Roy, estant fait partie poet este al pard, *come lou en Præcipe quod reddat ou auter reall action envers son lessee il prie en aid de luy, mes nemy en* [*] *Trespasse,* [†] *Ejectione firmæ, ou tiels personel actions, car la il peràr' rien,* briefe de Search issera, le quel est a searcher en le treasurie devant que le plea proceede, si per likelihood ascun matter poet estre la a mainteyne son title:

———————
*  27. H.8. 28.b.
†  15. Eliz. Dyer 320. [*Grey v. Baude*, 73 Eng. Rep. 724, 724-25 (1572).]

[1] **[Finch 1613 *76]** No action lies against the King, but instead of an action against the King, petition should be made to him in the Chancery, where pleas are held before the King, and the entry is, "Before the Lord King in Chancery," though "Before the King" is generally understood as the King's Bench. Sometimes as well, petition is sued in Parliament.

———————
1  [This right column contains plaintiff's translation from the original Law French, reproduced in the column to the left. *See* John H. Baker, Manual of Law French (2d ed. 1990).]

**[*77]** If an escheator siezes goods without reason, or the goods of a man outlawed, and accounts for them in the Exchequer, [then] although the outlawry is later reversed, yet the party shall sue for them by petition. But as long as the personalty siezed for the King remain in the hands of the officer, he who has right to them may traverse the records that entitle the King, and thereby have his goods back, or else sue the officer, or disturb him to take the profits. For example, if it is found that one who is outlawed in a personal action was seised of certain lands, in that case, he will not be put to his petition; but it is otherwise in case of a freehold or inheritance. ...

In whatever case the King, being made a party, may be at loss, for example, in a *Praecipe quod reddat* or other real action against his lessee, the lessee prays aid of him —but not in trespass or ejectment or other such personal action, for there he [the King] can lose nothing—a writ of search shall issue, which is to search in the treasury before the plea proceeds, if by chance something may be there to maintain his [the King's] title:

[1] *Come sur office trove que A. morust seisie del certeine terres tenus de Roy sans heyre, & un traverse mis eins que A. ne teigne del Roy; Mes si home dit que A. ad issue B. qui luy enfeoffe, la nul search serra, car nul matter poet estre en le treasurie a prover si A. avoit issue ou nemy: Mesme ley si title del Roy soit per alienation en mortmaine.* [*] *Search ne serra mes ou home sue al Roy per petition,* [†] *mes serra cibien ou petition est sue en Parliament come aylors, & coment que Roy ad grant les terres ouster.*

For example, an office finds that A died without heir seised of certain land held of the King and a traverse is put in that A did not hold of the King. But if a man says that A had issue B who he enfeoffed, then there will not be a search, for nothing might be in the treasury to prove whether or not A had issue. The law is the same if the King's title be by alienation or mortmain. Search will be had not only where a man sues the King by petition, but also where petition is sued in Parliament as elsewhere, and despite the King has granted the land to another.

1    [in the margin:] 9. E.4. 52.b.
*    7. H.5. Fitzh. Petition 6.
†    Stamf. Pr. 73.

[2] ==Issue joyne sur matter en fait serra mis en Banke Roy deste trie, *& la judgement serra done & execution sue, sans remaunder en Chauncerie.*==

==Issue joined upon matter of fact shall be sent to the King's Bench to be tried, and judgment will be given there, and execution sued, without sending it back to Chancery.==

2    [in the margin:] 21. H.7. 35. & 36.

[3] *Sur judgement vers Roy, il est maintenant hors de possession; Et pur ceo chescun Judgement est en luy mesme un Amoveas manum, ou un ouster le maine.*

Upon judgment against the King, he is immediately out of possession; and therefore, every judgment is to him the same as an *amoveas manum* or an *ouster le main*.

3    [in the margin:] 10. E.3. per Stamf. Pr. 78.

*Nota, le Chauncerie est auxy Court de equitie a moderater le strictnesse* [4] *del common ley, solonque equitie & bon conscience, per an absolute power, & la il proceede per English bill: mes en matters dependants devant luy per originall briefe & solonque ordinarie power, il est a judger solonque common ley.*

Note that the Chancery is also a court of equity to moderate the strictness of the common law, according to equity and good conscience, by an absolute power, and there it proceeds by English bill. But in matters depending before [the Chancellor] by original writ and according to ordinary power, he is to judge according to the common law.

4    [in the margin:] 11. E.4. 9. | 5. E.6. 71. [*Ross v. Pope*, 1 Plowden 72, 75 Eng. Rep. 114, 114-15 (Ch. 1551)]

**[Finch 1613 *89]** [*] ... Issue sur mort baron serra trie per tesmoignes, *issint ne serra en ascun auter case en nostre Ley.*

**[Finch 1613 *89]** ... [In a writ of dower,] Issue upon the death of the husband shall be tried by witnesses [*i.e.*, by the court], but it shall not be so in any other case in our law.

*    8 H.6. 23.b.

Henry Finch, Law: or a Discourse Thereof (1678)[*]

* Although this English version of Nomotexnia was first published in 1627, *i.e.*, subsequent to the Law French version, *supra*, it nevertheless embodies an earlier version of the text. *See* Wilfrid Prest, 'Finch, Sir Henry (c.1558–1625)' *in* Oxford Dictionary of National Biography (2004).

**[Finch, Law *77]** ... [Second Book,] Chap. I.

*Of the Common Law of England, whereof the partes of the Realm, and of the persons in it. of Custom and Prerogative.*

...

**[Finch, Law *82]** [1] The King cannot take, he cannot part **[Finch, Law *83]** from any thing but by matter of record. And that is for the Majesty of his person. His supream Sovereignty makes him immediate under God. *Omnis quidem sub eo & ipse sub nullo nisi tantum sub Deo,* saith *Bract.*[2] It makes all lands to be holden of him, every surrender unto him to be good, no action to lie against him, for who shall command the King?

1 [in the margin:] (a) *Stam. præ.* 731. [*sic*] (b) 7 *E.*4. 17. (c) 50 *Ass. pl.* 1. 18 *Eliz.* 498. [*Nichols v. Nichols*, 2 Plowden 481, 486, 75 Eng. Rep. 717, 724 (C.P. 1575).]

2 ["Indeed, all are below him and he himself below no one, except only God." 2 Bracton on the Laws and Customs of England 33 (George Woodbine, ed., Samuel Thorne, tr., 1968).]

**[Finch, Law *254]** ... [Fourth Book,] Chap. III.

*Of Common Pleas.*

... **[Finch, Law *255]** ...

*Prerogative.*

Here in place of action against the King petition must be made unto him in the Chancery, (*a*) or in (*b*) Parliament, for (*c*) no action did ever lie against the K. at the Common Law, but the party is driven to his petition, and (*d*) if the Escheator seize goods without cause, or seize the goods of one out-lawed, which outlawry is after reversed, and account for them in the Exchequer; the party must sue by petition for them.[3] And that (in the case of hereditaments) though the King have granted the same away.[4] For upon an office finding *J.S.* (who was attainted of felony or treason by matter of record before) to be seized of certain Land, if the King seize and grant it over; yet a stranger that hath right to enter, or bring his action, may do neither against the Patentee, but must [sue] to the King by petition. Whereupon Process shall go out against the Grantee to maintain his title.[5] As the **[Finch, Law *256]** King grants over his wardship, or any other certain estate in the land. The *Scire facias* for him that sueth the petition, must be against the patentee, not against the heir, in whose right the King is seized; for he is not to plead with the heir, but with the King, or him that hath his Interest.[6] And in a petition to revoke Letters Patents made to two, &c. a *Scire facias* upon it; the death of one of the patentees abateth not the petition;

3 [in the margin:] *(a b) Stamf. prer.* 73. *(c) Stamf. prer.* 42. *(d)* 34 *H.* 6. 5.

4 [in the margin:] 9 *H.* 6. 15.

5 [in the margin:] *Stamf. prer.* 76.

6 [in the margin:] 7 *H.* 4. 33.

for the petition is not sued against the patentees, but against the King; nor they need not to be named in the petition, but in the *Scire facias*.

   [1] But whilst personal things seized for the King remain in the Officers hands, the party that hath right may traverse the Records that entitle the King, and so have his goods again, or sue the Officer, or disturb him to take the profits: As where it is found that one out-lawed in a personal account [sic], was seized of certain land; and in this case he shall not be driven to a petition; otherwise it is in case of a freehold or inheritance.

---

1   [in the margin:] 4 *E.* 4. 24.

   [2] Petition is a supplication declaring the parties right, where mention must be made of all the King's title, else it shall abate. For upon an issue in the petition found against the King, he shall be concluded for ever to claim by any of the points contained in the petition.

---

2   [in the margin:] 9 *E.* 4. 52.

**[Finch, Law *323]** ... [Fourth Book,] Chap. XXIV.

*Of Offices for the King.*

   These are the Suits that every one may have. Enquiry for the King is, when matter for the King is found by a Jury called an Enquest of Office, whether the Enquiry be by Officers themselves, as Sheriffs, Escheators, Coroners, &c. *virtute officii*, or *virtute brevis*, or Commissions to them directed. And here the just number of twelve is not of necessity requisite, but may be sometimes more or less.[3]

---

3   [in the margin:] *F.N.B.* 170.c.

**[Finch, Law *324]** [4] An Enquiry is an office or presentment. An office which findeth matter to entitle the King to some possession; for an office is a title for the King, but finding but for a common person, it is but an evidence.

---

4   [in the margin:] 21 *E.* 3. 2.

   If such an office be found for hereditaments, and the King entitled by matter *enfait*, that is to say, by no other Record but that only; as if the office find that *J.S.* the Kings Tenant died seized, the party may either traverse, to say *J.S.* was not seized, or confess and avoid it by saying, that himself was the King's Tenant, and disseised by *J.S.* and so *J.S.* died seized, being in by disseisin, &c. and this is called a *monstrans de droit*. But if the office entitle the King by matter of Record, as that *J.S.* was attainted of Treason, and seized of certain Lands, there only a Petition lieth to the King, because this is a double matter of Record, and therefore neither can the party traverse it by denying *J.S.* to be so seized, nor have his *monstrans de droit* to shew that *J.S.* did disseize him, &c. or that he enfeoffed *J.S.* upon condition, and that *J.S.* brake the condition before the attainder. All this is to be understood so long as the Record of the attainder continueth in his force. But the party may traverse the attainder well enough, as to say, *nul tiel attainder*,[5] i. that there is no such attainder, and upon that being found for him, he shall have the land, without being driven to his petition, **[Finch, Law *325]** otherwise not; and the reason is, because the office entitling the King by a matter of Record, this title cannot be avoided but by as high a matter, and not by the plea or

---

5   [in the margin:] 4 *H.* 7. 7.

allegation of the party; upon as high a matter of Record to avoid the office, as the office it self, a man may traverse it, though the King be intitled by double matter of record. As being found by office that *J.S.* was attainted of Treason by Parliament, and his Lands forfeit, and that he was seized of *B.* acre, whereby the King seizeth it. Now if another Act of Parliament restore the heir to all the Lands whereof the ancestor was seized & adnul the ancestors attainder, his heir shall have this by way of plea, without petition.

   [1] If the office be for personal goods, the party may always have a traverse or plea any matter unto it, and so have his goods again, unless the escheator have accompted for them. [2]And that though the office find the King's title to be by matter of record: as that *J.S.* was attainted of Felony or Treason, or outlawed in Debt or Trespass, and was at the time possessed of a horse, or of such and such goods, wherein in truth the property was unto a stranger; that stranger may have a Traverse. The King upon office finding for him, if his entry be lawful, and the possessions to be had at the time, is presently in possession, as in wardship or escheat of land found by office: [3] but an office finding that the **[Finch, Law \*326]** King's tenant hath ceased, or his Tenant for life committed waste,[4] vesteth no possession in the King, for his entry is not lawful, but he is driven to sue a *Scire facias*. So if an office entitling the King to things not manual; that is to say, whereof no profit is to be taken forthwith, until they fall as a Rent-common, &c. this vesteth no possession till the day. Also he shall be answered of all the mean profits from the time of his title.[5] As upon an alienation in Mortmain found by office, from the time of this alienation appearing of record, upon the King's Letters Patents adnulled for insufficiency from the very time of the grant.

---

1   [in the margin:] 4 *E.* 4. 24.
2   [in the margin:] *Ibid.* 34 *H.* 6. 5. 4 *E.* 4. *ibid.*
3   [in the margin:] 14 *H.* 7. 23, 25.
4   [in the margin:] *Stamf. Prer.* 54.
5   [in the margin:] 14 *E.* 3. 11. 11 *H.* 4. 5.

   [6] An Escheator here may find offices *ex officio*, as well as *virtute brevis*, or *commissionis*. But not of Outlawry of Felony, or such high matter of record without warranty paramount, and certification by writ of Record. Those *virtute brevis*, or *commissionis* are returnable in the Chancery. The other properly in the Exchequer; but may also be returned into the Chancery.

---

6   [in the margin:] 4 *E.* 4. 24. 2 *H.* 4. 5.

**[Finch, Law \*423]** ... [Fourth Book,] Chap. 38.

*Of Trial by Witnesses.*

   [7] In a writ of dower issue taken upon the death of her husband shall be tried by witnesses. So shall no other case in the Law.

---

7   [in the margin:] 8 *H.* 6. 23.

**[Finch, Law \*436]** ... [Fourth Book,] Chap. 43.

*Of Mesne, Judicial process.*

... **[Finch, Law \*437]** ...

[1] In petitions, whether in Parliament, or elsewhere, and though the King have granted the lands over, or wheresoever the King being made party, may be at loss: as when he is prayed in aid of, in a *præcipe quod reddat*, or other real action against his lessee, but not in *(b)* trespass *(c) Ejectione firmæ*, or other *(d)* personal action, for there he is to lose nothing.[2] A writ of search lyeth, which is to search in the treasury before the plead proceed, if by likelihood some matter may be there to maintain his title. As upon finding by office that *A.* died seised (of certain Land holden of the King) without heir, and a traverse put in that *A.* held not of the King. But if one come and say that *A.* had issue *B.* who enfeoffed him, there no **[\*438]** search shall be, for no matter can be in the treasury, to prove whether *A.* had Issue, no more if the Kings title be by an alienation in mortmain.

---

1   [in the margin:] *Stam. prær.* 73.
2   [in the margin:] (*b*) 27 *H.*8.28. (*c*) 15 *Dy.* 320 [*Grey v. Baude*, 73 Eng. Rep. 724, 725 (1572).] (*d*) 27 *H.*8.*ib.*

Edward Coke, The Second Part of the Institutes of the Laws of England: Containing the Exposition of Many Ancient and Other Statutes (1669)[*]

\* *I.e.*, the third edition; the first was published in 1642, eight years after Coke's death.

Articuli super Chartas[1]

1   ["Articles on the Charters," *i.e.*, Magna Carta and the Charter of the Forest.]

*Edit. Anno* 28 Edw. 1.

**[Coke, 2 Inst. *551]** Cap. V.

| | |
|---|---|
| Et dauter part le Roy voit que le Chauncellor & les Justices de son bank luy suivent, issint que il yet touts jours pres de louy ascun Sages de la ley, que sachent les besoignes, que veignent a la Court duement deliverer a touts les foits que mestier serra. | [And on the other Party, the King will, that the Chancellor and the Justices of his Bench shall follow him, so that he may have at all Times near unto him some Sages of the Law, which be able duly to order all such Matters as shall come unto the Court at all Times, when Need shall require.[2]] |

2   [1 Statutes at Large 143 (Ruffhead, ed., 1763).]

The true causes wherefore the Chancellour followed the Kings Court were **[Coke, 2 Inst. *552]** First, that the great Seal is *clavis Regni*, and in the custody of the Chancellor, and meet it was, that the King should have the key of his Kingdome about him.

2. That *Curia Cancellariæ*, was *Officina Justiciæ*; for in those days not only original writs *in Regist' Cancellariæ*, but all commandements upon any occasion for the safety of the Realm, or the good governmet thereof were by writs, and passed under the great Seal: and therefore necessary in those days, that the Cancellor, having the custody of the great Seal, should be about the King at all times; and this is the cause that the Court of Chancery cannot be adjourned.

3. The stile of the Court of Chancery is *coram Domino Rege in Cancellaria*. But where some hath supposed, that at the making of this Statute the Cancellour held a Court of equity, and that the Judges in this Act named attended on the King to decide matter of law, and the Chancellour attended on him to decide matter of equity it is mainly opposed, that at this time the Chancellor had no Court of equity, but onely a Court of record of ordinary jurisdiction, according to the course of the common law. Master *Lambert* that was a Master of the Chancery, and had the keeping of the Records of the Tower, and had abridged many of the principal of them (which I have seen) and was well learned, and besides a great seazrcher of antiquities, in his treatise of the jurisdiction of Court saith, that he could not find that the Chancellour held any Court of equity, nor that any causes were drawn before the Chancellour for help in equity before the time of H.4. in whose days, by reason of the intestine troubles, feoffments to uses did first begin, as some think, or else did first grow common and familiar, as all men must agree: So he. And he that advisedly reads our ancient Authors,[3] which speak of the Court of Chancery, they all speak of the ordinary jurisdiction of the Chancellour, but none of them any Court of equity.

3   [in the margin:] Glanvile [Translation of Glanville (1812)], Bract. [Bracton *Online*] Brit. [Britton] fol. 12. Flet. lib. 2. cap. 12, 13. Mirr. [Mirror of Justices] cap. 2. §.13. & cap. 4 de ordinance, de judgement & jurisdiction.

26

Also the Book called the *Diversity of Courts*, written in the reigne of Edw. 3. treateth of the jurisdiction of the Chancellour according to his ordinary power, but nothing of that which he holdeth in causes of equity. Neither shall you find in any Book case, or Reports of the law, any mention made of any Court of equity before or in the reigne of H.5. and yet all of them speak of the ordinary power or jurisdiction of the Chancellour. But in the reigne of H.6. and E.4. cases have been reported[1] where the Chancellour had heard some few causes in equity by English bill, and most of them concerning uses of lands. It is true that the Chancellour said in 2 E.3. in the Court of Chancery at Westminster, in *Theoband de Verons* Case,[2] in a case that concerned Livery, which belonged to his ordinary power, that the Court of Chancery is a Court of equity, where we grant a writ to every man that comes to demand his heritage, according to that which is found by office, &c. So he. And in that extent of equity, all the Courts at Westminster are Courts of equity, *viz.* to administer justice according to the common law; and thereupon it is said in 10 E.3. that the Chancery and the Kings Bench is one place or court[3]: But here it is to be noted, that at this time and before, the Court of Chancery was a settled Court in a certain place, to the great benefit and ease of the subject.

1  [in the margin:] 31 H.6. sub pœna, 19. & 23. 35 H.6. ibid. 22. 37 H.6. 35. 5 E.4. 7. 7 E.4. 24, 29. 16 E.4. 4. 22 E.4. 6. 7 H.7. 2. 14 H.8. 7, 9. 24.b.
2  [in the margin:] 2 E.3. 20.
3  [in the margin:] 10 E.3.59,60. [*i.e.*, fol. 59, pl. 62.] 13 E.3.prohibit. 1. 24 E.3.65. 26 E.3.61. 42.ass.5. 43.ass.35.

Sir *Robert Parning*, that was Lord Canchellour in 14 E.3. and had been cheif Justice of the common Pleas, would in the Terme time come and sit in the Court of common Pleas to hear matters in law debated and resolved, when he was Lord Chancellour, and speak to them himself, as it appeareth, *Hillar.* 17 E.3. fol. 14.b. & *Trin.* 17 E.3. 37.b. and in both these Termes Sir *John de Stonore* knight was chiefe Justice of the Court of common Pleas.

And Sir *Robert de Thorpe* knight, being chief Justice of the common Pleas, was made Chancellour 26 *Martii*, 45 E.3.[1] and yet in Michaelmas Terme following he sate in the court of common Pleas, and spake to matters in law *Mich.* 45 E.3. fol. 12.b. *Trin.* 45 E.3. 19, 22, 23.b. 24, 25, 26, 27, 28, *William de Finchden* then being chiefe Justice of the court of common Pleas.

1  [in the margin:] Vide Rot. Parliament, 45. E.3. nu. 8.

So Sir            *Knivet* knight, being chiefe Justice of the Kings Bench, was made Chancellour of England, 5 *Julii*, 46 E.3. and in 47 E.3 fol. 13.b. *Finchden* **[Coke, 2 Inst. \*553]** Chief Justice of the Common Pleas in a matter of Law depending in that Court said, that he would conferre with the Chancellour and the Justices of the Kings Bench, and in the end judgement was given by the advice of the Chancellour *(viz. Knivet)* and all the Judges of the Realm. In 49 E.3. 4.b. *Knivet* Chancellour argueth a matter in Law, and giveth Judgement.

Also peruse all the Acts of Parliament Printed and not Printed, and you shall find none that giveth him power to hold any Court of Equity, where some have thought, that the Statute of 36 E.3. cap. 9. doth give the Chancellour power to draw men before him for relief in equity, but that Statute without question referreth to his ordinary power, for thereby it is provided, that if any man, that finds himself grieved contrary to the Articles

above written, or others contained in divers Statutes, will come into the Chancery, or any for him, and thereof make his complaint, he shall presently there have remedy by force of the said Articles and Statutes, without pursuing elsewhere to have remedy; that is, the party grieved shall have an original Writ in the Chancery, grounded upon these Statutes for his reliefe, although no certain remedy be expressed in the Statutes without pursuit in Parliament, which Act is but a declaration of the Common Law, as oftentimes hath been observed before, and giveth no shadow to the Chancellour of any absolute power.

If you look into the Parliament Rolls: the first Decree in Chancery that I find made by the Chancellour was in 17 R.2.[1] *John de Wyndesor* complaineth in Parliament against Sir *Ri. le Scrope*, and requireth to be restored to the Mannors of *Rampton, Cotenham,* and *Westwike* in *Cambridgeshiere*, the which were adjudged and ordered to him by the Kings award, then being in the possession of Sir *John Lisley*, and now withholden by Sir *Richard le Scrope*, who by champerty bought the same: Briefly, the Case, as in the Parliament Roll it appeareth, was this: Upon the Petition of *John de Wyndesor* against Sir *John Lisley* for the said Mannors, they compromitted the matter to the Kings order and award; the King committed the same to the Councel, the hearing the same, do order & adjudge the matter in controversie for Sir *John de Wyndesor* under the Privy Seal, and sent a Warrant to *Arundel* Archbishop of *Canterbury*, then Chancellour of *England*, to confirm the Kings award made by advice of his Councel, who forthwith without more adoe confirmed it by his Decree, and granted an Injunction under the Great Seal against Sir *John Lisley*. After Sir *John Lisley* by Petition to the King, requireth that his Title to the said Mannors might be tried and determined as it ought by the Common Law, notwithstanding any former matter; the King by Privy Seal giveth Warrant to the Chancellour to make a *Supersedeas*, which the Chancellour without any sticking at it, did by Privy Seal: after which Sir *Richard de Scrope* purchased the said Mannors: Upon the deliberate hearing of the whole matter by the Lords of Parliament, it was resolved that the purchase of the said Mannnors was no champerty, & it was adjudged. that Sir *John de Wyndesor* should take nothing by his sute, but stand to the Common Law, and that Sir *Richard le Scrope* should go without day.

1    [in the margin:] Rot. Parliament. 17 R.2. nu. 10.

It is thought, that this Court of Equity began under *Henry Beauford*, son of *John of Gaunt*, that great Bishop of *Winchester*, afterwards Cardinal in the reign of Hen. 5. and in the beginning of H.6. and encreased while *John Kemp*, Bishop of *York* and Cardinal was Lord Chancellour in the 28 year of Hen. 6. But it encreased most of all, when Cardinal *Wolsey* was Lord Chancellour of *England*, *Anno* 8 H.8. and continued until 21 year of the same King: Of whom the old saying is verified, That great men in judicial places will never want Authority. But the Jurisdiction of this Court belongeth to another Treatise; and therefore thus much, which was pertinent to the understanding of this branch of this Act, upon this just occasion shall suffice: Only thus much for the honour and antiquity of that Court, you read, that in the time of King *Alfred* (who began to reign *Anno Domini*, 872. and reigned 29 years and six moneths) he gave a pardon to *Walston*, and that it was enrolled in the Court of Chancery, which Record *Walston* vouched.[1]

1    [in the margin:] Mirr. cap. 5, §. 1.

....

**[Coke, 2 Inst. \*688]**

An Exposition upon the Statute of 2 E. 6. *Cap*. 8. of Offices [1548].

Where many and divers persons holding, or that have holden lands, tenements, or hereditaments, some for term of years, and some by copy of Court Roll, have been expulsed, and put out of their termes and holds, by reason of Inquisitions, or Offices founden before Eschetours, Commissioners, and other, containing tenures of the King *Capite*, intitling the King to the wardship or custody of such lands or tenements; and sometime intitling the King to the same, upon attainders of Treason, Felony, or otherwise, by reason that such leases for terme of yeares, or interest by copy of Court Roll of such persons, have not been found in such inquisitions or offices: after which expulsion or putting out, the said persons have been without remedy, for the obtaining of the said farmes and holds, during the Kings possession therein, and can have no *Traverse*, *Monstrance de droit*, nor other remedy for the same, because their said interest is but a chattel in the Law, or customary hold, and no estate of freehold. And also, where any person or persons hath any rent, common, office, fee, or other profit apprender of any estate of freehold, or for years, or otherwise, out of such lands or tenements, specified in such offices or inquisitions, the said rent, common, office, fee, or profit apprender, not found in the same office or offices, such persons are in like manner without remedy to obtain, or have the said rent, common, office, fee, or profit apprender by any *Traverse*, or other speedy meane, without great and excess charges, during the Kings interest therein, by force of such inquisition or office.

Where and in what cases before the Statutes of 34 *E*. 3. *cap*. 14. and 36 *E*. 3. *cap*. 13. and 8 *H*. 6 *cap*. 19. the party grieved by any office might have had his *Traverse*, or *Monstrans de droit* by the common law, and where he was driven to his petition, and how, and in what manner, and in what cases the Subject was relieved by those Statutes. And where before this statute of 2 *E*. 6. the party was put to his Petition, you may read in *lib*. 4. *fol*. 54, 55. &c. 24 *E*. 3. 55.[1] until the end of the Case, adding thereunto, that *Mich*. 34 & 35 *Eliz*. it was resolved in the Court of Wards by the two chief Justices, in the case of the Countess of Rutland, upon consideration had of the said Acts of 34 *E*. 3. 36 *E*. 3. & 8 *H*. 6. that he in the remainder expectant upon an estate taile or freehold, or that hath a dry reversion expectant upon any estate of freehold, without any rent or profit, but only fealty, shall not traverse a false office, finding the dying seised of such a remainder or reversion: for these statutes give a *Traverse*, when the lands are seised by the King, and the party ousted thereof; and the seisin of tenant for life is the seisin of him in remainder or reversion. And the judgement cannot be given, *Quod manus Domini Regis amoveantur*. See *Stamf. prerog*. 13. he in the reversion may sue livery, &c. *Dyer*, 14 *Eliz*. 319. *Stamf. prerog*. 62. a. b.

1   [in the margin:] Lib. 4. fol. 54, 55. &c. Br. travers 55 [*i.e.*, 44] Stamf. prerog.

¶ *Leases for term of years, or interest by copy of Court Roll,* &c.]² Upon these words it hath been doubted whether a tenant by statute merchant, **[Coke, 2 Inst. \*689]** by Statute staple, by *Elegit*, or Executors that have interest in lands by devise for the payment of debts, and the like were within this Law, because they are not lessees for years; but the common opinion is, that these interests are within the purview of this act: for that they are not onely

2   [in the margin:] See 37 ass. p. 11. 4 E. 4. 21.

within the same mischief, being without remedy, but within the express reason of this Law, *viz.* because their said interest is but a chattel real, and all the abovesaid interests are but chattels reals, *& ratio legis est anima legis. Lex beneficialis rei consimili remedium præstat. Quæcunque intra ratrionem legis inveniuntur, intra ipsam legem esse judicantur.*

29 *H.* 8. *tit. Travers d' office* 50. [2] A termor could not traverse an office by the common law, but if it were found in the office, he might have a *Monstrans de droit*, and so of others that had but chattels realls, 13 *E.* 4. 8.

2   [in the margin:] 7 H.7.11. Vi. 9 H.6.21.

But *nota*, though there be a double matter of record to entitle the King to a chattel personal, as an attainder, and an office, that the person attainted was possessed of a horse, the office may be traversed, 34 *H.* 6. 51. 4 *E.* 4. 24. 47 *E.* 3. 26. 13 *E.* 4. 8. 1 *H.* 7. fol. because chattels personal are *bona peritura*, and cannot abide the delay of a petition. *Vid. W.* 1. *cap.* 4. that goods wrecked be in safety, and kept by the view of the Sherifes, &c. and yet such as be *bona peritura* the Sherife, &c. may sell them within the year.

By the words of the writ of *diem clausit extremum, mandamus, &c.* the Eschetour might, according to the common Law, seise, &c. before office: but by the statute of *Lincolne, anno* 29 *E.* 1. *de Escheatoribus, Vet. Mag. Chart.* 108. and by *Artic' super Chart. anno* 28 *E.* 1. *cap.* 19. the Eschetour, &c. cannot seise before office, and yet the words of the writs keep their old form. Here it appeareth, that the King is intitled by office.

For remedy whereof, be it enacted by authority of this present Parliament, that where any such office or inquisition is or shall be founden, omitting such titles, interests, or matters, as aforesaid, that in all such cases, every lessee, tenant for term of years, or copiholder, & every such person or persons that have, or shall have any interest to any rent, common, or profit apprender, for term of years, life, or otherwise, out of any of the lands, tenements, or hereditaments contained in such office or inquisition, where the King his heirs or successors is, or shall be entituled, as is aforesaid, to any such lands, tenements, or hereditaments, shall have, hold, enjoy, and perceive all and every their leases and interests for term of years, or by copy of Court roll, rents, commons, offices, fees, and profit apprender, in such manner, form, state, and condition, as they and every of them should, or might have done, in case there had been no such office or inquisition found, and as they should or lawfully might, or ought to have done, in case such lease, interest by copy of Court roll, rent, common, office, fee, or profit apprender, had been founden in such office or inquisition: any law, custome, or usage to the contrary heretofore used in such cases, in any wise notwithstanding. And also, where it is or shall be founden for the King, his heirs or successors, that the heir or heirs of his tenant or tenants, is, or shall be within age, where in deed such heir or heirs is, or shall be at the same time of full age, or of a more or greater age, then is, or shall be contained within such office.

¶ *Where any such office or inquisition is, or shall be found, &c.*] This hath reference to the Preamble, and extendeth not only to offices in case of wardship by tenure *in capite*, but to offices upon attainders of treason, felony, or otherwise. Wherein the generality of these words [*or otherwise*] are to be observed.

[Coke, 2 Inst. *690]

Be it further enacted by the authority aforesaid, that in every such case, such heir and heirs, shall and may at his or their very full age, or after, prosecute a writ of *Ætate probanda*, and sue his or their Livery, or *Ouster le maine*, as his or their cases shall lie, and have the profits of his or their lands, tenements, or hereditaments, from the time of his or their very full age: any such untrue office or inquisition, or any law or custome to the contrary in any wise notwithstanding.

Also where one person or moe is or shall be founden heir to the Kings tenant by office or inquisition, where any other person is, or shall be heir; or if one person or moe be or shall be founden heir by office, or inquisition in one County, and another person or persons is or shall be founden heir to the same person in another County, or if any person be, or shall be untruly founden Lunatick, Ideot, or dead.

See 5 *E*. 4. 3. *Stamf*. *prer*. 61. b. 21 *R*. 2. *livery* 4. 13 *H*. 4. 6, 7. *Calestens case*. 1 *H*. 7. 3. 14. & 28. *Bro*. *tit*. *Office devant Escheator* 27. 40. & *ibid*. 50. *Br*. *tit*. *Travers de office* 47. *Kelwey*, 7 *H*. 8. *fol*. 177.

¶ *Or after sue a writ of* Ætate probanda, *&c*.] Or a commission in the nature of an *ætate probanda*, F.N.B. 257. c. d. e. Registr. 294, 295, 296.

See a notable president of an *Ætate probanda*, together with the reasons of the jurors *Suff*. *Hill'* 25 *E*. 1. *rot*. 14. *coram reg*., *Benedict de Blakenhams case*.

See *Rot*. *Parl*. 40 *E*. 3. *nu*. 14. 15. where the heir is found of full age, where in truth he is within age.

¶ *Also where one person or more is, or shall be found heir to the Kings tenant by office or inquisition*, *&c*.] This act is general, and extendeth as well to offices found *virtute officii* (whereof there was [*] no interpleader by the common Law, because a general livery could not be sued thereupon: but special liveries (now and long since in use) may be sued upon such an office found *virtute officii*) as to offices found *virtute brevis aut commissionis*.

[*]  30 ass.28. Kelway. 10 H.8.fol.198.b. Stamf.prer. 59.b. 21 H.7.fol.35.

 [1] The reason wherefore no general livery could be sued at the common Law upon an office found *virtute officii*, was, *Quia vigilantibus, non dormientibus jura subveniunt*. And the office whereupon livery is to be granted to the heir, is to be upon an office to be found by writ or commission at the suit of the heir, and the Escheator may retorn an office *virtute officii* into the Court.

1    [in the margin:] Vid. 32 H.8. cap.46. for the Court of Wards. F.N.B. 232,233. 29 ass.43. 16 E. 3. livery 30. 32 E.3. travers 38. 32 ass.28. 50 ass.2. See the jurisdiction of Courts, cap. the Court of Wards.

Be it enacted by the authority aforesaid, that every person and persons grieved, or to be grieved by any such office or inquisition, shall and may have his or their traverse to the same, immediately, or after, at his or their pleasure, and proceed to tryal therein, and have like remedy and advantage, as in other cases of traverse upon untrue inquisitions or offices founden: any law, usage, or custome to the contrary in any wise notwithstanding.

See the statute of *Marlbridge*, *ca*. 16. and the exposition thereupon. 2 *E*. 4. 18. 5 *E*. 4. 3, 4. *F.N.B.* 262. 12 *E*. 4. 18. 2 *H*. 6. 5. 8 *Hen*. 7. 118. 11 *H*. 7. 3. *Vide Dyer* 5 *Mar*. 161, 162. *lib*. 7. 45. in *Kennes* case, this act doth not take away any incidents in Law: for if one heir traverse the office of another, he first must have an office found for himself, as there it is resolved. *Vid*. 36 *E*. *tit*. *Travers* 44. 12 *H*. 6. *travers* 45. 5 *E*. 4. 4. 1 *H*. 7. 14. 39 [29] *ass*. 23 [13]. 43 *ass*. p. 20. 32 *H*. 6. *travers* 39. 16 *E*. 4. 4. *F.N.B.* 262. *Stamf. prer*. 58. *Kennes* case, *ubi supra*, the cause of this word [*immediately*] to make it clear that before was *vexata quæstio*, so as by this an interpleader, as the case shall require, shall be immediately.

### [Coke, 2 Inst. *691]

And where it is or shall be hereafter untruly founden by office or inquisition, that any person or persons attainted, or that shall be attainted of treason, felony, or premunire, is or shall be seised of any lands, tenements, or hereditaments, at any time of such treason, felony, or offence committed or done, or any time after, whereunto any other preson or persons hath, or shall have any just title or interest of any estate of freehold, that then in every such case, every person and persons grieved thereby, shall have his or their traverse, or *Monstrans de droit* to the same, without being driven to any petition of right: And like remedy and restitution upon his or their title, found or judged for him or them therein, as hath been accustomed and used in other cases of traverse, although the Kings Majesty, his heirs or successors be, or shall be, in such case intitled to any such lands, tenements, or hereditaments, by double matter of record: any law, custome, or usage to the contrary in any wise notwithstanding.

*Lib*. 4. *fol*. 57. b. the reason is notably expressed, wherefore in these cases at the common Law the party grieved was put to his petition. See 49 *Ed*. 3. 11. 13 *H*. 4. 7. 10 *H*. 6. 15. 4 *E*. 4. 25. 21 *E*. 4. 2, 3. 4 *H*. 7. *fol*. 7. *Stamf. prer*. 72, 73. 1 *E*. 5. 8. *Pl. com*. 486. *Rot. parl*. 11 *H*. 6. *nu*. 29. *John* Earl of Somersets case, *Br*. *travers de office* 51. *Vid*. 43. *ass*. p. 28. 33 *H*. 8. *petition Br*. 35.

¶ *Shall have his or their traverse, or* Monstrans de droit *to the same*, &c.] Note, that the traverse and *Monstrans de droit* are here dis-junctively divided, and by the ninth branch of this Act, the party that shall traverse, must sue out one writ or several writs of *Scire facias*, as the case shall require, and that there shall be two writs of search granted upon every traverse, that shall be pursued by vertue or means of this Act.[1] But *nota*, that Proviso extends onely to traverses, and not to any *Monstrans de droit* to be pursued by force of this act, either for the suing out of writs of *Scire facias*, or that therein writs of search shall be granted, because the *Monstrans de droit* doth confess and avoid the title of the King, and the traverse denieth it, 14 *E*. 4. 17 [1, 7].

---

1 [in the margin:] Stamf. prer. 70, 71, simile.

And further be it enacted by the authority aforesaid, that where any inquisition or office is or shall be founden by these words, or the like, *Quod de quo, vel de quibus tenementa prædicta tenentur, jurat' prædict' ignorant:* or else founden holden of the King, *Per quæ servitia ignorant*, or such like; that in such case, such tenure so uncertainly founden, *De quo, vel de quibus tenementa prædicta tenentur, ignorant*, shall not be taken for for any immediate tenure of the King; nor such tenure so founden of the

king, *Per quæ servitia ignorant*, shall not be taken any tenure *in capite*; but in such cases a *Melius inquirendum* to be awarded, as hath been accustomed in old time: any usage of latter time to the contrarie notwithstanding.

¶ *That where any inquisition or office is or shall be founden*, &c.] [1] Upon an office found before the Escheator, *virtute officii*, there lay no *Melius inquirendum* before this Act; for the words of the writ be, *Per quandam inquisitionem capt' coram A. eEchaetore nostro, &c. de mandato nostro capt'*. *F.N.B.* 255. *Regist. fol.*    But this act is general, and giveth it when it is found, *virtute officii*. *Vid*. 8. *H*. 6. *cap*. 16.

---

1   [in the margin:] Kelwey 199.

¶ *Quod de quo vel de quibus*, &c.] *Vide* 10 *H*. 4. 2. b. 13 *H*. 7. 4. 29 *H*. 8. *Br. office* 58. *et* 30 *H*. 8. *ibid*. 59.

**[Coke, 2 Inst. *692]**

¶ *But in such cases a melius inquirendum to be awarded*, &c.] *Vide Dyer*, 12 *Elis. fol*. 291. *Si sur le melius tenure est trove dun common person in certaine, ne besoigne travers*. *Dyer* 13 *Elis. fol*. 306. *Si ignoramus soit trove sur le melius, ceo serra prise tenure in capite. Issint fuit resolve Mich*. 33 & 34 *Elis. per les* 2. *chiefe Justices in le Court de Gardes*. For this Act extends not to the second inquisition upon the *Melius*. And it was then resolved, that he which should traverse such an office, should traverse, that the land was not holden of the King *in capite*; for so much is implied in the office, *Dyer* 5 *Mar*. 161, 162.

*Dyer* 13 *Elis. ubi supra, si sur le melius soit trove tenure dun roigne ut de manerio, &c. sed per quæ servitia ignorant*. This is a tenure by Knight-service, as of the Mannor. *Vide pur melius inquirend' lib*. 8. *fol*. 168. *Paris Stoughters* case, & 5 *Mar*. *Dyer* 155. b. 156. that no *melius inquirendum* is grantable of any office found *de quo vel de quibus, &c.* before this statute.

And be it further enacted by the authority aforesaid, that where it is or shall be found by any office or inquisition, that any lands, tenements, or hereditaments, are, or shall be discended, remained, or common to any heir within age, and in the Kings ward, or that ought to be in the Kings ward, and that such lands, tenements, or hereditaments are holden of the King immediately, where in deed the same are, or shall be holden of some other common person, and not of the king immediately: that in such case, such heir or heirs shall and may have their traverse to the same within age, and like remedy and restitution upon his or their title founden or judged for him, or them therein, as hath been accustomed and used in other cases of traverses: any law, usage, or custome to the contrary in any wise notwithstanding.

¶ *Where it is, or shall be found by any office or inquisition*, &c.] Note the generality of this clause.

¶ *Shall be holden of some other common person*, &c.] The Lord might traverse by the common Law. 5 *Mar*. *Dyer* 161, 162. but the heir could not before this act. *Vide* 1 *H*. 7. 3.

Also where the Kings Majesty by his prerogative ought to have as well such lands and tenements as be holden of other persons, as holden of himself immediately, whereof

his tenant holding of him in chief, dyeth seised, his heir being within age, until such time as livery be sued by such heir, and that the mean Lords, of whom the said other lands and tenements of such heir be holden, used to spare the rents due to them for the same lands or tenements holden of them, during the Kings possession. And when such heir hath sued his or their livery they use by distress, or otherwise to compel the said heir to pay to them the arrerages of such rents, for such time as the said lands, or tenements were in the Kings possession by such minority, where they should have sued by petition to the Kings Majesty, to have obtained the same out of the Kings hands, if they would have the same, which is to the great detriment, loss, and hinderance of such heir and heirs. For redress whereof, be it enacted by the authority of this present Parliament, that from henceforth such mean Lords, during such minority shall have, receive, and take the said rents by the hands of such of the Kings officers, as shall be appointed to have, receive, and take the **[Coke, 2 Inst. \*693]** issues, revenues, and profits of the same lands and tenements so holden of such mean Lords, during the minority and nonage of such heir and heirs, and until such heir and heirs sue his or their livery, and that such heir and heirs until such time as he or they shall have sued their livery, or might conveniently have sued their livery, shall be thereof clearly discharged. And that such officer or officers, shall upon request made, pay the same to such mean Lords (they giving to such officer and officers a sufficient acquittance, or acquittances for the receipt of the same.) And that such payment thereof made with acquittance, or acquittances thereof shewed, shall be to such officers a sufficient discharge against the Kings Majesty and his heirs, upon his or their accompt in that behalf: Any law, usage, or custom heretofore had, or used to the contrary hereof in any wise notwithstanding.

¶ *Until such time as liverie be sued.*] *Nota*, there are two sorts of liveries, *viz.* liveries in deed, and liveries in law. Of liveries in deed there be two kinds, *viz.* a general livery, and a special livery. For a general livery an office must be found in every County, an *Ætate probanda* found and returned in the Chancery; a writ to the Lord privie Seal, that the heir is of full age: and thereupon a privie seal to the Chamberlain of England to receive his homage, &c. which kind of livery is dangerous, tedious, and chargeable. *Vid.* 44. *E.* 3. 12. 12 *H.* 4. *livery* 4. 21 *R.* 2. *livery* 5. 1 *H.* 14. [*sic*] *E.* 4. 18. 7 *H.* 8. *Kelwey* 176, 177.

There is also a special livery with a pardon much more safe, speedy and beneficial for the party, and it may be had upon any office found in any one County, and all the rest to come in by Certificate, as now the use is without *Ætate probanda, &c.* 7 *H.* 8. *Kelwey* 177. or without any office at all, and may be made to the heir within age, 21 *E.* 3. 40. 29 *H.* 8. *livery Br.* 56.

By the Statute of 33 *H.* 8. *cap.* 22. power is given to the Master of the Wards, Surveyor, Attorny, and Receiver, or three of them, whereof the Master or Surveyor to be one, to grant a general or special livery. Whereupon some have thought, that special liveries became commonly to be granted; but it appeareth by 7 *H.* 8. *ubi supra*, that it was so commonly used by a good time then past. *Dyer*, 23 *Elis. fol.* 377. a special livery is not grantable at this day *ex debito justitiæ.*

34

If the office be traversed, and the King, hanging the traverse, grant livery, &c. the traverse goeth to the ground. *Kelw*. 2 *H*. 8. 157. *a*. *b*. 1 *H*. 7. 12. 27. adjudged. See *Dyer*, 23 *Elis*. *ubi supra*.

13 *H*. 4. 6. 7. *tit. Travers*, an office is found, that *A*. died seised of the mannor of *B*. and held the same *in capite* by Knights-service his heir within age; this office is traversed, that *A*. infeoffed him that traverseth in fee, and traverse the dying seised: Whereupon the King taketh issue, and hanging the traverse, it is found by another office, that the said feoffment was by collusion, and after the issue was found against the King; whereupon, by the rule of the Court, the party had judgement, and an *Amoveas manum*. For the office, found depending the traverse, shall not grieve the party; for so he might be infinitely vexed: but in a *Scire fac'* by the King upon the latter office he shall answer, &c. an excellent case for the benefit and speed of them that are driven to traverse. *Vid*. 11 *H*. 4. *fol*. 8. 13 *H*. 4. *tit. travers* 16 *et* 13 H. 4. *tit. livery* 21.

[*] There be also liveries in law, as by pardons, either by act of Parliament, or by Charter under the great Seal, to the heir of the Kings tenant *in capite*, be he within age, or of full age. But where some books say, that a pardon of intrusions to such an heir amounts in law to a livery, it is so to be understood, that in the pardon there be words also, that the heir may enter, &c. for a special livery is no other, but that the heir *habeat licentiam ingrediendi, &c.*

---

* 23 H.8.Br.intrusion 19. 21. 2 H.6.57. Kelw.10 H.8.198. 13 H.4.3. See Dyer 12 El.286. 46 E.3.grant 50. 34 H.8.Charter de pardon 54. 29 H.8.ibid.52. 16 E.4.fol.1. 32 H.8.Br.62. Stamf.prer.40.b.

**[Coke, 2 Inst. *694]**

Note, upon every livery the King hath the value of the land for half a year, but upon an *Ouster le maine* the Kings hands be amoved without any profit, &c.

¶ *Used to spare the rents, &c.*] Not onely rents, but reliefs also were due by the common law, 26 *H*. 8. 8. 24 *Ed*. 3. 24. 29 *ass. p*. 5. 39 *E*. 3. *reliefe* 1. *Vide Br. tit. Arrerages, pl*. 1. *et* 19. For though there be a kind of suspension of rents, &c. by reason of the Kings possession; yet the rents, &c. are due, because the prerogative of the King doth no man wrong, 13 *E*. 4. 8. *&c.*

Provided always, and it is enacted by the authority aforesaid, that this act, or any thing therein contained, shall not in any wise extend to any inquisition or office taken or founden, at any time before the twentieth day of March next coming[1]; nor to hinder, prejudice, or take away the title, interest, or possession of our Soveraign Lord the King, or of any other person or persons grown, or commen by vertue, mean, or occasion of any inquisition or office taken, or found before the same day; but that as well our said Soveraigne Lord the King, as all other person or persons, having any title, interest, or possession by vertue, mean, or occasion of any inquisition or office found before the same day, shall, and may have, hold, and enjoy the same in like manner and form, as though this act had never been had or made: any thing in the same act to the contrary in any wise notwithstanding.

---

1 [in the margin:] Vid. Dier 5 Mar. 155, 156. [*Anonymous*, 73 Eng. Rep. __ (Ct. Wards 1557).]

Provided also, and it is enacted by the authority aforesaid, that in all such cases, as any person or persons shall be inabled by this act to have any traverse, and shall pursue his or their traverse, that then he or they that shall pursue such traverse, shall sue one writ, or severall writs of *Scire facias* (as the case shall require) against all and singular such person and persons, as shall have interest by the King, or by his patentee or patentees, in like manner and form as is requisite upon traverses, or petitions heretofore pursued. And that in every such *Scire facias* the patentees, or other defendants shall have like plees and advantages, as they had in any *Scire facias*, before this time awarded against any patentee in any case of petition. And also, that upon every traverse that shall be pursued by vertue or mean of this act, in such case as the party or parties that shall pursue any such traverse, should, by the order of the common Laws of this Realm, have been put to sue by petition to the King, there shall be two writs of search granted in manner and forme, as like writs have been granted upon petitions made to the King.

¶ *Shall be inabled by this Act, &c.*] Hereof somewhat hath been spoken in the fourth branch. *Vid.* 5 *E.* 4. 3.

*Nota*, in many cases two matters of record with necessary averments shall amount to an office, but thereupon a *Scire fac'* is to be granted, wherein the party may traverse any of the material averments, &c. 21 *ass. p.* 36. 21 *E.* 3. *liverie.* 40 *ass.* 46. 50 *ass.* 2. 2 *E.* 3. 10. *b.* but because such records amounting are not within any branch of this act, we will speak no further of them.

Provided also, and it is enacted by the authority abovesaid, that if after any judgment shall be given upon any traverse that shall be tendred, or sued by vertue or mean of this act, it shall appear by any **[Coke, 2 Inst. *695]** matter of record, that the King hath any other former title, right, or interest to the mannors, lands, tenements, or other hereditaments mentioned in the same traverse, that then the same title, right, and interest shall be saved to the King, the said traverse and judgment thereupon given, in any wise notwithstanding.

¶ *Upon any traverse*.] This extendeth not to a *monstrans de droit* to be pursued upon this statute.

This Proviso was added (for that this act gave a traverse, where none was at the common Law, and that it should be judged for them, for whom it was found, &c.) lest the judgment, being warranted by authority of Parliament, should bind any former right the King had; and that appeareth also by the conclusion of this branch, *viz. The said traverse and judgment thereupon given notwithstanding*: [1] but it seemeth to be *abundans cautela*, for the judgment upon a traverse is, *Quod manus Domini Regis amoveantur, et possessio restituatur* to him that traverseth *salvo jure, &c.*

1  [in the margin:] Br.tit.Travers.de office 54.

It is to be observed, that there be certain Records which intitle the King, that by law are not traversable; in which cases, though the King be entituled but by single matter of record, yet the party grieved is put to his petition, and cannot be holpen by traverse, or *Monstrans de droit*. As taking one example for many: King *Henry* the fourth recovered in the Kings

Bench in a *Quare impedit* against the prior of *T.* the presentation to a Church, and had a writ to the Bishop, and his Clerk received, &c. where in truth the Prior never knew of the suit, nor was summoned, attached, or distrained by the Sherife; and thereupon the Prior moved the Court of Kings Bench to grant a writ, to cause to come before them the Summoners, the Pledges, and the Mainpernors upon the destress to be examined in this matter. And in this case five points were resolved by *Gascoigne* chief Justice, and the Court, *viz.* first, that the Prior was driven to his petition in nature of a writ of deceit, albeit in this case the King recovered in *auter droit.* 2. That if a common person had recovered, the Defendant had been driven to his original writ out of the Chancery, and could not proceed upon any judicial process out of this Court. 3. That if the conclusion of the petition be, that the King should command the Court of Kings Bench to proceed to the examination, &c. then without any writ out of the Chancery, the Court may proceed to the examination. 4. But if the petition doth conclude generally, that the king should do right, then the Prior should be driven to his orginal out of the Chancery. 5. That before such writ be granted, the Prior upon a commission out of the Chancery, ought to have his right found by enquest.

But seeing our statute extendeth to offices found by writ, commission, or *ex officio*, and not to other records, we will speak no further of them.

[1] Mine advice to such as shall traverse by force of this act, is, that in the inducement to the traverse, they alledge their own title, (which they ought to doe; for no man shall have the lands out of the Kings hands, without making a title) justly and truly: for the Attorney general for the King may either take issue upon the traverse, or by the Kings prerogative upon the title of the party, that traverseth at his choice.

1    [in the margin:] 3 H.4.14. 13.E.4.8. 46 E.3.travers 17.

It is a maxime in Law, That whensoever any man is by any office traversable amoved from his possession, that he must traverse the office in the Court, where the office is returned. Of houses and lands, which doe lie in livery, and whereof there is manual occupation, and profit presently taken, the party by finding of the office is out of possession; [2] but of rents, villeins, commons, advowsions [*sic*], and other inheritances incorporeal which lie in grant, the owner is not out of possession (be they appendant, or in gross) by the finding of an office; and therefore in any information or action brought by the King for the same, the party may traverse the office in that Court, where the information or action is brought for the King.

2    [in the margin:] 17 E.3.10.Henry Hills case. 20 E.4.11.14. 21 E.4.1.2.quare imped.101. 14 H.7.21. 15 H.7.6.

**[Coke, 2 Inst. *696]**

[3] And in all cases, when the King is not in possession by the office, and he obtain not possession within the year after the office found, then cannot the King seize without a *Scire facias*.

3    [in the margin:] 29 ass.p.40. 32 ass.p.28. 50 ass.2. Stamf.prer.54.b.

We have taken this statute of 2 *E.* 6. into our consideration, the rather, for that Justice *Stamford* wrote his Treatise upon the prerogative (wherein he setteth forth the common

Law) before this statute of 2 *E*. 6. by which statute the subject is relieved in many things, which lay heavy upon him, when Justice *Stamford* wrote; our chiefest endeavour being, that it may be known how the Law standeth at the edition of this second and other parts of the *Institutes*.

Edward Coke, The Fourth Part of the Institutes of the Laws of England: Concerning the Jurisdiction of Courts (1648)*

* *I.e.* the second edition; the first was published in 1644, ten years after Coke's death.

**[Coke, 4 Inst. *79]**

### The Jurisdiction of the Court [of Chancery].

In the Chancery are two Courts, one ordinary, *Coram Domino Rege in Cancellaria*, [a] wherein the Lord Chancelour or Lord Keeper of the Great Seale proceeds according to the right line of the laws and statutes of the Realm, *secundum legem & consuetudinem Angliæ*. [b] Another extraordinary according to the rule of equity, *secundum æquum & bonum*. And first of the former Court.

a    8 E.4. 5. 9 E.4. 15. 14 E.4. 7.
b    Stan. prær. c. 20 fo. 65.b. Pl. com. fo. 72. [*Ross v. Pope*, 75 Eng. Rep. 114, 114-15 (Ch. 1551).]

[c] He hath power to hold plea of *Scire fac'* for repeal of the Kings Letters patents, of Petitions, *monstrans de droits*, traverses of Offices, Partitions in Chancery, of *Scire fac'* upon recognisances in this Court, Writs of *Audita querela*, and *Scire fac'* in the nature of an *Audita querela* to avoid executions in this Court; [d] dowments in Chancery, the Writ *de dote assiganda* upon offices found, execution upon the Statute staple, or Recognisance in nature of a Statute staple upon the Act of 23 H.8. but the Execution upon a Statute merchant is returnable either into the Kings bench, or into the Common pleas, and all **[Coke, 4 Inst. *80]** personall actions by or against any Officer or Minister of this Court in respect of their service or attendance there. [a] In these if the parties descend to issue, this Court cannot try it by Jury, but the Lord Chancelour or Lord Keeper delivereth the Record by his proper hands into the Kings Bench to be tried there; because for that purpose both Courts are accounted [b] but one, and after triall had to be remanded into the Chancery, and there judgement to be given. But if there be a demurrer in law, it shall be argued and adjudged in this Court. Nota, the legall proceedings of this Court be not inrolled in Rols, but remaine *in filaciis* being filed up in the Office of the Pety-bag. [c] Upon a judgement given in this Court a Writ of Error doth lye returnable into the Kings Bench: [d] The stile of the Court of the Kings Bench is *coram rege* (as hath been said) and the stile of this court of Chancery is *coram domino rege in Cancellaria, & additio probat minoritatem*. And in this Court the Lord Chancelour or the Lord Keeper is the sole Judge: and in the Kings Bench there are four Judges at the least.

c    Rot. Par. 8 H.4. nu. 122. 2 R.3. 1.
d    Regist. 297. F.N.B. 263. Stanf. prær. ca. [*sic*] Rot. Par. 18 E.3. nu. 41.42.
a    13 E.2. coram Rege. Rot. 51. London.
b    10 E.3. 61. 24 E.3. 65. 73.
c    18 E.3. 25. 17. ass. 24 14 Eliz. Dier 315 [*Anonymous*, 73 Eng. Rep. 714 (K.B. 1572).] Pl. com. 393.a. [*Earl of Leicester v. Heydon*, 75 Eng. Rep. 582, 595 (K.B. 1571).]
d    In Par. Tr. 9 h.6. Rot. 5 int. placita regis.

This Court is *Officina Justitiæ*, out of which all originall Writs and all Commissions which passe the Great Seale go forth, which Great Seal is *Clavis regni*, and for those ends this Court is ever open.

[1] Of this Court *Fleta ubi supra*, saith, [*See* 2 FLETA 123-26 (H. Richardson & G. Sayles, eds.), *published as* 72 PUBLICATIONS OF THE SELDEN SOCIETY (London: Bernard Quaritch, 1955).]

1    [in the margin:] Fleta lib. 2, ca. 12. [*i.e.*, 13] Bract. li 5. fo. 413. Britton ca. 84. Fleta lib. 6. ca. 35, & 36.

   **[Coke, 4 Inst. *81]** ... And this Court is the rather alwayes open, for that if a man be wrongfully imprisoned in the Vacation, the Lord Chancelour may grant a *Habeas corpus* and doe him Justice according to law, where neither the Kings Bench nor Common Pleas can grant that Writ but in the Term time; but this Court may grant it either in Term time or vacation. So likewise this Court may grant Prohibitions at any time either in Terme or Vacation: which Writs of Prohibition are not retornable: but if they be not obeyed, then may this Court grant an Attachment upon the prohibition retornable either in the Kings Bench or Common Pleas.

   [2] The Author of that Book speaking of the Court of Chancery, and of the jurisdiction it then had, saith, *Curia Cancellariæ Regiæ est curia ordinaria pro brevibus originalibus emandandis, sed non placitis communibus tenendis.*

2    [in the margin:] New Tales, or *Novæ Narrationes*, written about the beginning of E. 3.

   Divers Acts of Parliament give authority to the Lord Chancelour to heare **[Coke, 4 Inst. *82]** & determine divers offences and causes in the Court of Chancery, which is ever intended in this Court proceeding in Latin, *secundum legem & consuetudinem Angliæ*, and the Defendant shall not be sworne to his answer, nor examined upon Interrogatories, and upon issue joyned it shall be tried in the Kings Bench, *Ut in similibus casibus solet*.[3] But our purpose is not to enumerate all these statutes, for our aim is principally at the generall jurisdiction of this Court

3    [in the margin:] 27 E.3. cap. 13. 2 R.3. fo. 3. 13 E.4. [sic] Dier 12 El. 288.a. [*Anonymous*, 73 Eng. Rep. 645, 646 (1570).] resolve.

   [4] The Officers and Ministers of this Court of Common law doe principally attend and doe their service to the Great Seal, as the [*] twelve Masters of the Chancery, whereof the Master of the Rols is the chief, who by their originall institution, as it is proved before, should be expert in the Common law, to see the forming and framing of originall writs according to law, which are not of course; whereupon such are called in our ancient Authors *Brevia Magistralis*. The Clerk of the Crown, the Clerk of the Hamper, the Sealer, the Chase wax, the Controller of the Chancery, twenty four Cursitors for making writs of course or fromed writs according to the Register of the Chancery, the Clerk of the presentations, the Clerk of the Faculties, the Clerk examiner of Letters Patents, the Clerks of the Pettibag, and the six Atturnies. The processe in this Court is under the Great Seal according to the course of the Common law.

4    [in the margin:] See the 2. part of the Inst. W.2. ca.24. *Verb. Clerici de Cancellaria.*
*    In the Parliament Rol of 5 R.2. nu.23. they are called chief Clerks.

   Having spoke of the Court of ordinary jurisdiction, it followeth according to our former division, that we speak of the extraordinary proceeding according to the rule of equity, *secundum æquum & bonum*, wherein we shall pursue our former order.

Albeit our ancient Authors, the *Mirror, Glanvill, Bracton, Britton* and *Fleta*, doe treat of the former Court in Chancery, and of originall writs and Commissions issuing out of the same, yet none of them doe once mention this Court of Equity. We have also considered what cases in this Court of Equity have been reported in our books, and we find none before the reign of *H.6.* and in that Kings time, and afterwards plentifully, we then turned our eyes to Acts of Parliaments and Parliament Rols.

...

**[Coke, 4 Inst. *84]**

...

3. Whereas matters of fact by the Common law are triable by a Jury of twelve men, this Court should draw the matter *ad aliud examen*, that is, to judge upon deposition of witnesses, which should be but evidence to a Jury in actions reall, personall, or mixt.

This Court of Equity proceeding by English Bill is no Court of Record, and therefore it can bind but the person only, and neither the estate of the Defendants lands, nor property of his goods or chattels.[1]

---

1   [in the margin:] 37 H.6.14. 27 H.8.18.

...

The Lord Chancelor or the Lord Keeper is sole Judge both in this Court of Equity, and in the Court concerning the Common law; but in cases of weight or difficulty he doth assist himselfe with some of the Judges of the Realm, and no greater exception can be taken hereunto then in case of the Lord Steward of England being sole Judge in triall of the Nobility, who also is assisted with some of the Judges.

For this Court of Equity the ancient rule is good. Three things are to be judged in Court of Conscience: Covin, Accident, and breach of confidence.

All covins, frauds, and deceits, for the which is no remedy by the ordinary course of law.

Accident, As when a servant an Obligor, Morgagor, &c. is sent to pay the mony on the day, and he is robbed, &c. remedy is to be had in this Court against the forfeiture, and so in the like.

The third is breach of trust and confidence, whereof you have plentifull authorities in our books.

...

**[Coke, 4 Inst. *88]**

...

It is said before that the Chancelour by his ordinary power may hold plea of *Scire fac'* to repeale the Kings Letters Patents under the Great Seal being alwayes inrolled in this Court, which we (to make a true derivation of his name) shall now particularly touch. This Writ of *Scire fac'* to repeale Letters patents doth lye in this ordinary course of Justice in three

cases. [1] The first, when the King by his Letters patents doth grant by severall Letters patents one and the self same thing to severall persons, the former Patentee shall have a *Scire fac'* to repeal the second patent. Secondly, when the King granteth any thing that is grantable upon a false suggestion, the King by his prerogative *Jure Regio* may have a *Scire fac'* to repeal his own grant. [2] Thirdly, when the King doth grant any thing which by law he cannot grant, he *Jure Regio* (for advancement of justice and right) may haved a *Scire fac'* to repeal his owne Letters patents. Now the Judgement in all these three cases is, *Quod prædictæ literæ patentes dicti domini Regis revocentur, concellentur, evacuentur, adnullentur, & vacuæ, & invalidæ pro nullo penitus habeantur, & teneantur; ac etiam quod irrotulamentum eorundem cancelletur, cassetur, & adnihiletur, &c.* Hereof our Lord Chancelour of England (for forein Chancelours, it may be, have not like authority) is called *Cancellarius, à cancellando,* i. *à digniori parte*, being the highest point of his jurisdiction to cancell the Kings Letters patents under the Great Seale, and damming the inrolment thereof, by drawing strikes through it like a lettice.

---

1  [in the margin:] 6 E. 4. 9. | Dier 3 Eliz. 137 [*i.e.*, Dyer 197, *Hunt v. Coffin*, 73 Eng. Rep. ___ (Ch. 1561).] | 2 E. 3. 7. | 17 E. 3. 59. | 21 E. 3. 47.

2  [in the margin:] Lib. 2 fo. 14. &c.

THOMAS WOOD, AN INSTITUTE OF THE LAWS OF ENGLAND (1st ed. 1720)*

* Note that [bracketed] material is in the original.

**[2 Wood 1720 *787]** …

    IV. The High Court of *Chancery*, The *King's Bench*, The *Common Pleas*, and the Court of *Exchequer* Have been the King's Courts (z) Time out of Mind.

(z) 2 Inst. 23.

    In the *Chancery* (*Cancellaria*) are *Two* Courts. (a) One *Ordinary*, where the Proceedings are according the Laws and Statutes of the Realm; Another *Extraordinary*, being a Court of Equity.

(a) 4 Inst. 79. 2 Inst. 552, 553.

    1. The *Ordinary* or *Legal* Court is a Court of Record, held *Coram Domino Rege in Cancellaria*.

    (b) The *Lord Chancellor* (*á Cancellando*, from His Power to Cancel Letters Patents, being the Highest Point of His Jurisdiction) or *Lord Keeper*, is the Judge of This Court of Common Law. [See *infra*.]

(b) 4 Inst. 84, 88.

**[2 Wood 1720 *788]** … This Court Hath (d) *Jurisdiction* to Hold Plea of *Scire Facias* for Repeal of the King's *Letters Patents*, at the Suit of a Former Patentee, When they are Granted to several Persons for One and the same Thing. But When they are against Law, or Granted upon a False Suggestion, The King may Have a *Scire Facias* to Repeal His own Grant by Letters Patents. [See the 18 *H.* 6. *ch.* 1. 3 *Ed.* 6. *ch.* 4. 13 *Eliz. ch.* 6.] There may be also a *Scire Facias* upon Recognizances in this Court, Execution upon a Statute-Staple, *&c.* And This Court may Hold Plea of All Personal Actions By or Against Any Officer of this Court, and, By Acts of Parliament, of several Offences and Causes.

(d) 4 Inst. 79, 80, 81. 1 Danv. Abr. 776.

    The *Process* is under the Great Seal, and in *Latin* according to the Common Law. But when the Parties come to issue, This Court cannot Try the Cause by a Jury, but the Record is to be Delivered by the Lord Chancellor, *&c.* into the King's Bench to be Tried there; And After Trial It **[2 Wood 1720 *789]** is to be Remanded into Chancery, That the Judgment may be Given there according to the Rules of Law. But If there be a Demurrer in Law, It shall be Argued and Adjudged in this Court. Upon an Judgment Given in this Court a Writ of Error doth lie Returnable into the King's Bench.

    (e) This Court is said to be *Officina Justitiæ*, out of which All Original Writs, All Commissions of Charitable Uses, Bankrupts, Sewers, Ideots, Lunaticks, *&c.* that pass under the Great Seal, do go forth. And for These Ends this Court is always open. (f) So one from Hence may Have an *Habeas Corpus*, Prohibition, *&c.* in the Vacation; which issue out of other Courts only in the Term-Time. Here also a *Subpœna* may be had to Force Witnesses to appear in other Courts when *They* Have no Power to call Them.

(e) 4 Inst. 80. (f) 4 Inst. 81.

Thomas Wood, An Institute of the Laws of England (3d ed. 1724)*

* Underscoring indicates additions since the first edition. Note that [bracketed] material is in the original.

**[Wood 1724 *459]** …

IV. The High Court of *Chancery*, The *King's Bench*, The *Common Pleas*, and the Court of *Exchequer* Have been the King's Courts (h) Time out of Mind.

(h) 2 Inst. 23, 551, 552, 553, 554.

In the *Chancery* (*Cancellaria*) are *two Courts*. (i) One *Ordinary*, where the Proceedings are according the Laws and Statutes of the Realm; another *Extraordinary*, being a Court of Equity.

(i) 4 Inst. 79. 2 Inst. 552, 553. West Symb. Of the Chancery, § 15, 16.

1. The *Ordinary* or *Legal* Court is a Court of Record, held *Coram Domino Rege in Cancellaria*, on the Petty-Bag Side.

(k) The *Lord Chancellor* (*á Cancellando*, from his Power to cancel Letters Patent, being the Highest Point of his Jurisdiction) or *Lord Keeper*, is the Judge of this Court of Common Law. [See *infra*.]

(e) 4 Inst. 84, 88.

...

This Court hath (m) *Jurisdiction* to hold Plea by *Scire Facias* for Repeal of the King's *Letters Patents*, at the Suit of a Former Patentee, When they are Granted to several Persons for one and the same Thing. But When they are against Law, or Granted upon a False Suggestion, the King may have a *Scire Facias* to Repeal his own Grant by Letters Patents. [See 18 *H.* 6. *ch.* 1. 3 *Ed.* 6. *ch.* 4. 13 *Eliz. ch.* 6.] Here also It may Hold Plea of Petitions, *Monstrans de Droit*, (*i.e.*) for a Subject to be restored unto Lands, *&c.* which he shews to be his Right [See 34 *Ed.* 3. *ch.* 14. *36 Ed.* 3. *ch.* 13. 4 *Rep.* 54.] Traverses of Offices, *(i.e.)* to prove that an Inquisition taken of Lands or Goods is defective and wrong. There may be also a *Scire Facias* upon Recognizances in this Court, [See the 23 *H.* 8. *ch.* 6.] Execution upon a Statute-Staple, *&c.* but the Execution upon a Statute-Merchant is returnable in the *King's Bench* or *Common Pleas.* And This Court may hold Plea of All Personal Actions By or against any Officer of this Court, and, By Acts of Parliament, of several Offences and Causes.

(m) 4 Inst. 79, 80, 81, 88. 1 Danv. Abr. 776.

**[Wood 1724 *460]**

The *Process* is under the Great Seal, and in *Latin* according to the Common Law. ==But when the Parties come to Issue, This Court cannot Try the Cause by a Jury, but the Record is to be Delivered by the Lord Chancellor, *&c.* into the King's Bench to be Tried there==; And after Trial It is to be Remanded into Chancery, That the Judgment may be given there according to the Rules of Law. But If there is a Demurrer in Law, It shall be argued and

adjudged in this Court. Upon a Judgment Given in this Court a Writ of Error doth lie returnable into the King's Bench.

  (n) This Court is said to be *Officina Justitiæ*, out of which all Original Writs, All Commissions of Charitable Uses, Bankrupts, Sewers, Idiots, Lunaticks, *&c.* that pass under the Great Seal, do go forth. And for These Ends this Court is always open. (o) So one from hence may have an *Habeas Corpus*, or Prohibition, *&c.* in the Vacation; which Issue out of other Courts only in the Term Time. Here also a *Subpœna* may be had to Force Witnesses to appear in other Courts when *They* Have no Power to call them.

(n) 4 Inst. 80. (o) 4 Inst. 81.

THOMAS WOOD, AN INSTITUTE OF THE LAWS OF ENGLAND (9th ed. 1768) & (10th ed. 1772)*

---

* Underscoring indicates additions since the third edition; **bold** indicates additions between the ninth and tenth editions. Note that [bracketed] material is in the original.

**[Wood 1768 *479/Wood 1772 *458]** …

IV. The High Court of *Chancery*, The *King's Bench*, The *Common Pleas*, and the Court of *Exchequer* have been the King's Courts (c) Time out of Mind.

(c) 2 Inst. 23, 551, 552, 553, 554. **3 Black. Com. 46, 49, 429.**

In the *Chancery* (*Cancellaria*) are *two Courts*. (d) One *ordinary*, where the Proceedings are according the Laws and Statutes of the Realm; another *extraordinary*, being a Court of Equity.

(d) 2 Inst. 552, 553. 4 Inst. 79. West Symb. Of the Chancery, § 15, 16.

1. The *ordinary* or *legal* Court is a Court of Record, held *coram Domino Rege in Cancellaria*, on the Petty-Bag Side.

(e) The *Lord Chancellor* (*á Cancellando*, from his Power to cancel Letters Patent, being the highest Point of his Jurisdiction) or *Lord Keeper*, is the Judge of this Court of Common Law.

(e) 4 Inst. 84, 88.

...

This Court hath (g) *Jurisdiction* to hold Plea by *Scire Facias* for Repeal of the King's *Letters Patents*, at the Suit of a former Patentee, when they are granted to several Persons for one and the same Thing. But when they are against Law, or granted upon a false Suggestion, the King may have a *Scire Facias* to repeal his own Grant by Letters Patents. [See 18 *H.* 6. *ch*. 1. 3 & 4 *Ed.* 6. *ch*. 4. 13 *Eliz. ch.* 6.] Here also it may hold Plea of Petitions, *Monstrans de Droit*, (*i.e.*) for a Subject to be restored unto Lands, which he shews to be his Right [See 34 *Ed.* 3. *ch.* 14. *36 Ed.* 3. *ch.* 13.] Traverses of Offices, *(i.e.)* to prove that an Inquisition taken of Lands or Goods is defective and wrong. There may be also a *Scire Facias* upon Recognizances in this Court, [See 23 *H.* 8. *ch.* 6.] Execution upon a Statute-Staple; but the Execution upon a Statute-Merchant is returnable in the *King's Bench* or *Common Pleas.* And this Court may hold Plea of all personal Actions by or against any Officer of this Court, and, by Acts of Parliament, of several Offences and Causes.

(g) 4 Inst. 79, 80, 81, 88. 1 Danv. Abr. 776. 1 Str. 146. [*R. v. Hare*, 93 Eng. Rep. 439 (Ch. 1719).] 1 Eq. Ab. 127, &c. 4 Rep. 54.  [*The Sadlers' Case*, 76 Eng. Rep. 1012 (Ch. 1588).]

**[Wood 1768 *480/Wood 1772 *459]** The *Process* is under the Great Seal, and in *Latin* according to the Common Law. [It is now in *English*, as are all other Law-Proceedings, by 4 *Geo.* 2. *ch.* 26.] But when the Parties come to issue, this Court cannot try the Cause by a Jury, but the Record is to be delivered by the Lord Chancellor into the King's Bench to be tried there; and after Trial it is to be remanded into Chancery (a), that the Judgment may be given there according to the Rules of Law. [*Qu.*] But if there be a Demurrer in Law, it shall be argued

and adjudged in this Court. Upon an Judgment given in this Court a Writ of Error (b) doth lie returnable into the King's Bench. [*Qu.*]

(a) 2 Saund. 27 [*Jeffreson v. Morton*, 85 Eng. Rep. 540, 577-78 (K.B. 1670).]. Contra. 1 Eq. Ab. 128. [21 Eng. Rep. 933.] (b) 1 Vern. 131. [*R. v. Cary*, 23 Eng. Rep. 364, 365 (Ch. 1682).] Contra. 1 Eq. Ab. 129. [21 Eng. Rep. 934.]

   (c) This Court is said to be *Officina Justitiæ*, out of which all Original Writs, all Commissions of charitable Uses, Bankrupts, Sewers, Idiots, Lunaticks, *&c.* that pass under the Great Seal, do go forth. And for these Ends this Court is always open. (d) So one from hence may have an *Habeas Corpus*, or Prohibition, in the Vacation; which issue out of other Courts only in the Term-Time. (e) It is said, no Motion can be made on the Petty-Bag Side in the Vacation. Here also a *Subpœna* may be had to force Witnesses to appear in other Courts when *they* have no Power to call them. [*Qu.*]

(c) 4 Inst. 80. (d) 4 Inst. 81. (e) 1 Wms. 522. [*Anonymous*, 24 Eng. Rep. 498, 498 (Ch. 1718).]

A GENERAL ABRIDGMENT OF CASES IN EQUITY, ARGUED AND ADJUDGED IN THE HIGH COURT OF CHANCERY (4th ed. 1755)

[Eq. Ca. Abr. *127]

## Cap. XXI

## Courts and their Jurisdiction.

...

### (A) Concerning the Jurisdiction of the ordinary and limited Court in Chancery, proceeding according to Law.

1. In Chancery there are two Courts, the one Ordinary, which proceeds according to the Laws and Statutes of the Realm, called the Petty Bag Side, and which has been a Court Time out of Mind: The other is called the Extraordinary Court, and proceeds according to the Rules of Equity. 4 *Inst. 79*. 2 *Inst. 552*.

[Eq. Ca. Abr. *128]

2. The (*a*) ordinary Court hath Power to hold Plea of *Scire Fac.* for Repeal of the King's Letters Patent, *Monstrans de droits*, Traverses of Offices, Petitions in Chancery, of *Scire Fac.* upon Recognizances in this Courts [sic], Writs of *Audita Querela*, and *Scire Fac.* in Nature of *Audita Querela*, Dowments in Chancery, the Writ *de dote assignanda* upon Offices found, Executions upon Statute Staple or Recognizances in Nature of a Statute Staple upon the Act 23 *H.* 8. but the Execution upon a Stautte Merchant is returnable either into the *K.B.* or *C.B.* 4 *Inst.* 80.

(*a*) This Court had heretofore great Extent of Jurisdiction and Multiplicity of Business, especially whilst tenures remained as they were at the Common Law, and before the Erection of the Court of Wards. To this Day there are held in this Court, Pleas of *Scire Facias* for Repeal of the King's Letters Patent, Petitions, *Monstrans de droit*, Traverses of Offices, *Scire Facias* upon Recognizances, Executions upon Statutes, and Pleas of all Personal Actions, by or against an Officer or Minister of this Court.

3. This Court is *Officina Justitiæ*, out of which all original Writs and Commissions, which pass under the Great Seal, do issue; and for these Ends this Court is always open, so that One from hence may in Vacation have a *Habeas Corpus*, Prohibition, *&c.* which issue out of other Courts only in Term-time. 4 *Inst.* 80, 81.

4. All Personal Actions, by or against any Officer or Minister, in respect of their Service or Attendance, may be determined in this Court. *Ibid.* 80.

5. This Court cannot hold Plea of Land, but it may of Trespass or Debt. 20 H. 6. 32.

6. The Proceedings in this Court are all in *Latin*, but they are not inrolled in Rolls, but remain *in Filaciis*. 4 *Inst.* 80.

7. If the Parties descend to Issue, this Court cannot try it by a Jury, but the Lord Chancellor delivereth the Records with his proper Hands into the King's Bench, to be tried there; because for that Purpose both Courts are accounted but one, and after Trial had to be (*b*) remanded into Chancery, and there Judgment to be given: But if there be a Demurrer in Law, it shall be argued and adjudged in this Court. *Ibid.*

48

(*b*) But *quære* whether the constant Practice has not been to give Judgment in the King's Bench. *Vide All.* 16, 17. [Aleyn 16, 17, 82 Eng. Rep. ___.] *Hill.* 84, 94. [?] *Cro. Jac.* 12. [*Molineux v. Lacon*, 79 Eng. Rep. 11, 11 (K.B. 1603).] 2 *Rol. Abr.* 349. and 2 *Sand.* 27. [*Jefreson v. Morton*, 85 Eng. Rep. 540, 577-78 (K.B. 1670).] where it is resolved, that if there be a Demurrer for Part, and Issue for Part, the whole Record shall be transmitted into *B.R.* and the Judgment given there; and 2 *Sand.* 23, S.P. [*Jefreson v. Morton*, 85 Eng. Rep. 540 (K.B. 1670).] and there said, that the Books cited 4 *Inst.* 80. do not warrant the Opinion. But if the Issue is to be tried otherwise than by a Jury, as by the Bishop's Certificate, *&c.* Judgment shall be given in Chancery. 1 *Jon.* 80. [*i.e.*, Wm. Jones 90, *Blakeston v. Martyn*, 82 Eng. Rep. ___ (K.B. 1626).] *Lat.* 3. [*Blaxton's Case*, 82 Eng. Rep. ___ (K.B. 1625); *see also Blackston v. Martin*, Latch 112, 82 Eng. Rep. 300 (K.B. 1626).]

   \* 8. An Inquisition was taken, and a Forfeiture of the Office of Warden of the *Fleet* found, and the Defendant pleaded to Issue; and after Issue joined, several other Persons came in by way of *Monstrans de droit*, and pleaded; and a Demurrer to them; and the Record was carried into *B.R.* by the Clerks of the Petty Bag, without any Order of the Court, in order to have the Issue tried. And now two Questions were moved; *first*, Whether the Record were well removed, because it was done by the Clerks of the Petty Bag, because it ought to be by the Lord Chancellor *propria Manu*. 2*dly*, Whether the Record be intirely removed, there being an Issue as to one, and a Demurrer to the rest. As to the first Point, Ld. K. was of Opinion clearly, that the Record was well removed; for what is done by the Hand of the proper Officer of the Chancellor, may be well enough said to be done by him *propria Manu*. **[Eq. Ca. Abr. \*129]** And though the Clerk of the Petty Bag carrying the Record without an Order, has committed a Fault to this Court; yet that will not prevent the Record from being well removed: And as to the second he was of Opinion that the Record was intirely removed, on Consideration of the Cases of *Jefferson* and *Dawson*, 2 *Saund.* 6. [*Jefreson v. Morton*, 85 Eng. Rep. 540 (K.B. 1670).] *Rex* and *Stoughton*, *Ibid.* 157. [85 Eng. Rep. ___ (K.B. 1670).] and *The Prince's* Case, 8 *Co.* [1, 77 Eng. Rep. ___ (Ch. 1606).] *Mich.* 1700. *Rex* and *The Warden of the Fleet.*

   \* 9. In a Cause on the *Latin* Side, on a Motion that the Defendant might stand committed for not vacating his Letters Patent of Reprisals, it was moved that they might be at Liberty to bring a Writ of Error in the King's Bench, for which was cited *Dyer* 315. [*Anonymous*, 73 Eng. Rep. 714 (K.B. 1572).] 4 *Inst.* 80, *&c.* But Ld. K. said, All these Books were founded only on the single Opinion of Lord *Dyer*; and though he thought the Jurisdiction of the Chancery, even of the *Latin* Side, not subjected unto, nor to be controuled by the King's Bench; and that he would (*a*) injoin all such Writs of Error. *Hil.* 1682. *Rex* and *Cary*.

(*a*) That upon a Judgment given in this Court, a Writ of Error doth lie returnable into the King's Bench. *Vide* 13 *Ed.* 3. 25 *Ass.* 24. *Dyer* 315. [*Anonymous*, 73 Eng. Rep. 714 (K.B. 1572).] *Plow.* 393. [*Earl of Leicester v. Heydon*, 75 Eng. Rep. 582, 595 (K.B. 1571).] And *per* Lord *Coke*, The Stile of the King's Bench is *coram Rege*, but the Stile of the Chancery is *coram Rege in Cancellaria*, and *Additio probat Minoritam*. 4 *Inst.* 80.

Francis Buller, An Introduction to the Law Relative to Trials at Nisi Prius (Dublin, 1791)*

* The first edition was published anonymously in London, 1760; subsequent editions were published in London, 1767, 1772 (the first by Buller), 1775, 1781, 1785, 1790, 1793, and 1817; reprinted in Dublin 1768, 1773, and 1791. *See* 1 Sweet & Maxwell, Legal Bibliography of the British Commonwealth of Nations 335 (2d ed. 1955).

[Buller, Nisi Prius *214]

Part V.

Containing One Book.

Of Traverses and Prohibitions.

Introduction.

There still remain two other species of suits which may be tried at *Nisi Prius*, and which therefore fall within the compass of this treatise; and they are traverses of inquisitions of office, and prohibitions.

[Buller, Nisi Prius *215]

Chapter I.

Of Traverses.

[1] There are two sorts of offices; the one vests the estate and possession of the land, *&c.* in the king where he had only right or title before. The other is when the estate is lawfully in the king before, but the particularity of the land does not appear of record, so that it may be put in charge. The first of these is called the office of intituling; the second is called the office of instruction.

1   [in the margin:] 10 Co. 115 [*R. v. Vaughn*, 77 Eng. Rep. ___, ___ (K.B. 1594).].

[2] By the common law, wherever the king was in possession by virtue of the inquisition, the subject was put to his petition of right, unless the right of the party appeared in his inquisition, and then at the common law he might have a *monstrans de droit*; but where the inquisition only intitled the king, and he was obliged to bring a *sci. fa.* against the party to recover possession, there at common law the party might traverse the king's title, for there the king being in nature of a plaintiff, the party in possession might by pleading put him to prove the title upon which he would recover. But where the king was in possession by virtue of the inquisition, there the party that would get that possession from him was in nature of a plaintiff, and therefore had no method to proceed in but by way of petition; for no action could lie against the king, because no writ could issue, as he could not command himself.

2   [in the margin:] 4 Co. 54. [*The Sadlers' Case*, 76 Eng. Rep. 1012 (Ch. 1588).]

But as this suit by petition was of great delay and charge to the party grieved, the statutes of 34 *E.* 3. *c.* 14. 36 *E.* 3. *c.* 13. and 2 & 3 *Ed.* 6. *c.* 8. were made to enable the subject to traverse inquisitions, or otherwise to shew their right.

[3] Thus were traverses and *monstrans de droit* introduced in lieu of petitions. The only difference between the one and the other is, that in a traverse the title set up by the party is

3   [in the margin:] 3 H. 7. 3.

inconsistent with the king's title found by the inquisition, which he therefore must traverse; in a *monstrans de droit* he confessed and avoids the king's title. [1] But in both cases he must make a title in himself, and if he cannot prove his title to be true, although he be able to prove that the king's title is not **[Buller, Nisi Prius *216]** good, it will not serve him. But in traverses at common law the party is in nature of a defendant, and therefore need not set up any title in himself.

1    [in the margin:] Stamford Prerog. c. 20. p. 65. Salk. 448. [*R. v. Mason*, 91 Eng. Rep. 387, 338 (K.B. 1702).]

The method of proceeding at common law by petition was that the king's title being found by inquisition, the party petitioned to have an inquest of office to inquire into his title; if his title was found by such office, then he came into court and traversed the king's title: so that the record began by setting out the first inquisition taken upon the petition, and then went on with *et modo ad hunc diem venit*, and so traversed the king's title. In conformity to these proceedings at common law, the traverse and *monstrans de droit* given by the statute begin by stating the inquisition, and then go on "*et modo ad hunc diem venit, &c.*"

(Note; the only difference between the pleading in a traverse and *monstrans de droit* is, that one is *pro placito dicit*, the other *pro placito et monstratione juris dicit*.)

[2] And from this manner of pleading, some have considered the party traversing as defendant; but when it is considered that this traverse comes in lieu of the petition at common law, and that it does not suspend the vesting in the king by the inquisition, and that the judgment for the party is an *amoveas manum*, and the judgment against him a *nil capiat*,[3] it seems clear he ought to be deemed a plaintiff, and as such is capable of being nonsuited.

2    [in the margin:] Rex v. Roberts, E. 17 G. 2. Stra. 1208 [93 Eng. Rep. 1131, 1132 (K.B. 1744).].
3    [in the margin:] Salk. 448. [*R. v. Mason*, 91 Eng. Rep. 387, 338 (K.B. 1702).] 4 H. 6. 12.

[4] These proceedings are in the petty-bag office, and the record is brought from thence into the king's bench by the chancellor, in order that it may be tried.

4    [in the margin:] Trem. P. C. 652. [*I.e.*, JOHN TREMAINE, PLACITA CORONAE; OR, PLEAS OF THE CROWN IN MATTERS CRIMINAL AND CIVIL (London, 1723).]

3 William Blackstone, Commentaries on the Laws of England (~~Oxford, 1768~~) (<u>Philadelphia, 1772</u>) (<u>London, 1800</u>)

Chapter the fourth.

Of the Public Courts of Common Law and Equity.

… **[3 Blackstone *46]** …

VIII. The high court of chancery is the only remaining, and in matters of civil property by much the most important of any, of the king's superior and original courts of justice. It has it's name of chancery, *cancellaria*, from the judge who presides here, the lord chancellor or *cancellarius*; who, sir Edward Coke tells us, is so termed *a cancellando*, from cancelling the king's letters patents when granted contrary to law, which is the highest point of his jurisdiction [k]. But the office and name of chancellor (however derived) was certainly known to the courts of the Roman emperors; where originally it seems to have signified a chief scribe or secretary, who was afterwards invested with several judicial powers, and a general superintendency over the rest of the officers of the prince. From the Roman empire it passed to the Roman church, ever emulous of imperial state; and hence every bishop has to this day his chancellor, the principal judge of his consistory. And when the modern kingdoms of Europe were established upon the ruins of the empire, almost every state preserved it's chancellor, with different jurisdictions and dignities, according to their different constitutions. But in all of them he seems to have had the supervision of all charter, letters, and [~~*47~~] such other public instruments of the crown, as were authenticated in the most solemn manner; and therefore, when seals came in use, he had always the custody of the king's great feal. So that **[3 Blackstone *47]** the office of chancellor, or lord keeper, (whose authority by statute 5 Eliz. c. 18. is declared to be exactly the same) is with us at this day created by the mere delivery of the king's great seal into his cuftody [l]: whereby he becomes, without writ or patent, an officer of the greatest weight and power of any now subsisting in the kingdom; and superior in point of precedency to every temporal lord [m]. He is privy councellor by his office, and, according to lord chancellor Ellesmere [n], prolocutor of the house of lords by prescription. To him belongs the appointment of all justices of the peace throughout the kingdom. Being formerly usually an ecclesiastic, (for none else were then capable of an office so conversant in writings) and presiding over the royal chapel [o], he became keeper of the king's conscience; visitor, in right of the king, of all hospitals and colleges of the king's foundation; and patron of all the king's livings under the value of ~~20 l.~~ twenty marks [s] *per annum* in the king's books. He is the general guardian of all infants, idiots, and lunatics; and has the general superintendence of all charitable uses in the kingdom. And all this, over and above the vast and extensive jurisdiction which he exercises in his judicial capacity in the court of chancery: wherein, as in the exchequer, there are two distinct tribunals; the one ordinary, being a court of common law; the other extraordinary, being a court of equity.

k  4 Inst. 88.
l  Lamb. *Archeion*. 65. 1 Roll. Abr. 385.
m  Stat. 31. Hen. VIII. c. 10.
n  of the office of lord chancellor. *edit*. 1651.
o  Madox. hist. of exch. 42.
s  <u>38 Edw. III. 3. F.N.B. 35. though Hobart (214.) extends this value to twenty *pounds*.</u>

THE ordinary legal court is much more antient than the court of equity. It's jurisdiction is to hold plea upon a *scire facias* to repeal and cancel the king's letters patent, when made against law, or upon untrue suggestions; and to hold plea of petitions, *monstrans de droit*, traverses of offices, and the like; when the king hath been advised to do any act, or is put in possession of [*48] any lands or goods, in prejudice of a subject's right [p]. On proof of which, as the king can never be supposed intentionally to do any wrong, the law questions not but he will immediately redress [3 Blackstone *48] the injury; and refers that conscientious task to the chancellor, the keeper of his conscience. It also appertains to this court to hold plea of all personal actions, where any officer or minister of the court is a party [q]. It might likewise hold plea (by *scire facias*) of partitions of lands in coparcenary [r], and of dower [s], where any ward of the crown was concerned in interest, so long as the military tenures subsisted: as it now may also do of the tithes of forest land, where granted by the king and claimed by a stranger against the grantee of the crown [t]; and of executions on statutes, or recognizances in nature thereof by the statute 23 Hen. VIII. c. 6. [u] But if any cause comes to issue in this court, that is, if any fact be disputed between the parties, the chancellor cannot try it, having no power to summon a jury; but must deliver the record *propria manu* into the court of king's bench, where it shall be tried by the country, and judgment shall be there given thereon [w]. And, when judgment is given in chancery, upon demurrer or the like, a writ of error, in nature of an appeal, lies out of this ordinary court into the court of king's bench [x]: though so little is usually done on the common law side of the court, that I have met with no traces of any writ of error [y] being actually brought, since the fourteenth year of queen Elizabeth, *A. D.* 1572.

IN this ordinary, or legal, court is also kept the *officina justitiae*: out of which all original writs that pass under the great seal, all commissions of charitable uses, sewers, bankruptcy, [*49] idiocy, lunacy, and the like, do issue; and for which it is always open to the subject, who may there at any time demand and have, *ex debito justitiae*, any writ that his occasions may call for. These writs (relating to the business of the subject) and the returns [3 Blackstone *49] to them are, according to the simplicity of antient times, originally kept in a hamper, *in hanaperio*; and the other (relating to such matters wherein the crown is immediately or mediately concerned) were preserved in a little sack or bag, *in parva baga*; and thence hath arisen the distinction of the *hanaper* office, and *petty bag* office, which both belong to the common law court in chancery.

---

...

p   4 Rep. 54. [*The Sadlers' Case*, 76 Eng. Rep. 1012 (Ch. 1588).]
q   4 Inst. 80.
r   Co. Litt. 171. F. N. B. 62.
s   Bro. *Abr. tit. dower.* 66. Moor. 565. [*Agar v. Candish*, 72 Eng. Rep. 761, 762 (K.B. 1594).]
t   Bro. *Abr. t. dismes.* 10.
u   2 Roll. Abr. 469.
w   Cro. Jac. 12. [*Molineux v. Lacon*, 79 Eng. Rep. 11, 11 (K.B. 1603).] Latch 112. [*Blackston v. Martin*, 82 Eng. Rep. 300, 300 (K.B. 1626).]
x   Yearbook, 18 *Edw. III.* 25. 17 *Ass.* 24. 29 *Ass.* 47. Dyer. 315. [*Anonymous*, 73 Eng. Rep. 714 (K.B. 1572).] 1 Roll. Rep. 287. [*Bishop of Bristol v. Procter*, 81 Eng. Rep. 490, 490 (K.B. 1615).] 4 Inst. 80.
y   The opinion of lord keeper North in 1682 (1 Vern. 131. [*R. v. Cary*, 23 Eng. Rep. 364, 365 (Ch. 1682).] 1 Equ. Cas. abr. 129.) that no such writ of error lay, and that an injunction might be issued against it, seems not to have been well considered.

**[3 Blackstone \*254]**

CHAPTER THE SEVENTEENTH.

OF INJURIES PROCEEDING FROM OR AFFECTING, THE CROWN.

HAVING in the nine preceding chapters considered the injuries, or private wrongs, that may be offered by one subject to another, all of which are redressed by the command and authority of the king, signified by his original writs returnable in his several courts of justice, which thence derive a jurisdiction of examining and determining the complaint; I proceed now to inquire of the mode of redressing those injuries to which the crown itself is a party: which injuries are either where the crown is the aggressor, and therefore cannot without a solecism admit of the same kind of remedy [a]; or else is the sufferer, and which then are usually remedied by peculiar forms of process, appropriated to the royal prerogative. In treating therefore of these, we will consider first, the manner of redressing those wrongs or injuries which a subject may suffer from the crown, and then of redressing those which the crown may receive from a subject.

I. THAT the king can do no wrong, is a necessary and fundamental principle of the English constitution; meaning only, as has formerly been observed [b], that, in the first place, whatever may be amiss in the conduct of public affairs is not chargeable [\*255] personally on the king; nor is he, but his ministers, accountable for it to the people; and, secondly, that the prerogative of the crown extends not to do any injury; for, being created for the benefit of the people, it cannot be exerted to their prejudice [c]. Whenever therefore it happens, that, by misinformation or inadvertence, the crown hath been induced to invade the private rights of any of it's subjects, though no action will lie against the sovereign [d], (for who shall command the king [e]?) yet the law hath furnished the subject with a decent and respectful mode of removing that invasion, by informing the king of the true state of the matter in dispute: and, as it presumes that to *know of* an injury and to *redress* it are inseparable in the royal breast, it then issues as of course, in the king's own name, his orders to his judges to do justice to the party aggrieved.

THE distance between the sovereign and his subjects is such that it rarely can happen, that any *personal* injury can immediately and directly proceed from the prince to any private man: and, as it can so seldom happen, the law in decency supposes that it never will or can happen at all; because it feels itself incapable of furnishing any adequate remedy, without infringing the dignity and destroying the sovereignty of the royal person, by setting up some superior power with authority to call him to account. The inconveniency therefore of a mischief that is barely possible, is (as Mr. Locke has observed [f]) well recompensed by the peace of the public and security of the government, in the person of the chief magistrate being set out of reach of coercion. But injuries to the rights of *property* can scarcely be committed by the crown without the intervention of it's officers; for whom the law in

---

a   Bro. *Abr. t. petition.* 12. *t. prerogative.* 2.
b   Book I. ch. 7. pag. 243—246.
c   Plow. 487. 587. [*Nichols v. Nichols*, 75 Eng. Rep. 717, 726 (C.P. 1575).]
d   Jenkins. 78. [*Anonymous*, 145 Eng. Rep. 56 (1401).]
e   Finch. L. 83. [*I.e.*, HENRY FINCH, LAW, OR A DISCOURSE THEREOF (1627). *See supra.*]
f   on Gov. p. 2. §. 205.

matters of right entertains no respect or delicacy, but furnishes various methods of detecting the errors or misconduct of those agents, by whom the king has been deceived, and induced to do a temporary injustice.

### [3 Blackstone *256]

THE common law methods of obtaining possession or restitution from the crown, of either real or personal property, are, 1. By *petition de droit*, or petition of right, which is faid to owe it's original to king Edward the first [g]. 2. By *monstrans de droit*, manifestation or plea of right: both of which may be preferred or prosecuted either in the chancery or exchequer [h] . The former is of use, where the king is in full possession of the hereditaments or chattels, and the party suggests such a right as controverts the title of the crown, grounded on facts disclosed in the petition itself; in which case he must be careful to state truly the whole title of the crown, otherwise the petition shall abate [i]: and then, upon this answer being endorsed or underwritten by the king, *soit droit fait al partie* (let right be done to the party [j]) a commission shall issue to inquire of the truth of this suggestion [k]: after the return of which, the king's attorney is at liberty to plead in bar; and the merits shall be determined upon issue or demurrer, as in suits between subject and subject. Thus, if a disseisor of lands, or others as are holden of the crown, dies seised without any heir, whereby the king is *prima facie* intitled to the lands, and the possession is cast on him either by inquest of office, or by act of law without any office found; now the disseisee shall have remedy by petition of right, suggesting the title of the crown, and his own superior right before the disseisin made [l]. But where the right of the party, as well as the right of the crown, appears upon record, there the party shall have *monstrans de droit*, which is putting in a claim of right grounded on facts already acknowleged and established, and praying the judgment of the court, whether upon those facts the king or the subject hath the right. As if, in the case before supposed, the whole special matter is found by an inquest of office, (as well the disseisin, as the dying without any heir) the party grieved shall have *monstrans de droit* at the common law [m]. But as this seldom happens, and [3 Blackstone *257] the remedy by *petition* was extremely tedious and expensive, that by *monstrans* was much enlarged and rendered almost universal by several statutes, particularly 36 Edw. III. c. 13. and 2 & 3 Edw. VI. c. 8. which also allow inquisitions of office to be traversed or denied, wherever the right of a subject is concerned, except in a very few cases [n]. These proceedings are had in the petty bag office in the court of chancery: and, if upon either of them the right be determined against the crown, the judgment is, *quod manus domini regii amoveantur et possessio restituatur petenti, salvo jure domini regis* [o]; which last clause is always added to judgments against the king [p], to whom no *laches* is ever imputed, and whose right is (till

g  Bro. Abr. t. prerog. 2. Fitzh. Abr. t. error. 8.

h  Skin. 609. [*The Bankers Case*, 90 Eng. Rep. 270, 273 (Ex. Ch. 1695).]

i  Finch. L. 256.

j  State Tr. vii. 134. [*Ex parte Darnel* (K.B. 1627) (per Robert Heath, A.G.), 3 STATE TRIALS 1, 45 (Howell, ed., 1816).]

k  Skin. 608. [*The Bankers Case*, 90 Eng. Rep. 270, 273 (Ex. Ch. 1695).] Rast. Entr. 461.

l  Bro. Abr. t. petition. 20. 4 Rep. 58. [*The Sadlers' Case*, 76 Eng. Rep. 1012, 1020 (Ch. 1588).]

m  4 Rep. 55. [*The Sadlers' Case*, 76 Eng. Rep. 1012, 1014 (Ch. 1588).]

n  Skin. 608. [*The Bankers Case*, 90 Eng. Rep. 270, 273 (Ex. Ch. 1695).]

o  2 Inst. 695. Rast. Entr. 463.

p  Finch. L. 460.

some late statutes <u>q-1772) was</u> never defeated by any limitation or length of time. And by such judgment the crown is instantly out of possession q; so that there needs not the indecent interposition of his own officers to transfer the seisin from the king to the party aggrieved.

II. THE methods of redressing such injuries as the crown may receive from a subject, are,

1. BY such usual common law actions, as are consistent with the royal prerogative and dignity. As therefore the king, by reason of his legal ubiquity, cannot be disseised or dispossessed of any real property which is once vested in him, he can maintain no action which supposes a dispossession of the plaintiff; such as an assise or an ejectment r: but he may bring a *quare impedit* s, which always supposes the complainant to be seised or possessed of the advowson: and he may prosecute this writ, as well as every other, as well in the king's bench <u>u-1800</u> as the common pleas, or in whatever court he pleases. So too he may bring an action of trespass for taking away his goods; but <u>such actions are</u> not <u>usual (though in strictness maintainable)</u> for breaking his close, or any injury done upon his soil or possession t . It would be equally tedious and difficult, to run through every minute **[3 Blackstone \*258]** distinction that might be gleaned from our antient books with regard to this matter; nor is it in any degree necessary, as much easier and more effectual remedies are usually obtained by such prerogative modes of process, as are peculiarly confined to the crown.

2. SUCH is that of *inquisition* or *inquest of office:* which is an enquiry made by the king's officer, his sheriff, coroner, or escheator, *virtute officii,* or by writ to them sent for that purpose, or by commissioners specially appointed, concerning any matter that intitles the king to the possession of lands or tenements, goods or chattels u. This is done by a jury of no determinate number; being either twelve, or less, or more. As, to enquire, whether the king's tenant for life died seised, whereby the reversion accrues to the king: whether A, who held immediately of the crown, died without heirs; in which case the lands belong to the king by escheat: whether B be attainted of treason; whereby his estate is forfeited to the crown: whether C, who has purchased lands, be an alien; which is another cause of forfeiture: whether D be an idiot *a nativitate*; and therefore, together with his lands, appertains to the custody of the king: and other questions of like import, concerning both the circumstances of the tenant, and the value or identity of the lands. These inquests of office were more frequently in practice than at present, during the continuance of the military tenures amongst us: when, upon the death of every one of the king's tenants, an inquest of office was held, called an *inquisitio post mortem*, to enquire of what lands he died seised, who was his heir, and of what age, in order to intitle the king to his marriage, wardship, relief, *primer-seisin*, or other advantages, as the circumstances of the case might turn out. To superintend and regulate these enquiries the court of wards and liveries was

---

q-1772    <u>21 Jac. I. c. 2. 9 Geo. III. c. 16.</u>
q    Ibid. 459.
r    Bro. *Abr. t. prerogative*. 89.
s    F.N.B. 32.
u-1800    *Dyversite de courtes. c. bank le roy.*
t    Bro. *Abr. t. prerog.* 130. F.N.B. 90. <u>Year book. 4 Hen. IV. 4.</u>
u    Finch. L. 323, 4, 5.

instituted by statute 32 Hen. VIII. c. 46. which was abolished at the restoration of king Charles the second, together with the oppressive tenures upon which it was founded.

### [3 Blackstone *259]

WITH regard to other matters, the inquests of office still remain in force, and are taken upon proper occasions; being extended not only to lands, but also to goods and chattels personal, as in the case of wreck, treasure-trove, and the like; and especially as to forfeitures for offences. For every jury which tries a man for treason or felony, every coroner's inquest that sits upon a *felo de se*, or one killed by chancemedley, is, not only, with regard to chattels, but also as to real interests, in all respects an inquest of office: and if they find the treason or felony, or even the flight of the party accused (though innocent) the king is thereupon, by virtue of this *office found*, intitled to have his forfeitures; and also, in the case of chancemedley, he or his grantees are entitled to such things, by way of deodand, as have moved to the death of the party.

THESE inquests of office were devised by law, as an authentic means to give the king his right by solemn matter of record; without which he in general can neither take, nor part from, any thing [w]. For it is a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon or seise any man's possessions upon bare surmises without the intervention of a jury [x]. It is however particularly enacted by the statute 33 Hen. VIII. c. 20. that, in case of attainder for high treason, the king shall have the forfeiture instantly, without any inquisition of office. And, as the king hath no title at all to any property of this sort before office found, therefore by the statute 18 Hen. VI. c. 6. it was enacted, that all letters patent or grants of lands and tenements before office found, or returned into the exchequer, shall be void. And, by the bill of rights at the revolution, 1 W. & M. st. 2. c. 2, it is declared, that all grants and promises of fines and forfeitures of particular persons before conviction (which is here the inquest of office) are illegal and void; which indeed was the law of the land in the reign of Edward the third [y].

### [3 Blackstone *260]

WITH regard to real property, if an office be found for the king, it puts him in immediate possession, without the trouble of a formal entry, provided a subject in the like case would have had a right to enter; and the king shall receive all the mesne or intermediate profits from the time that his title accrued [z]. As on the other hand, by the *articuli super cartas* [a], if the king's escheator or sheriff seise lands into the ~~king's~~ kings hand without cause, upon taking them out of the king's hand again, the party shall have the mesne profits restored to him.

IN order to avoid the possession of the crown, acquired by the finding of such office, the subject may not only have his *petition of right*, which discloses new facts not found by the office, and his *monstrans de droit*, which relies on the facts as found; but also he may (for the most part) *traverse* or deny the matter of fact itself, and put it in a course of trial by the

---

w  Finch. L. 82.
x  Gilb. hist. exch. 132. Hob. 347. [*Sheffeild v. Ratcliffe*, 80 Eng. Rep. 475, 487 (Ex. Ch. 1625).]
y  2 Inst. 48.
z  Finch. L. 325, 326.
a  28 Edw. I. st. 3. c. 19.

common law process of the court of chancery: yet still, in some special cases, he hath no remedy left but a mere petition of right [b]. These *traverses*, as well as the *monstrans de droit*, were greatly enlarged and regulated for the benefit of the subject, by the statutes before-mentioned, and others [c]. And in the traverses thus given by statute, which came in the place of the old petition of right, the party traversing is considered as the plaintiff [d]; and must therefore make out his own title, as well as impeach that of the crown, and then shall have judgment *quod manus domini regis amoveantur, &c.*

3. Where the crown hath unadvisedly granted any thing by letters patent, which ought not to be granted [e], or where the patentee hath done an act that amounts to a forfeiture of the [*261] grant [f], the remedy to repeal the patent is by writ of *scire facias* in chancery [g]. This may be brought either on the part of the king, in order to resume the thing granted; or, if the grant be injurious to a subject, the king is bound of right to permit him (upon his petition) to use his royal name for repealing the patent in a *scire facias* [h]. And so also, if upon office untruly found for the king, he grants the land over to another, he who is grieved thereby, and traverses the office itself, is intitled before issue joined to a *scire facias* against the patentee, in order to avoid the grant [i].

4. An *information* on behalf of the crown, filed in the exchequer by the king's attorney general, is a method of suit for recovering money or other chattels, or for obtaining satisfaction in damages for any personal wrong [k] committed in the lands or other possessions of the crown. It differs from an information filed in the king's bench, of which we shall treat in the next book; in that *this* is instituted to redress a private wrong, by which the property of the crown is affected, *that* is calculated to punish some public wrong, or heinous misdemesnor in the defendant. It is grounded on no writ under seal, but merely on the intimation of the king's officer the attorney-general, who "gives the court to understand and be informed of" the matter in question; upon which the party is put to answer, and trial is had, as in suits between subject and subject. The most usual informations are those of *intrusion* and *debt*: *intrusion* for any trespass committed on the lands of the crown [l], as by entering thereupon without title, holding over after a lease is determined, taking the profits, cutting down timber, or the like; and *debt*, upon any contract for monies due to the king, or for any forfeiture due to the crown upon the breach of a penal statute. This is most commonly used to recover forfeitures occasioned by transgressing those laws, which are enacted for the establishment and [3 Blackstone *262] support of the revenue: others, which regard mere matters of police and public convenience, being usually left to be inforced by common informers in the *qui tam* informations or actions of which we have formerly

b  Finch. L. 324.

c  Stat. 34 Edw. III. c. 13. 36 Edw. III. c. 13. 2 & 3 Edw. VI. c. 8.

d  Law of *nisi prius*. 201, 202. [*I.e.*, Introduction to the Law relative to Trials at Nisi Prius (eds. 1760, 1767, 1768, etc.). *See supra.*]

e  See book II. ch. 21.

f  Dyer. 198. [*R. v. Eston*, 73 Eng. Rep. 437 (Ch. 1534).]

g  3 Lev. 220. [*R. v. Butler*, 83 Eng. Rep. 659 (H.L. 1685).] 4 Inst. 88.

h  2 Ventr. 344. [*R. v. Butler*, 86 Eng. Rep. 477 (Ch. 1679).]

i  Bro. *Abr. t. scire facias.* 69. 185.

k  Moor. 375. [*R. v. Perrot*, 72 Eng. Rep. 634, 639 (Exch. 1593) (per Francis Moore, Sgt.).]

l  Cro. Jac. 212. [*Nannge v. Rowland ap Ellis*, 79 Eng. Rep. 184, 184 (K.B. 1608).] 1 Leon. 48 [*i.e.*, 38]. [*R. v. Lord Vaux*, 74 Eng. Rep. 35, 36 (Exch. 1585).] Savil. 49. [*Anonymous*, 123 Eng. Rep. 1005 (Exch. 1583).]

spoken [m]. But after the attorney general has informed upon the breach of a penal law, no other information can be received [n]. There is also an information *in rem*, when any goods are supposed to become the property of the crown, and no man appears to claim them, or to dispute the title of the king. As antiently in the case of treasure-trove, wrecks, waifs, and estrays, seised by the king's officer for his use. Upon such seisure an information was usually filed in the king's exchequer, and thereupon a proclamation was made for the owner (if any) to come in a claim the effects; and at the same time there issued a commission of *appraisement* to value the goods in the officer's hands: after the return of which, and a second proclamation had, if no claimant appeared, the goods were supposed derelict, and condemned to the use of the crown [o]. And when, in later times, forfeitures of the goods themselves, as well as personal penalties on the parties, were inflicted by act of parliament for transgressions against the laws of the customs and excise, the same process was adopted in order to secure such forfeited goods for the public use, though the offender himself had escaped the reach of justice. ...

m   See pag. 160.
n   Hard. 201. [*Anonymous*, 145 Eng. Rep. 452 (Exch. 1661).]
o   Gilb. hist. of exch. ch. 13.

**[3 Blackstone *426]**

CHAPTER THE THE TWENTY SEVENTH.

OF PROCEEDINGS IN THE COURTS OF EQUITY.

... **[3 Blackstone *428]** ...

   On the other hand, the jurisdiction of the court of chancery doth not extend to some causes, wherein relief may be had in the exchequer. No information can be brought, in chancery, for such mistaken charities, as are given to the king by the statutes for suppressing superstitious uses. Nor can chancery give any relief against the king, or direct any act to be done by him, or make any decree disposing of or affecting his property; not even in cases where he is a royal trustee [i]. Such causes must be determined in the court of exchequer, as a court of revenue; which alone has power over the king's treasure, and the officers em-**[3 Blackstone *429]**ployed in it's management: unless where it properly belongs to the duchy court of Lancaster, which hath also a similar jurisdiction as a court of revenue; and like the other, consists of both a court of law and a court of equity.

i   Huggins *v.* Yorkbuildings Company. *Canc.* 24 Oct. 1740. Reeve *v.* Attorney-general. *Canc.* 27 Nov. 1741. Lightboun *v.* Attorney-general. *Canc.* 2 May, 1743.

Francis S. Sullivan, An Historical Treatise on the Feudal Law, and the Constitution and Laws of England (1772)

[Sullivan *331]

In treating of these courts, I began with the *King's Bench*, which, as long as the office of *justiciarius Angliæ* subsisted, was the superior; but since Edward the First discontinued that office, on account of its too great power, and the business of that officer hath been shared between several judges, the rank of this court hath declined, and the *Chancery* hath obtained the first place. To this court, then, I shall now proceed. And as in it there are, at present, and have been for some ages, two distinct courts, one *ordinary*, proceeding by the common law, and the other *extraordinary*, according to the maxims of equity, where common law could give no relief; I shall, for the present, confine myself to the former, and defer treating of the latter, until I come to that period when the *Equity jurisdiction* arose.

[Sullivan *332]

In the antient times, before the division of the courts, the chancellor was a very considerable officer of the *curia regis*. It was his business to write and seal with the great *seal* the *diplomata*, or *chartæ regis*, what we now call *letters patents*; to issue all writs, either for founding the jurisdiction of the *curia regis*, and the bringing causes into that court, that by the antient law belonged to the courts in the country; or those to the nobles, to summon them to attend the *commune concilium*, or parliament. Afterwards, when the House of Commons was formed, he issued writs to the proper places, for the election of the members thereof. Hence, when the courts were divided, the making out letters patents, the keeping the inrolments thereof, and issuing of *original writs*, as they are called, that is, those that found the jurisdiction of courts, and other writs of like nature, continued to belong to him; and, as these records remained with him, there arose to him a jurisdiction concerning them; except as to such writs as were intended to found the jurisdiction of another court, which, though issued from Chancery, were returnable into the proper court, and the cause determined there.

The first branch of the jurisdiction of this court, then, was the repeal of letters patents, that had issued improvidently, to the detriment of either the king or the subject; and this properly fell to the lot of the chancellor, as he made out the patents, and kept the enrolments of them. The method of repealing those was by a writ called *scire facias* notified to the party claiming under the patent, and calling him to shew cause why it should not be revoked. This *scire facias* issued in three cases: the first, as the suit of a subject; where two patents were granted to two persons of the same thing, the first patentee brought a *scire facias* against the second, to repeal his grant; the other two were at the suit of the king, where the king was deceived, either by false suggestions of merit, or as to the value of the thing granted; or, in the second place, if the king had, by his patent, granted what by law he could not have granted. Here if the case was clear in law, and there [Sullivan *333] was no controverted matter of fact necessary to be settled, to ascertain the right, the chancellor was judge; and if his judgment was against the patent, it was his duty to *cancel* the inrolment thereof; from which part of his office he had his name. ==I say if the case was clear in law, and there was no controverted matter of fact; for, if this latter was the case, he could not try it, he being antiently but an officer of the *curia regis*, and not a judge; and therefore==

60

==unqualified to summon a jury.== The rule continued the same after the separation of the courts, and his becoming a judge; principally, as I conceive, for the preservation of the common law, and that birth-right of Englishmen, the trial by jury. For, as the chancellor was almost always, in those days, an ecclesiastic, and consequently supposed more attached to the *civil* and *canon law*, there might be danger, if he was suffered to try matter of fact himself, he might introduce a new method of trial. When, therefore, the cause was heard upon a *demurrer*, that is, the facts admitted of both sides, and only the law in dispute, he gave judgment; ==but if they came to issue on a fact, he must carry the record over to the King's Bench, who summoned the jury, and gave judgment on the verdict==.

ANOTHER branch of his jurisdiction was with relation to the inquisitions of office. There are many officers whose duty it is to take care of the profits and revenues of the king, and to that purpose are sworn in the Exchequer; such as *escheators*, *sheriffs*, and others, whose duty it is to make enquiry what the king is entitled to in the respective limits, whether lands or chattles, or by what title. For this purpose they are to summon juries, and to return the verdicts found to the court of the revenue of the Exchequer, in order that that court may take care of the king's rights. These were called *inquisitions*, or *enquiries*, *of office*, as proceeding from the duty of an officer that made them. But these officers being negligent in the performance of this their duty, it became sometimes necessary, and afterwards customary to quicken them, by issuing writs for this purpose; and these writs issued out of Chancery, the *Officina Brevium*; and then, that it might be seen they were properly obeyed, the return of the inquisition was made into the court that **[Sullivan *334]** issued the writ, and thus, the Chancery gained a jurisdiction in this point, and became an assistant to the Exchequer in the matters of the king's revenue; not indeed in the administration thereof, but in bringing it into the king's possession.

IT is a maxim of English law, that nothing can pass from the king to a subject but by *matter of record*, which maxim was not only advantageous to the royal estate, as preventive of persons getting grants by surprize, but also advantageous to the subject in the firmness of his title, when once he had obtained it. And, on the contrary, the regular and equal way of restoring possessions to the crown was by record also, that is, by inquisitions finding the king's title returned, as I have mentioned. But as the verdicts taken in these inquisitions may be erroneous, and detrimental to another person, by finding what was really his property, to have been the property of another, and to have accrued to the king by forfeiture or escheat; and as, regularly, by another maxim of law, there is no averring against or contesting a record, it was necessary that the bare return of inquisition into Chancery should not be final and conclusive, but that time should be given to any that thought himself affected to claim his right. Hence a month's time is given by statute, after the return of the inquisition, in which any person may come in and *traverse the office*, that is, contest the validity of it. And here the chancellor is judge, in the same manner as in the repeal of letters patents, that is, if the subject of the controversy depends merely upon matter of law; ==but if the parties come to an issue on matter of fact, he cannot try it, for the reason above given, but it must go to the King's Bench==.

ANOTHER branch of the judicial business is the hearing of petitions to the king for justice in his own causes. No man, by the feudal of our law, can bring an action against the king.

For the charging him with wrong doing would be a breach of fealty. The king cannot, by our law, do wrong; but yet, from the multiplicity of his occupations, or from his being **[Sullivan *335]** misinformed, the subject may sometimes suffer wrong from him. The remedy thereof, in this case, is by humble petition to the king, that he would enquire into the cause, and do justice to the party, which, though conceived in an humbler strain, is as effectual as an action, and must be tried in this court, the proper channel to convey his majesty's graces, and the king, by his chancellor, dispenses justice to the party.

ANOTHER branch of the judicial business of this court was the proceeding in certain cases against persons privileged, that is, officers of the court, who being supposed to be constantly attendant, were to be sued here, as the officers of other courts, were in their respective courts.

LASTLY, this court had jurisdiction with respect to proceeding upon *recognizances*, or acknowledgments of obligations taken in this court, which being here recorded, and not to be removed, were properly here triable.

THERE are some other causes, proper for the jurisdiction of Chancery, which woud carry me too far at present. ...

## STATUTES

36 Edw. III, ch. 13 (1362), 1 THE STATUTES AT LARGE 310 (Owen Ruffhead, ed., 1763):

Item pur la grevouse pleinte qe le Roi ad oie de son people de ses eschetours & lour mal port il voet & ad ordeigne del assent avantdit qe terres seisiez en sa mein pur cause de garde soient sauvement gardez sanz wast ou destruction et qe leschetour eit nul fee de bois venison ne pesson nautre rien mes respigne au Roi des issues & profitz annuels provenantz des ditz terres sanz wast ou destruction faire et sil face autrement & de ce soit atteint soit reint a la volente le Roi rende al heir les damages au treble a sa propre sute sibien deins age come de pleine age & eient les amys tant come il est deinz age la sute pur lui respoignantz au dit heir de ce qe serra issint recovery. Auxint des autres terres seisiez en la mein le Roi par enqueste doffice prise devant les eschetours tiegne mesme ceste ordeignance & penance devers les eschetours. Et sil eit nul homme qe mette chalenge ou claym as terres issing seisiez qe leschetour mande lenqueste en la Chancellerie deinz le mois apres le terres issint seisies et qe brief lui soit livere de certifier la cause de sa seisine en Chancellerie & illoeqes soit oie sanz delay de traverser loffice ou autrement monstrer son droit et dilloeqes mande devant le Roi affaire finale discussion sanz attendre autre mandement. Et en cas qe ascun veigne devant le Canceller et monstre son droit pur quele demonstrance par bones evidences de son auncien droit et bon title qe le Chancellor par sa bone discretion et avis de conseil si lui semble qil bsoigne avoir conseil qil lesse et baille les terres issint en debat au tenant rendant ent au Roi la value si au Roi appartient en manere come il et les autres Chancellers devant lui ont fait devant ces heures de lour bone discretion issint qil face seurete qil ne fra wast ne destruction tanqe il soit ajugge. Et qe les ditz eschetours preignent tieles enquestes en les bones villes et par bones gentz et ce overtement et par endentures affaires entre les ditz eschetours et ces de les enquestes come autrefoitz fuist ordeigne par estatut. Et si nul escheatour face au contraire de ceste ordeignance susdite eit la prisone de deux anns et outre soit reint a la volente le Roi.

Item, For grievous Complaint that the King hath heard by his People of his Escheators, and of their evil Behaviour; he will and hath ordained of the Assent aforesaid, That Lands seised into his Hands because of Ward, shall be safely kept without Waste or Destruction; and that the Escheator have no Fee of Wood, Fish, nor of Venison, nor other Thing, but shall answer to the King of the Issues and Profits yearly coming of the said Lands, without doing Waste or Destruction; and if he do otherwise, and thereof be attainted, he shall be ransomed at the King's Will, and yield to the Heir the treble Damages at his own Suit, as well within Age, as of full Age; and his Friends, as long as he is within Age, shall have the Suit for him, answering to the said Heir of that which shall be so recovered. Also of other Lands seised into the King's Hands by Inquest of Office taken before the Escheators, this Ordinance and Penance shall hold Place against the Escheators. And if there be any Man that will make Claim or Challenge to the Lands so seised, that the Eschator send the Inquest into the Chancery within the Month after the Lands so seised, and that a Writ be delivered to him to certify the Cause of his Seisin into the Chancery, and there he shall be heard without Delay to traverse the Office, or otherwise to shew his Right, and from thence sent before the King to make a final Discussion, without attending other Commandments. And in case that any come before the Chancellor, and shew his Right, by which shewing good Evidences of his antient Right and good Title, the Chancellor by his good Discretion and Advice of Counsel (if it seem expedient to him to have Counsel) shall let and demise the Lands so in Debate to the Tenant, yielding thereof to the King the Value, if it pertain to the King, in the Manner as he and the other Chancellors before him have done in Times past of their good Discretion, so that he find Surety that he shall do no Waste nor Destruction, till it be judged. And that the said Escheators take such Inquests in the good Towns and of good People, and that openly and by Indentures to be made between the said Escheators and them of the Inquests, as another Time was ordained by a Statute. And if any Escheator do to the contrary of this said Ordinance, he shall have two Years Imprisonment, and moreover he shall be ransomed at the King's Will.

27 Hen. VIII. ch. 27, sec. 10 (1536), COLLECTION OF ALL THE STATUTES NOW IN USE (Ferdinando Pulton, ed., 1670)

...

First The King our said Sovereign Lord, by authority aforesaid, ordaineth, maketh establisheth, and erecteth a certain Court, commonly to be called the Court of the Augmentations of the Revenues of the Kings Crown, which Court by the authority aforesaid continually shall be a Court of Record, and shall have one great seal, and one privy seal, to be engraved, and made after such form, fashion, and manner, as shall be appointed by the Kings Highness, and shall remain and be ordered as hereafter shall be declared.

And be it enacted by authority aforesaid, That there shall be one certain person to be named and assigned by the Kings Highness, which shall be Chancellor of the said Court, and shall be chief and principal Officer of the same Court, and shall be called Chancellor of the Court of the Augmentations of the Revenues of the Kings Crown, and shall have the keeping of the said great seal and privy seal to be assigned for the said Court.

...

Also the said Chancellor shall have power and authority to take recognisances of every particular Receiver, which shall be  assigned for the said Court, and of his sureties, for the sure paiment of his receits: and also to take recognisances in the Kings name of every Fermer, Bailiff, Reve, or other accomptants, for the true paiment of the receits, and of every person and persons which shall be indebted to the Kings Highness for any arrerages of his receit, ferm, or charge, and for any other cause, for and concerning any of the premisses, and that all such recognisances of what sum soever they be, shall be as good and effectual in the Law, to all intents and purposes, as recognisances taken in the Kings Chancery, or elsewhere before any Judge of Record.

Also it is ordained by authority aforesaid, That the Chancellor of the same Court for the time being, shall have full power and authority to award writs of Scire facias under the Great Seal of his Office, upon every such recognisance in the said Court to be taken, if case so require, and to hold plee upon the same, and to award execution to all intents and purposes, as is used and accustomed to be done in the Kings High Court of Chancery. Provided always, That if any issue or trial, triable by the verdict of twelve men, fortune to arise in the pleading of the same, that then in every such case, the said Chancellor shall and may deliver the record thereof to the Justices of the Kings Bench for the time being, and thereupon the said Court of the Kings Bench to do every thing for the trial of the same issue, as they ought to do in case the said issue or trial had been sent or delivered to them out of the Kings Court of Chancery. And after the trial thereof in due form had, and the judgment thereupon given, the Justices of the Kings Bench to have power to award execution accordingly, and the money thereof coming, to be delivered by the same Justices or Clerk of the papers of the same Court, to the Treasurer of the said Court of Augmentations to the Kings use.

18 Eliz. I, ch. 18 (1576), 2 THE STATUTES AT LARGE 621 (Owen Ruffhead, ed., 1770):

An Act for Trial of *Nisi prius* in the County of *Middlesex*.

'Whereas heretofore all Issues joined in any of the Courts of Record at *Westminster*, triable in the County of *Middlesex*, have been usually tried at the Bars in the said Courts in *Westminster:* (2) And whereas a great Number of Actions have of late Years been brought in the said County of *Middlesex*, for Speediness of Trial, and that for small Causes, (3) by Reason whereof, the Judges of the same Courts have not only been letted and hindred in their Proceedings in Matters of great Weight depending before them by Demurrer or otherwise, to the great Delay of Justice, and Occasion of great Expences and Charges of a Number of the Queen's Majesty's most loving Subjects, but also to the great Trouble and Charge of the Freeholders of the said County, who are compelled to give daily Attendance at the several Bars of the same several Courts for the Trial of the said Issues:' (4) For Reformation whereof, Be it enacted ... That from henceforth the Chief Justice of *England* for the Time being, upon Issues joined or to be joined in the Court called the King's Bench, or in the Court of Chancery, the Chief Justice of the Common Pleas for the Time being, upon Issues joined or to be joined in the Court of Common Pleas, and the Chief Baron of the Exchequer for the Time being, upon Issues joined or to be joined in the Court of the Exchequer, (5) or in the Absence or Default of any of them, two other Judges or Barons of the same several Courts where it shall happen either of the same Chief Justices, or the Chief Baron, for the Time being, to be Absent, (6) shall or may at their Discretions, within the said Hall called *Westminster-Hall* in *Westminster*, or in the Place where the Court of Exchequer is commonly kept in the said County of *Middlesex*, as Justices of *Nisi prius* for the said County of *Middlesex*, within the Term-time, or within four Days next after the End of every or any Term severally, try all Manner of Issues joined or to be joined in any of the said several Courts, which by the ordinary Course of the Laws of this Realm ought to be tried in any of the said Courts by an Inquest of the said County of *Middlesex:* (7) And that Commissions and Writs of *Nisi prius* shall be awarded in such Cases, and in such Form, as they are or have been used in any other Shire of this Realm: (8) And that it shall be lawful for any Person or Persons henceforth, upon reasonable Warning given to the adverse Party or his or their Attorney, as hath been accustomed in such like Cases, to take or sue forth Writs and Records of *Nisi Prius*, for the Trial of the said Issues in the said County of *Middlesex*, as they may do upon any Issue joined, triable in any other County, (9) and thereupon take the Jury in such Manner and Form, and with awarding of *Tales de Circumstantibus*, and awarding the Nonsuit, as is used for the Trial of Issues joined, or Nonsuits to be awarded, in the said Courts or any of them, triable within the City of *London*, or within any other County of this Realm of *England:* (10) And that the Sheriffs of the said County of *Middlesex* for the Time being, shall make Return of all Writs of *Nisi prius* which shall be delivered to them, or to their or to any of their sufficient Deputy for the Time being, before the said Judges, Baron or Barons and every of them, and shall give their Attendance upon the said Justices, Baron and Barons, as well for the Returning of such *Tales* as shall be prayed *de Circumstantibus*, for the Trying of the said Issues, as for the Doing and Executing of all other Thing and Things to the Office of Sheriff in such Case belonging and appertaining: (11) And that all Persons to be impanelled in such Juries, and the Parties to the same Issues and Suits, and the Witnesses for the same, shall be

charged and bound in such and the like Sort, and upon like Pains and Penalties for their not Appearance and Attendance, or for their or any of their Misdemeanour or Default before the said Justices of *Nisi prius*, as they should have been, if the same Issue had been tried in the Court from whence the *Nisi prius* thereof was awarded: (12) All which several Trials so to be had before the said several Justices, Baron or Barons, shall by Authority of this present Parliament stand and be as good and available in Law, as if the same had been tried in Term-time, at the Bar in the Court where such Issue was joined or triable; any Law, Usage or Custom heretofore made, used or accustomed to the contrary hereof in any wise notwithstanding.

**CASES**

| | |
|---|---|
| Y.B. Mich. 24 Ed. III, f. 64-65, pl. 69 (C.P. 1350) | Seipp's Abridgment, No. 1350.182[1] |

Piers of W. sued a Scire facias against J. Darcy, and demanded execution of a fine by which J. of M. acknowledged the manor of M. to be the right of D., and retook estate for the term of his life, the remainder to P.'s father and his mother and to the heirs of their bodies. J. D. previously prayed aid of the king, and had it. Now came a writ of Procedendo. A serjeant said for the king and J. D. that the plaintiff could not have execution, because he said that Hugh le Despenser was seised of this manor as of fee, and forfeited against the king, as a result of which the king seized etc., and he said that J. of H. (perhaps should be J. of M.), who was party to the fine, sued to the king by a petition in Parliament, making the suggestion that he had been disseised of the same manor by the said P. (probably should be H.), and prayed that the king do him right (reason) and law, which petition the king sent into the Chancery, and commanded them to do right and reason thereof. Therefore the Chancery sent by commission to Shareshull (then Sjt) and others, (Latin begins) in the first year of the present king (Latin ends), to inquire of his right. It was found by office that he was disseised thereof by the said H. Upon this the king sent to the Barons of the Exchequer to certify to him if they found in the Treasury, among the muniments of the said H., anything touching the said manor. They certified in the Chancery that they had not found anything. Therefore the king commanded the Escheator to remove his hand. The king perceiving afterwards that in his petition he did not pray restitution of the manor, and also the return of office was not sent into the King's Bench, nor into the Common Pleas, which were places to try freehold, and not the Chancery, and that the king's serjeants were not called, as was necessary in the case, and also there was a charter afterwards found in the Treasury, by which J. of M. enfeoffed the said H., so the king was ousted wrongfully, and by non due process, the king reseized the said manor into his hand. And the fine of which etc. was levied in the intervening (mesne) time, that is, between the ouster of the king and the reseizure.

1   http://www.bu.edu/phpbin/lawyearbooks/display.php?id= 11815

Judgment if etc. should have execution, and he put forward the transcript of the petition of office, and of the charter (Latin begins) under the foot of the seal (Latin ends). The plaintiff said, to this that he had said that the king was ousted by non due process, he was ousted by a judgment rendered in the Chancery, and the force that he had would be the charter by which M. was supposed to have enfeoffed H., and the plaintiff wanted to aver that H. had disseised him, without this that he had anything of his feoffment; thus the fine was good. Judgment, and the plaintiff prayed execution. Shareshull JCP or CJKB said that when the king removed his hand by judgment, if he had perceived that he had had right, or another title at some time afterwards, the Scire facias should have been sued against the tenant of the land (terre tenant), to which writ he could have maintained his tenancy. Now it was true that M. to his blood divested himself entirely (deneit) by the fine, so that the one who now sued could not have another suit except such as he had taken, because he could not have a petition against the king, because the king had divested himself of the freehold. Therefore it seemed that that the averment that he tendered that M. was disseised, and (resole). A serjeant asked, when the king reseized, if he had taken his Scire facias against the tenant of the land, because he thus was ousted by non due process, would it be an answer for the tenant to have maintained that he was disseised? He said no. Shareshull JCP or CJKB (Latin begins) agreed. Therefore (Latin ends) by the reseizure of the king the fine that was levied in the intervening (mesm) time was void, as well as if the king had recovered by Scire facias, because no freehold was in M. but he was a wrongful intruder (abator) on the possession of the king, and although he had had a wife she would not be endowed, because there was nothing in him although he had been disseised by H. except only in action, which could not pass by any fine, and consequently the action was saved to the blood of M. A serjeant, to the same effect, said that if M. after the reseizure by the king had sued by petition, he could not have claimed by the fine but his ancient right, so that he could not be aided by this fine, which depended on the estate of the party himself, who could not have claimed any advantage from this. And to this that was touched,

that a petition did not lie against the king, because he had divested (demis) the freehold, it was not so, and this (seisimus) that Talbot sued by petition against the king of a lordship (Sn'res) in Wales, where he had divested himself of the freehold, and the serjeant said that if he who now sued wished, he would be aided by a petition stating the disseisin, the fine, and the whole matter. Shareshull JCP or CJKB said that it was not true as the serjeant said in the case of Talbot, because he took his petition against the king while the king was seised of the freehold, and while the petition was pending the king divested himself. And because he took it in season, it was maintained notwithstanding the demise, as an original writ against another person would be. The plaintiff said that to this that they said, that there was no judgment rendered that M. would have the manor back, and the king's serjeants were not called, but only that the Chancery commanded the Escheator to remove his hand, and the petition of M. that the king do right and reason, and not to have the livery of the manor, to this the plaintiff said that in the petition there was enough and sufficient matter. (Latin begins) To which the whole Court agreed (Latin ends). And to this that he had said that the king's counsel was not called, the plaintiff could not compel (arcter) the king to call them, nor to try his right in another manner than he did, or wanted; therefore it seemed to the plaintiff that the estate of M. after the livery was enough in accordance with the law, and the judgment in the Chancery good enough. And to this that had been said, that the plaintiff would not have execution then which would be the force of the remainder, because he had found a charter of feoffment made to H. by M., the plaintiff wanted to aver that the estate of H. was by disseisin, without this that he ever had anything of the gift of M. Ready etc. (Latin begins) And the other side said the contrary. And note (Latin ends) that this was pending from the octave of St. Michael until the fourth of the morrow of All Soul's (Lendemain des alme). And note, a day was given to the fortnight of St. Martin. And note, that in a Scire facias, because this was only to put a judgment in execution, the Justices could give a day at will. (Latin begins) More of this matter below (Latin ends).

Y.B. Ass. 29 Ed. III, f. 145, pl. 43 (K.B. 1355)[1]

   Trove fuit per un enquest doffice &c. que un manner fuit done a un home et a sa feme pur lour vies, & que le baron aliena, per que cestuy en la remainder enter, & que fuit un sote .s. un foole, de que &c. le roy fuit seisi &c. & puis le baron morust, per fors de quel feme suit daver le manner hors del main le roy, & en le Chauncery fuit tend' daver la reversal doffice pur le roy &c. per que briefe issist al vicount &c. de faire venir pais devant certein persons assign' per comission, et oustre de garnish la gardein del manner &c. de venir a mesme le jour &c. ou le vicount retorn' que il garnish le gardein &c. et auxi son lieu t's &c. queux ne viendront pas, et non obstante lenquest prise &c. & tout trove ut supra &c. et tout mander en bank le roy, our per assent execution fuit agard al feme &c. et per Shard fuit dit quant un record' vient un foits en banke le roy ceo ne viendra iammes hors &c.

---

1   Abridged in Fitz. Abr., tit. *Livery*, pl. 10.

Seipp's Abridgment, No. 1355.221ass[2]

   It was found by an inquest of office that a manor was given to a man and his wife for their lives, and that the husband alienated, so that the one in the reversion entered, who was an idiot (un sot), that is, a fool, of whom etc. the king was seised. And then the husband died, by force of which she sued to have the manor out of the king's hand, and in the Chancery it was tendered to have the reversion of office for the king etc. Therefore a writ issued to the sheriff to make a jury (Pais) come before certain persons assigned by commission, and further to garnish the guardian of the manor etc. to come on the same day, where the sheriff returned that he had garnished the guardian etc. and also his lieutenants etc., who did not come, and notwithstanding the inquest was taken, and all was found as above etc, and all was sent into the King's Bench, where by assent execution was awarded to the woman. And it was said by Shareshull CJKB that when a record came once into the King's Bench, this would never come out etc.

---

2   http://www.bu.edu/phpbin/lawyearbooks/display.php?id=12690

Y.B. Trin. 38 Ed. III fo. 14. (C.P. 1364)[1]

Seipp's Abridgment, No. 1364.069[2]

  H. of C., Earl of D., brought a writ against R. of C., who prayed aid of the king, because the king had given the manor that was in demand to his ancestor in fee tail, saving the reversion to himself and his heirs, and the aid was granted. And he sued in the Chancery to try the warranty to expedite (in hast de) his suit. And when the warranty was tried, they pleaded to the action of the demandant (plaintiff), so that the king was apprised by their plea that he did not have the right to recover. Therefore counsel came to the bar and showed a writ to the Court for the tenant (defendant), by which the king had sent his will to the Justices, which stated the whole case, how they had (esploit) in the Chancery, and commanded them (Latin begins) that they supersede all (Latin ends). Therefore Thorp CJCP commanded the tenant (defendant) to go away (aller a Dieu). And Thorp CJCP said that if one prayed in aid of the king, and had a warranty against the king, the parties would come into the Chancery, and there the warranty would be tried between them, and when the warranty was tried, then they would plead to the action in the same place, because otherwise by assent between the demandant (plaintiff) and the tenant (defendant) the king could be put to loss to compensate to the value by force of the warranty, where perhaps the demandant (plaintiff) did not have the right to recover. And in case they pleaded to the country (Pais), then they would surcease in Chancery, and the king would send the Court a writ to proceed to take the inquest.

---

1  Abridged in FITZ. ABR., tit. *Ayd de roy*, pl. 49.

2  <http://www.bu.edu/phpbin/lawyearbooks/display.php?id=13066>

Y.B. Trin. 13 Ed. IV fo. 8, pl. 1 (Ch. 1473)[1]

Seipp's Abridgment, No. 1473.001[2]

 and then it was rehearsed that the course of the Court (place) is (that) when an issue is taken on a Traverse, etc. that this Court will make the Venire facias returnable in King's Bench, so that there they can have Venire facias sicut alias, etc and the opinion of the Court was that this Court of the Chancery cannot make the Allias (Venire facias sicut alias), because they (Chancery) cannot record here 'that the sheriff did not send the writ' (quod vicecomite non mandavit breve) in King's Bench, so the Alias (Venire facias sicut alias) ought to be (awarded) in (King's) Bench, etc.

1   Abridged in Fitz. Abr., tit. *Prerogative*, pl. 8.

2   http://www.bu.edu/phpbin/lawyearbooks/display.php?id=20081

Y.B., Mich. 21 Hen. VII, f. 35, pl. 44 (K.B. 1505)

   Un office fuit travers en le Chancer', & mis en
Banc le Roy destr' trie. ... Si Jugement serra done.
Quære. ¶ Fineux [C.J.]. Quand le travers est tend'
en Chancery, ils n'ont pouvoir a trier c' la: &
quand il est trie icy, nous ne sumus forsque
Justices de Nisi prius en man', & ne pouvons don'
Jugement, mes ceo remand' al' Chancery; & jeo ne
scay quel advis il aver' del' Jugement do' icy. ...
¶ Fineux [C.J.]. Si le title le Roy est trove encont'
luy, Jugement ser' doner icy, & les mains le Roy
serra amouvez. ...

*The Case of the Abbot of Strata Mercella*, 9 Coke Rep. 24, 30-33, 77 Eng. Rep. ___, ___ (K.B. 1591)

**[9 Coke Rep. *30b]** ... there are divers manners of trial allowed by the common law, beside the said three mentioned in the argument of this case, that is to say, of matters in fact by jurors; of matters in law by the Justices; and of matters of record by the record itself. As in treason the trial of one who is a Peer of the realm, *i.e.* a Lord of the Parliament, shall be upon an indictment of treason or felony, tried by his Peers, without any oath, but upon their honours and allegiances; but in an appeal at the suit of a subject they shall be tried *per probos & legales homines juratos, &c.* 10 E. 4. 6. b. &c. customs and usages of every court shall be tried by the Judges of the same court, if they be pleaded in the same court, 11 E. 4. 2. b. In Dower or Appeal brought of the death of her husband, or in Assise brought by a woman who was the wife of B. if the tenant or defendant pleads that the husband is living, the trial shall not be by jury, but by the Justices, upon proofs made before them, for greater expedition, 6 E. 3. 29. 17 E. 3. 30. 43 Ass. p. 26. 8 H. 6. 23. a. 33 H. 6. 8, 9, 10. Diversity of Courts 119. 36 Ass. 5. *Vide* 39 Ass. p. 9. 43 Ass. p. 4. In a writ of Error to reverse a fine for nonage, or in an *Audita querela* to reverse a recognizance or statute for nonage, there the age shall be tried by the inspection of the Justices, and not by the country; for that which Judges of record do as Judges, shall not be tried by jury. If an infant appears by attorney, it is error, but it shall be tried by jury, and not by the Justices; for the making of the warrant of attorney is the act of the party without examination of the Justices; and yet the appearance by attorney is recorded by the court, and therefore if the plaintiff makes attorney in court, and the defendant pleads that the plaintiff is dead, and one appears and says, he is the plaintiff, which is denied by the other party, the Justices shall adjudge if he who now appears be the same person who before made an attorney in court; and therewith agrees 34 H. 6. 43. If the tenant in a real action vouches **[9 Coke Rep. *31a]** A. as heir within age, or if the tenant for life be impleaded, and he prays in aid of A. in reversion within age, and prays that the parol may demur, &c. in both cases, if the demandant replies that he is of full age, it shall not be tried by the country for the great delay to the demandant; but a writ shall be awarded to the Sheriff, commanding him *quod ve. fa.talie die præd' A. ut per aspect' corporis sui constare poterit præfat' Justic' nostris si præd' A. sit plenæ ætat', necne, &c. Vide* 17 E. 2. Accompt 121. 33 E. 3. Accompt 130, &c. Maihem may be tried by inspection of the court, 28 Ass. 5. 21 H. 7. 33. b. 11 E. 4. 2. If question be made if these be the summoners or viewers which appear, it shall be tried by the examination of the Justices, 33 H. 6. 10. a. Earl or not Earl, Baron or not Baron, shall not be tried by jury nor by the Justices, but by the King's writ, as appears in the Countess of Rutland's case, in the Sixth [*i.e.*, Fifth] Part of my Reports. 35 H. 6. 46. a. &c. 19 E. 4. in a plea of alien born, the league between the King and the sovereign of the alien shall be tried by the record of the Chancery, for every league is of record. And generally all matters of record shall be tried the record itself, and not by jury, or otherwise, 19 H. 6. 52. 9 H. 7. 2. a. 5 E. 4. 3. a. 16 H. 7. 3. 1 H. 7. 29. a. Plow. Com. 231. a. If ancient demesne be pleaded of a manor and denied, it shall be tried by the record of the book of Domesday in the Exchequer, but if issue be taken, that certain acres are parcel of the manor, which is ancient demesne, it shall be tried by Jury; for it cannot be tried by the said book, 22 Ass. 45. But *vide* 44 E. 3. 32. a. in an attachment upon a prohibition they were at issue, if the suit in Court-christian was for tithes, or for rent reserved; and it was tried by jury, and not by the rolls of the Bishop, for they are not of record, 34 H. 6. 49. a. 9 E. 4. 43. and thereiwth agrees 44 E. 3. 32. a. and probate of a will shewed forth under the seal of the ordinary, yet the other party may plead, that he who is dead died intestate, as it is held in 44 E. 3. 16. a. So if issue be taken upon the probate of a will, or if administration was committed (although they shew the Bishop's letters testimonial), it shall be tried by jury; and therewith agrees 13 El. Dy. 294. b. *Vide* 21 H. 6. 24. a.

When a man is found ideot from his birth by office, he who is so found ideot (falsely as he supposes) may come in person into Chancery before the Chancellor, and pray that before him and such Justices or sages of the law, which he shall call to him (and are called the King's counsel) he may be examined, if he be ideot or not; or his friends may sue a writ out of the Chancery, returnable in the Chancery, to bring him into the Chancery, *ibid' cor' nob' & consilio nostro examinand';* and if it be found upon such examination, that he is no ideot, the office found thereof, and the whole examination which has been made by force of the writ, or the King's commission is utterly void, without any traverse, **[9 Coke Rep. *31b]** *Monstrans de droit*, or other suit, as appears by the Register & F.N.B. 233. *Vide* 16 E. 3. Livery 30. *Nota lect'*, now by the statute made *an'* 32 H. 8. c. 46. ideots and their lands are in the survey of the Court of Wards, &c. An apostate shall be certified by the Abot, or other religious governor to whom he owes obedience. F.N.B. 233. Register 267. a. In some cases, as in general bastardy, excommengement, loyalty of matrimony, profession, and divers other ecclesiastical matters shall be tried by the certificate of the Bishop. In Appeal, and upon approvement, the defendant in some cases may plead Not guilty, and try it with the plaintiff by combat, or battle in proper person before the Justices, 17 Ass. p. 1. 19 H. 4. 3. So in a writ of right the tenant may join issue upon the mere right, and try it by combat or battle by his champion, with a freeman the champion of the demandant (and not in person) before the Justices, 9 E. 4. 35. a. 1 H. 6. 6. b. 3 H. 6. 55. b. If it be in question whether the Sheriff made such a return, it shall be tried by the Sheriff, 9 H. 4. 1. a. b. trial by certificate of the Sheriff, upon a writ directed to him in case of privilege, if on be citizen or foreigner, 10 H. 6. 10. If a question be made if such a one be Sheriff it shall be tried by the examination of the Sheriff himself, 10 H. 4. 7. b. yet he is made by letters patent of record, and therefore it may likewise be tried by record, 32 H. 6. 26. b. A return made by the Under-sheriff, if it be denied, shall be tried by the Under-sheriff, and the Sheriff cannot disavow it, if he confess him to be his Under-sheriff. 10 H. 4. 7. b. If an approver says that he commenced his appeal before the Coroner by duress, it shall be tried by the Coroner, and if the Coroner denies it, he shall be hanged, 12 Ass. 29. 12 E. 3. Coro. 118. Trial if the statute shewed forth be the true statute or not, shall be by examination of the Mayor and Clerk of the statute who took the statute, and not by jury, F.N.B. 104. a. Regist. 27 E. 3. 42. [*i.e.*, 49]. Cust[om] of London shall be tried by the Mayor and Aldermen, and certified by the mouth of the Recorder, 5 E. 4. 30. 21 E. 4. 16. In an assise the tenant says that the lands are seised in the King's hands, it shall be tried by the examination of the escheator, 9 H. 4. 1. 38 Ass. 16. If one in avoidance of an utlagary alledge, that he was in prison at *Bourdeaux ultra mare, in servito Majoris de Bourdeaux*, it shall be tried by the certificate of the Mayor, 4 E. 4. 10. And in like cases such trials shall be by the certificate of the Marshal of the host, 21 E. 4. 10. Lit. 21. F.N.B. 85. and by the Capt. of the Chalice, 21 E. 4. 11. 1 H. 7. 5. by a messenger of the a thing done beyond the sea, as in Bartie's case, 2 El. 176. *Vide* 10 H. 4. 3. At the *Petit cape*, the tenant said that he was imprisoned 3 days before the default, and 3 days after, it shall be tried by examination of the attorney 13 R. 2. Examinat. 22. Not attached by 15 days in Assise, shall not be tried by jury, but by examination of the Bailiff; so that the tenant was not summoned *secundum legem terræ*, shall not be tried by jury, but by wager of law, and **[9 Coke Rep. *32a]** wager of law countervails a jury; for the tenant shall make his law *de duodecima manu, i.e.* eleven beside himself, (and that for to avoid delay) unless it be against a corporation, as may and commonalty, for then it shall be tried by the country for necessity, because he cannot wage law. In a writ of deceit, upon a recovery by default, the trial shall be, if the judgment was given upon the *Petit cape*, by the summoners, if upon the *Grand cape*, by summoners, pernors, or viewers, and not by the country, 48 E. 3. 11. b. So if a recovery by default in a real action be pleaded, to which the other says, not comprised, it shall not be tried by jury, but by the summoners and viewers, 10 H. 4. 7. and yet there is no remedy if they say falsely; and therefore *ubi est majus periculum, ibi cautius est agendum*. The cause of challenge shall be tried by two triers to be appointed by the

justices, 9 E. 4. 5. b. 15 E. 4. 24. a. 4 E. 4. 18. 18 E. 4. 18 a. 16 E. 4. 7. b. 14 H. 7. 1. b. 19 H. 6. 48. b. 20 Ass. 15. 7 H. 4. 46. a. But trial of any of the grand jury should be taken before four knights. Also trial may be in debt upon a simple contract, detinue, &c. either by wager of law of the defendant himself, or by jury at the defendant's election. Vide 30 Ass. p. 19. Trial by jury of attornies of the Common Pleas and the Exchequer. As to to divers other trials, as 1. *Per medietatem linguæ*. 2. *Per primos juratores & alios, & per primos* only, upon not comprised and certificate of assise. 3. By jury with witnesses adjoined. 4. By trial by grand assise, above the number of 12, that is to say by 16, &c. 5. By trial in Attaint by 24. I have omitted these and divers other the like, because they are trials by jurors, and for them *vide* 22 E. 3. 14. the statutes of 25 E. 3. Stat. Staple c. 8. 27 E. 3. Stat. Staple, c. 8. 21 H. 6. 4. 28 E. 3. c. 14. 2 H. 5. c. 3. 8 H. 8. [*i.e.*, 6] c. 28. The stat. of York, cap. 2. 43 E. 3. 2. 44 E. 3. 34. 11 Ass. p. 19. 7 Ass. 20. 18 Ass. p. 11. 29 Ass. 57. 40 Ass. 34. 30 E. 3. 8. b. 7 H. 4. 4. 5 H. 7. 8. b. 4 Ass. 19. 22 Ass. 16. 29 Ass. 7. 31 Ass. p. 6. 38 Ass. 4. 40 Ass. 4. 48 Ass. 1. 5 H. 5. 1 H. 6. 5. 4 H. 6. 28. 12 H. 4. *& cætera patent*. Concerning trials by particular custom, I wholly omit them on purpose. It appears by ancient records, as well before the Conquest as since (for no credit is to be given to conjectures) that then there was another manner of trial in criminal causes, and that was called *Ordalium*, and in the Saxon language *Ordel*, which is as much as to say, *expers criminis;* for *or* in the said language is privative, and *del* is part, *i.e. no party*, or *not guilty*, and then the defendant being arraigned, and pleading not guilty, might choose whether he would put himself [**9 Coke Rep. *32b**] upon God and the country, which is upon the verdict of twelve men (as they do to this day); or upon God only, and therefore it was called *Judicium Dei*, presuming that God would deliver the innocent, *sc.* if he was of free estate, then *per ignem; sc.* to pass over *novem vomeres ignitos nudis pedibus;* and if he escaped *illæsus*, then he should be acquitted, and if not, he should be condemned; *& si pars rea fuit servilis conditionis*, then he might put himself upon the trial of God, *sc. per aquam*, and that in divers manners all which appear in *Lambard*, *verbo ordalium*, with all the superstitious vanities appertaining to it: and thereof Glanvil wrote, who wrote in the time of H. 2. lib. 14. cap. 1. & 2. & 17 *Regis Johannis in Turri London' membr' 25. Rex Petro de Scudamor & aliis, &c. mandamus vobis quod conveniatis una cum vicecom' nostro Winton' ad diem & locum competentem, et tanquam Justiciarii nostri capi faciatis judicium ferri a Robin' fre' Petitpas, quod ei adjudicatum est per Justiciarios nostros itinerantes tempore interdicti, et tunc capi non potuit quia appellatus fuit de morte hominis, et cum legum inde ceperitis, faciatis inde quod judicium dederit, mandamus enim vicecom' nostro Wintoniæ, &c.* This manner of trial was called *Vulgaris purgatio*, and utterly forbid by the canons of the church, as temptations of God, and not lawful trials, and that they were invented *fabricante diabolo: et in gloss. dicitur, vulgaris purgatio prohibetur, quia fabricante diabolo est inventa, cum sit contra præceptum Domini, non tentabis Dominum Deum tuum.*

  And afterwards the said trial called *Ordel, viz. judicium ignis et aquæ*, was taken away by Parliament: and that appears Rot. Pat. *anno* 3 H. 3. membr. 5. For the record says, *Provisum fuit per regem et concilium, &c.*

  And this was the true manner of the said trial of *Ordel:* and although it was first forbidden by the canons, yet it remained in use within this realm, till it was utterly taken away by authority of Parliament. And *Monomachia, i.e. Duellum* is also forbid by the canons, but yet forasmuch as it is not taken away by Parliament, it (in some case as appears before) remains even to this day. Of this manner of trial by combat or battle, not only Glanvil writes lib. 2. cap. 3, 4, & 5. as he writes also of *Ordel*, but Bracton, lib. 3. Tractat. 3. cap. 21. fol. 140. And Briton, cap. 22. writes only [**9 Coke Rep. *33a**] of the trial by battail, and not of ordel, because *that*, when they wrote, was utterly taken away and condemned. Vide Deuter. cap. 18. ver. 10. all which (because many have erred in this point of antiquity) I thought worthy to be imparted to the studious reader.

*Wikes's Case*, Lane 54, 145 Eng. Rep. ___ (Ex. Ch. 1609)

   In the *Exchequer* Chamber by English Bill this case was depending, and argued before all the Barons at *Serjeants Inne* in *Fleetstreet*, *viz.* the King exhibited an Information against *Wikes* for entering into divers parcels of land, and *Wikes* pretending that he had good equitie prayed his relief by English Bill, in the *Exchequer* Chamber, and the case upon the said Bill was this: *Graunt* made a lease for years to one *Somerfield* and *John Wintor* in Trust, and for the benefit of the wife and Children of the lessor rendring rent, and after *Wintor* one of the Lessees, and also *Graunt* who was the Lessor, were attainted of the Gunpowder Treason, and *Wikes* married the wife of the Lessor, and entred, and upon this information he prayed relief in behalf of his wife and Children by this English Bill: and first it was agreed by all the Barons, that the King by the course of the Common Law had the moitie of the land, and no more by the attainder of *Wintor*, and that *Somerfield* the other Lessee, shall be Tenant in common with the King, but what remedy he should have if the King took all the profits they agreed not. Secondly, they agreed by the admittance of *Wikes* his Councel, that the King as to the moity which came to him, shall not be ordered in equity ta [*sic*] perform the trust reposed in *Wintor*, for the wife of the Lessor, for the King cannot be seised to another mans use, no more can his estate be subject to any trust at this day, as the Attorney general had said clearly, which the Court granted: but *Brock* of Councel with *Wikes* seemed not to be satisfied, but that the King ought to execute such trust by equity; but *Tanfield* chief Baron said, that before me at another day, you were content to be concluded, as to this point: that there is no equity against the King. Thirdly, it was debated, if in this case the King should have the other moity, which was in *Somerfield* by equity, for clearly, if the lease had been made in trust, for the benefit of the Lessor himself, the King should have it by his attainder, and then what difference, it being made for the benefit of the wife of the person attainted, for her husband might have disposed of it, being a trust only of a Chattel as he might have done of a Chattel, whereof the wife was possessed, and he might have wholly released this trust, and by consiquence he might forfeit it by his attainder; whereunto *Snig* and *Altham* Barons agreed, and by *Bromley* his release shall binde but during his life: the Attorney general said, that he might release all. *Brock* it should be mischievous **[Lane \*55]** that his release of this trust, should bar the wife of her trust after her husbands death; for admit that a man make a lease to *A.* to the use of his wife for 100 years, if she shall so long live, and this for a joynture for his wife, can her husband prejudice her of this joynture by release of the trust, as if he should say no, and then *a fortiori* in the case here, for the trust is for the wife and children, and the trust for the children cannot be released by the father, and consequently not forfeited by him: by the Court there is no such Bill depending before us, which demands any thing for the King, and the Bill which is here exhibited by *Wikes* prayes nothing but one moity of the term, *viz.* that which in Law belongs to *Somerfield*, which moity by the Common Law we cannot take from him, and therefore we will leave you to sue in the office of Pleas, according to the course of the Common Law in the name of *Somerfield*; and therefore they gave no resolution, if by equity the husband shall forfeit a trust, which he had for years in the right of his wife.