UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL F. WASSERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1005 (RWR) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Defendants, through counsel, the United States Attorney for the District of Columbia, respectfully file this reply memorandum in response to plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pltf's Opp."). In his Complaint, plaintiff alleged that United States Park Police Officer Denise Rodacker, while acting under color of law, "assaulted, battered and imprisoned [him] against the laws of the . . . District [of Columbia] and the Constitution of the United States."  Complaint ¶ 2.  The common law tort claims are only proper against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 et seq.  In order to pursue a claim under the FTCA, however, plaintiff first must exhaust his administrative remedies.  Plaintiff has not done so, and thereby deprives the Court of jurisdiction over the common law claims.  With respect to plaintiff's constitutional claims, Officer Rodacker is entitled to qualified immunity for actions taken in her individual capacity.  Therefore, plaintiff has failed to state a claim upon which relief can be granted, and the constitutional claims should be dismissed.

## I. FACTUAL BACKGROUND

On February 20, 2005, United States Park Police ("USPP") Officer Denise Rodacker was on routine patrol in Montrose Park, in the northwest quadrant of Washington, D.C. See Motion to Dismiss, Exhibit 1 (Arrest/Prosecution Report). While on patrol, Officer Rodacker observed two dogs running without leashes. Id. The individual who was with the dogs was Michael Wasserman ("plaintiff"). Plaintiff glanced in the direction of the officer and turned down a walking path. Id. The two dogs followed him. Id. District of Columbia Municipal Regulation §24-900.3 provides a criminal penalty for permitting a dog to run at large without a leash in the District of Columbia, unless it is within the boundaries of an official city recognized dog park.[1] Therefore, Officer Rodacker walked down the path behind plaintiff to address this violation of the law. Id. Plaintiff then began walking very fast, creating a distance of approximately 100 feet between him and the officer. Id. Officer Rodacker had to run to get closer to plaintiff. Id. She called out for him to stop. Id. Plaintiff continued walking away while yelling out over his shoulder, "I don't want to talk to you." Id. Officer Rodacker demanded that plaintiff stop to address her. Id. Plaintiff shouted, "I don't have to talk to you and continued to briskly walk away from her. Id. Officer Rodacker gave plaintiff a final opportunity to comply with her orders, and told him to "Stop now." Plaintiff did not stop, but at this point, he was within arm's reach of Officer Rodacker, so she reached out and took hold of his left upper arm. Id. Plaintiff attempted to pull his arm out of the grip of Officer Rodacker, id., and Officer Rodacker had to forcefully pull plaintiff's arms around to his back to secure them properly. Officer Rodacker

---

[1] In addition, National Park Service Regulation 36 C.F.R. §2.15(a)(2) requires that, while on NPS property, all pets be restrained on a leash not exceeding six (6) feet at all times.

then placed plaintiff under arrest for violating D.C. Municipal Regulation 24-900.3, "Dogs Off Leash,"[2] and D.C. Code §22-405, "Assault on a Police Officer."[3]  Id.  Plaintiff was transported to USPP District 3, Rock Creek Park Substation, for processing.  Id.

On Monday, February 21, 2005, plaintiff appeared for presentment before a District of Columbia Magistrate Judge.  He was arraigned on two counts of "Dogs Off Leash," in violation of 24 D.C.M.R. §900.3.  The Assault on a Police Officer charge was "no papered," and a court date was set.  On May 23, 2005, plaintiff entered into an agreement with the District of Columbia Attorney General's Office in which plaintiff posted a security and forfeited his right to seek adjudication on the Dog Off Leash charges.[4]  See Motion to Dismiss, Exhibit 2 (District of

---

[2] Title 24, District of Columbia Municipal Regulation, Section 900.3 provides:

> No person owning, keeping or having custody of a dog in the District shall permit the dog to be on any public space in the District, other than a dog park . . . unless the dog is firmly secured by a substantial leash.  The leash shall be held by a person capable of managing the dog.

Title 24, District of Columbia Municipal Regulation, Section 900.9 provides:

> Any person violating an provision of §§ 900.1 through 900.6 shall be punished by a fine of not more than three hundred dollars ($300), or by imprisonment not exceeding ten (10) days.

[3] Title 22, District of Columbia Code, Section 405(a) provides:

> Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia . . . shall be fined not more than $5,000 or imprisoned not more than 5 years, or both.  It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

[4] The "Post-and-Forfeit Procedure" permits a person charged with certain misdemeanors to "post and forfeit an amount as collateral . . . and thereby obtain full and final resolution of the criminal charge."  5 D.C. Code § 335.01.

Columbia Superior Court Post and Forfeit Receipt dated May 23, 2005).

## II. ARGUMENT

### A. Plaintiff's Common Law Claims Are Barred by the Federal Tort Claims Act

1. Plaintiff Is Not Entitled to a Jury Trial

In his opposition, plaintiff argues that the Federal Tort Claims Act does not apply to this matter because the Act deprives him of the Seventh Amendment right to a jury trial. See Pltf's Opp. at p. 3. Plaintiff is incorrect.

Title 28, United States Code, Section 2679(d)(1) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added). When the Attorney General or his designee certifies that an individually-sued federal defendant was acting within the scope of his or her employment, it has the following two effects: (1) it requires the substitution of the United States for the federal employee as the defendant in the lawsuit for tort allegations; and (2) it converts the lawsuit into an action against the United States under the Federal Tort Claims Act ("FTCA"). See 28 U.S.C. §§ 1346(b), 2671 et seq.; see also Haddon v. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995); Vanover v. Hantman, 77 F.Supp.2d 91, 97 (D.D.C. 1999).

The FTCA provides that:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of

>property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant . . . .

28 U.S.C. § 1386(b)(1). Further, the FTCA provides that claims against the government "*shall* be tried by the Court without a jury." 28 U.S.C. §§ 2671 et seq. (emphasis added). Moreover, the Supreme Court has stated that "[t]here is no right to a jury trial under the Tort Claims Act." United States v. Neustadt, 366 U.S. 696, 701 n.10 (1961); see Carlson v. Green, 446 U.S. 14, 29 (1980)("The FTCA allows neither for a jury trial nor for punitive damages."); Pate v. United States, 328 F.Supp.2d 62, 77, n.17 (D.D.C. 2004)("[T]he United States Code forbids jury trials on claims brought under the provisions of § 1346 if the FTCA, other than claims brought under (a)(1), which is not applicable here."); O'Connor v. United States, 269 F.2d 578, 585 (2d Cir. 1959); Hamm v. Nasatka Barriers Inc., 166 F.R.D. 1, 2 (D.D.C. 1996).

Although the statute requires and case law establishes that an FTCA claim can be tried without a jury, plaintiff claims that "[t]he appropriate remedy is to hold that[,] where a claimant has not waived the right to jury trial, the exclusivity and substitution provisions of the FTCA do not apply." Pltf's Opp. at p. 3. Despite plaintiff's difficulties with the statute as drafted, Congress has determined its proper application.

The FTCA is a limited waiver of sovereign immunity. Hence, the Supreme Court has held that "the United States, as sovereign, is immune from suit [unless] it consents to be sued[,] . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 161 (1981) (internal quotations and citations omitted). Therefore, because "the Government [can]not be sued except with its own consent[,] it

c[an] lawfully impose conditions upon the maintenance of such a suit." Terminal Warehouse of N.J. v. United States. 91 F.Supp. 327, 328 (D.N.J. 1950), citing McElrath v. United States, 102 U.S. 426 (1880). The Supreme Court has determined that the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Lehman, 453 U.S. at 161; United States v. Sherwood, 312 U.S. 584, 590 (1941)(Consenting to be sued in certain circumstances is a relinquishment of sovereign immunity and therefore, must be strictly interpreted.).

Therefore, denial of jury trial in FTCA matters does not contravene the Seventh Amendment. Cf. Galloway v. United States, 319 U.S. 372, 388 (1943)(in an action to enforce a monetary claim against the United States for disability benefits due under a war risk insurance policy, the Court stated "[i]t hardly can be maintained that under the common law in 1791, jury trial was a matter of right for persons asserting claims against the sovereign" and held that the Seventh Amendment had "no application of its own force to th[e] case."). Absent full compliance with the conditions placed upon the waiver of sovereign immunity, the Court lacks jurisdiction to entertain tort claims against the United States. GAF Corp. v. United States, 818 F.2d 901, 904 and n.86 (D.C. Cir. 1987).

    2. Plaintiff Has Failed to Exhaust His Administrative Remedies

Another condition placed upon the waiver of sovereign immunity is contained in 28 U.S.C. § 2675(a), which provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim

> shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a); see GAF Corp., 818 F.2d at 904 n.7.  This requirement is jurisdictional and cannot be waived.  Hohri v. United States, 782 F.2d 227, 245-46 (D.C. Cir. 1986).  See Bellecort v. United States, 994 F.2d 427, 430 (8th Cir. 1993) ("[p]resentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimaint.").  Therefore, an action cannot be maintained under the FTCA where the complaint is filed before the administrative remedies have been exhausted.  McNeil v. United States, 508 U.S. 106, 112-13 (1993).  Moreover, procedural prerequisites in Section 2675(a) must be strictly construed because, again, the FTCA constitutes a waiver of sovereign immunity.  Lann v. Hill  436 F. Supp. 463, 468 (W.D. Okla. 1977).

Here, plaintiff has not alleged the timely exhaustion of administrative remedies as required.  See 28 U.S.C. § 2675.[5]  Therefore, he has failed to allege facts that would state a claim within the jurisdiction of this Court, and his tort claims must be dismissed.  See McNeil, 508 U.S. at 112-13 (where claimant commenced FTCA action prior to resolution of the administrative claim but before substantial progress was made in litigation, pursuant to Section 2675(a), Court dismissed claims as premature).  See also Altman v. Connally, 456 F.2d 1114, 1116 (2d Cir. 1972) ("Insofar as the complaint seeks recovery from the United States in tort, it was also deficient in that, apart from other considerations, it failed to allege the presentation of a claim to the appropriate Federal agency and a final disposition of the claim by that agency.");  Clayton v. Pazcoquin, 529 F. Supp. 245, 247-48 (W.D. Pa. 1981) (dismissing for lack of

---

[5]Notably, plaintiff failed to address this issue in his opposition to Defendants' Motion to Dismiss.

jurisdiction, inter alia, because "the complaint does not allege that an administrative claim was presented to the Federal agency"); Campbell v. United States, 496 F. Supp. 36, 38 (E.D. Tenn. 1980) ("The complaint herein is deficient, in that it fails to aver that the required administrative procedures were timely commenced and that there has been a final disposition of the administrative claim by the appropriate agency or agencies.").

### B. Plaintiff's Constitutional Claims are Barred by Qualified Immunity.

Plaintiff claims that Officer Rodacker's claim of qualified immunity should be denied. Pltf's Opp. at p. 8. However, it is well settled that a government official such as Officer Rodacker may enjoy qualified immunity from constitutional and statutory claims against him or her. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Anderson v. Creighton, 483 U.S. 635, 640 (1987); Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In developing the doctrine of qualified immunity, the Supreme Court has sought to strike a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." Anderson, 483 U.S. at 639 (quotation omitted). Recognizing that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery," Harlow, 457 U.S. at 817-18, the Court balanced those competing interests by establishing a higher threshold for holding public officials personally liable for constitutional violations. See Crawford-El v. Britton, 523 U.S. 574, 590 (1998)(The purpose of qualified immunity is to protect public officials "from the costs associated with the defense of damages actions" by rooting out meritless lawsuits at the earliest point possible in the litigation process.). For a public official to be liable

for damages, that official must have violated a constitutional right, and that right must have been "clearly established" -- "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson, 483 U.S. at 640. ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'") (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

      Numerous circuits have placed the burden on plaintiff to come forward with evidence sufficient to create genuine issue as to whether defendant's conduct was objectively reasonable in light of clearly established law. See, e.g., Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992); Washington v. Newsom, 977 F.2d 991 (6th Cir. 1992); Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499 (11th Cir. 1990); Hannon v. Turnage, 892 F.2d 653 (7th Cir. 1990); Pleasant v. Lovell, 876 F.2d 787 (10th Cir. 1989). Here, plaintiff's constitutional claims against Officer Rodacker are based upon actions the officer took while exercising her discretion as a United States Park Police Officer. While performing her discretionary functions, Officer Rodacker was "shielded from liability for civil damages insofar as [her] conduct d[id] not violate clearly established statutory or constitutional rights . . . ." Harlow, 457 U.S. 817-18. Plaintiff has not, and cannot, show that in arresting him for violating the leash law and resisting arrest, Officer Rodacker acted in a manner that was unreasonable in light of clearly established law.

      1. <u>Officer Rodacker Had Probable Cause to Arrest Plaintiff.</u>

      Although not specifically alleged in his Complaint, plaintiff now claims that Officer Rodacker had no probable cause to arrest him. Pltf's Opp. at p. 8. Probable cause is established when there are "facts and circumstances sufficient to warrant a prudent [officer to] believe that the [suspect] had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103,

111 (1975). Here, Officer Rodacker observed plaintiff walking two dogs without leashes. When Officer Rodacker attempted to stop plaintiff, he repeatedly ignored her orders. When Officer Rodacker caught up to plaintiff, she took hold of his arm. After she did so, plaintiff attempted to pull his arm away from her grasp.

Because plaintiff was walking two dogs without leashes, he was violating 24 D.C.M.R. § 900.3.[6] Therefore, plaintiff had committed a misdemeanor in Officer's Rodacker's presence. District of Columbia Code § 23-581(a)(1)(B) provides that a law enforcement officer may arrest an individual without a warrant when the officer has probable cause to believe the individual has committed or is committing an offense in her presence. The Supreme Court also has determined that a warrantless arrest of an individual in a public place for a misdemeanor, even a very minor misdemeanor, committed in the officer's presence is reasonable under the Fourth Amendment where supported by probable cause. See Atwater v. Lago Vista, 532 U.S. 318, 354 (2001). Therefore, upon observing plaintiff walking the dogs in violation of the law, Officer Rodacker had probable cause to arrest him for that offense.

In addition, plaintiff ignored Officer Rodacker's orders to stop. When she reached out and took hold of plaintiff's arm, he attempted to pull his arm away from her grasp. See Motion to Dismiss, Exhibit 1. Title 22, District of Columbia Code, Section 405(a) provides that

> Whoever without justifiable and excusable cause assaults, *resists*, *opposes*, *impedes*, intimidates, or *interferes* with any . . . member of any police force operating in the District of Columbia . . . shall be fined not more than $5,000 or imprisoned not more than 5 years, or both.

---

[6] Plaintiff also was violating National Park Service Regulation 36 C.F.R. § 2.15(a)(2) which requires that, while on National Park Service property, all pets must be restrained on a leash not exceeding six (6) feet at all times.

10

(emphasis added). The statute also provides that:

> It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he . . . has reason to believe is a law enforcement officer, whether or not such arrest is valid.

Plaintiff argues that he did not violate the statute because he simply ignored Officer Rodacker's command to stop. See Pltf's Opp. at p. 9-10. However, plaintiff was not arrested for simply ignoring Officer Rodacker's commands to stop, plaintiff was arrested because he attempted to pull his arm away from her grasp. In doing so, plaintiff resisted, opposed, impeded and interfered with his arrest, and thereby violated 22 D.C. Code § 405(a). The District of Columbia Circuit has held that citizens have an affirmative obligation to comply with the lawful orders of law enforcement, and any refusal to cooperate or obey an order constitutes interference with the performance of the officer's official duties and is an arrestable offense. Rogala v. District of Columbia, 161 F.3d 44, 53-54 (D.C. Cir. 1998).[7] Therefore, Officer Rodacker clearly had probable cause to arrest plaintiff for impeding his arrest.

    2.  There Was No Mistake of Law

Plaintiff also claims that Officer Rodacker's "[q]ualified privilege should not extend to a mistake of law." Pltf's Opp. at p. 15. Plaintiff argues that his arrest was not valid because the leash law "was adopted before the act authorizing it became effective." Pltf's Opp. at p. 13. However, plaintiff is incorrect.

Title 2, District of Columbia Code, Section 561 provides that:

---

[7] Plaintiff is wrong in claiming that defendants' reliance on Rogala v. District of Columbia, 161 F.3d at 44, is misplaced. In Rogala, as in the matter at hand, the subject improperly interfered with the officer while he was performing his duties.

11

> the publication of any document in the District of Columbia Statutes-at-Large, the District of Columbia Municipal Regulations, or the District of Columbia Register creates a rebuttable presumption:
>
> > (1) That is was duly issued, prescribed, adopted, or enacted; and
> > (2) That all requirements of this subchapter have been complied with.

Plaintiff has failed to overcome this presumption.

When the Board of Commissioners was abolished by Reorganization Plan No. 3 of 1967, its power to adopt regulations and prescribe penalties for violations thereof was transferred to the District of Columbia Council. D.C. Code Vol. 1 126, 130 (2001). This power was in effect in 1978 when the Council promulgated D.C. Law 2-153 which mandated the publication and compilation of the District of Columbia Municipal Regulations ("DCMR"). On March 6, 1979, the DCMR became legally effective. Because the regulation under which plaintiff was charged, 24 D.C.M.R. § 900.3 was published in the DCMR at the time of his arrest, it is legally effective. Therefore, there was no mistake of law in arresting plaintiff for violating the leash law. Assuming arguendo that the dog leash law was invalid, however, Officer Rodacker still would be entitled to qualified immunity because she arrested plaintiff because she believed he had violated that law. Hence, Officer Rodacker could not have reasonably believed that what she was doing violated any of plaintiff's statutory or constitutional rights. See Harlow, 457 U.S. at 817-18.

In any event, whether or not the leash law was void as plaintiff claims, see Pltf's Opp. at pp. 10-15, is not determinative because the arrest of plaintiff was not void. Officer Rodacker believed that plaintiff had committed a crime in her presence by walking the two dogs without leashes, and she attempted to place him under arrest. However, when plaintiff impeded that arrest, he committed the crime of Assault on a Police Officer. As the statute specifically states,

an individual has no right "to resist an arrest when such arrest is made by an individual he . . . has reason to believe is law enforcement officer, whether or not such arrest is lawful." 22 D.C. Code § 405. Therefore, whether or not the leash law was valid, plaintiff should not have resisted his arrest, and Officer Rodacker is entitled to qualified immunity for exercising her discretionary function and placing him under arrest for Assault on a Police Officer. See Harlow, 457 U.S. at 817.

### 3. Officer Rodacker Did Not Use Excessive Force Upon Plaintiff

Plaintiff also claims that Officer Rodacker used excessive force upon him. See Pltf's Opp. at p. 15. This is incorrect. Fourth Amendment jurisprudence has "long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. The use of force in effectuating an arrest is to be judged "from the perspective of a reasonable officer on the scene . . . [with] allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Id. at 396-397. An action will be judged unreasonable only if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions. Wardlaw v. Pickett, 1 F.3d 1297, 1303-04 (D.C. Cir 1993).

Based upon the fact that plaintiff continued to ignore Officer Rodacker's commands to stop and that plaintiff quickly walked away from her, Officer Rodacker's use of minimal force in taking hold of plaintiff's arm clearly was not so excessive that no reasonable officer would have believed it unlawful. See id. at 1304 (no unreasonable force where U.S. Marshal punched man in

jaw and chest who interfered with an arrest.).  Therefore, Officer Rodacker did not use excessive force upon plaintiff, and did not violate his Fourth Amendment rights.

Further, Officer Rodacker's actions were taken within the discretion of her position, and were fully consistent with the Constitution.  Consequently, Officer Rodacker could not have violated any clearly-established constitutional right of the plaintiff of which a reasonable person would have known, and Officer Rodacker is entitled to immunity from suit.  See Harlow, 457 U.S. at 818; see also Crawford-El, 523 U.S. at 574; McSurley v. McClellan, 697 F.2d 309, 316 (D.C. Cir. 1982); 28 U.S.C. § 1915A (calling for the Courts to screen prisoner complaints and dismiss those which fail to state a claim for relief or which seek monetary relief from a defendant who is immune from such relief).  Therefore, plaintiff has failed to state a claim upon which relief could be granted, and his constitutional claims against Officer Rodacker must be dismissed.[8]

### C. The Claim of Collateral Estoppel is Not Frivolous

Plaintiff argues that there was not "an adjudication on which to base issue preclusion," and "the res judicata argument is frivolous."  Pltf's Opp. at p. 18.  In his Complaint, plaintiff indicated that "[t]he criminal charge instituted against [him] was resolved favorably to [him] without an adjudication of guilt."  Complaint ¶ 4.  This statement was misleading.  While a

---

[8]Plaintiff argues that there were "no ground[s] for detaining him after [he was] book[ed]." Pltf's Opp. at p. 15.  However, plaintiff had been arrested for violating the leash law as well as for Assault on a Police Officer.  The crime of Assault on a Police Officer carried a penalty of up to five years.  See 22 D.C. Code § 405.  As with any other violator of this statute, plaintiff was properly detained until presentment before a Magistrate Judge of the District of Columbia Superior Court.  Plaintiff is correct in noting that "but for the felony charge of Assault on a Police Officer, [he] would have been released," Pltf's Opp. at p. 15, and because he was so charged, he properly was detained.

"post-and-forfeit" does not result in a conviction, it also is not an exoneration of guilt. Rather, in availing oneself of the procedure, one *forfeits* the right to be exonerated of the charge. Moreover, according to the terms of the statute, the procedure results in "a full and final resolution of the criminal charge." 5 D.C. Code § 335.01(a). The purpose of the doctrine of collateral estoppel is to promote judicial economy by preventing needless litigation, Consolidated Edison of NY, Inc. v. Bodman, 449 F.3d 1254, 1258 (D.C. Cir. 2006), and to mitigate the danger of surprise by precluding issues that have received the attention of the litigants. Freidenthal, Kane & Miller, Civil Procedure § 14.2 (1985). Here, plaintiff should not be able to use the post-and-forfeit procedure as both a sword and a shield. Plaintiff uses the procedure as a sword by precluding a finding of guilt in a case where there was a judicial finding of probable cause, see Defendants' Motion to Dismiss, Exhibit 9 (Gerstein Proffer), and would likely have resulted in a finding of guilt.[9] See id., Exhibit 10 (Affidavit of Michael Wasserman). Plaintiff uses the procedure as a shield by claiming that "the case was resolved favorably," and then filing a complaint alleging damages against Officer Rodacker. Plaintiff's Complaint concerns the same issues, parties and facts and those addressed when plaintiff appeared in court and posted-and-forfeited on the charges. Equity demands that plaintiff's claim be precluded.

## IV. CONCLUSION

Because plaintiff failed to exhaust his administrative remedies, pursuant to the FTCA, this Court is deprived of jurisdiction over the common law claims. Officer Rodacker is entitled to qualified immunity for actions taken in her individual capacity. Therefore, plaintiff failed to

---

[9] In an affidavit dated September 20, 2005, plaintiff admitted to walking his unleashed dogs in the park and walking away from Officer Rodacker. See Motion to Dismiss, Exhibit 10 (Affidavit of Michael Wasserman), p. 1.

state a claim upon which relief can be granted and the constitutional claims must fail. For the foregoing reasons, the summary judgment should be granted in defendants' favor.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

/s/
MARIAN L. BORUM, DC Bar #435409
Assistant United States Attorney
555 Fourth Street, N.W. - Civil Division
Washington, DC  20530
(202) 514-6531
Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 7th day of December, 2006, service of the foregoing Reply has been made by the U.S. District Court Electronic Filing System and by mailing copies thereof to:

Michael Wasserman
9355 Tovito Drive
Fairfax, Virginia 22031-3824

/s/
MARIAN L. BORUM
Assistant United States Attorney