## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____   )
                                 )
MICHAEL WASSERMAN,               )
                                 )
         Plaintiff,              )
                                 )
         v.                      )    Civil Action No. 06-1005 (RWR)
                                 )
DENISE RODACKER et al.,          )
                                 )
         Defendants.             )
_____   )
```

### MEMORANDUM OPINION

Pro se plaintiff Michael Wasserman filed this action alleging that United States Park Police Officer Denise Rodacker assaulted, battered and imprisoned him and unconstitutionally initiated a criminal prosecution against him. The defendants move to dismiss Wasserman's complaint arguing, among other things, that the court lacks subject matter jurisdiction over his common law claims, and that his constitutional claims fail because Rodacker is entitled to qualified immunity. Wasserman moves for sanctions claiming that certain contentions made in defendants' motion to dismiss do not comport with the requirements of Federal Rule of Civil Procedure 11. Because Wasserman has failed to exhaust administrative remedies for his common law claims and because Rodacker is immune from civil liability for Wasserman's constitutional claims, defendants' motion to dismiss, treated in part as a motion for summary judgment, will be granted. Because action has already been taken

-2-

regarding the only conduct that warrants consideration of sanctions, Wasserman's motion for sanctions will be denied.

BACKGROUND

Rodacker saw Wasserman walking his two unleashed dogs in a park in Washington, D.C. She began following him and told him more than once to stop.[1] Wasserman continued walking away with his dogs, and responded that he did not want to and did not have to answer Rodacker's questions or talk with her. Rodacker caught up to Wasserman and placed her hand on his left upper arm or shoulder. Rodacker claims she had grabbed Wasserman and he tried to wrench himself out her grip; Wasserman disputes that, claiming he immediately stopped and stood still. Rodacker forced Wasserman's arm behind his back, causing pain in his shoulder, handcuffed him, and placed him under arrest.

Wasserman was booked at a Park Police sub-station for assault on a police officer, D.C. Code § 22-405(a), and having dogs off leash. D.C. Mun. Regs. tit. 24, § 900.3. Because the assault charge was a felony, Wasserman was taken to the Metropolitan Police Department central cell block and held there until the next day, when he was arraigned in the Superior Court for the District of Columbia on charges of violating the dogs off

---

[1] Defendants assert that Rodacker ordered Wasserman to stop and he disobeyed her. Wasserman never disputed defendants' assertion, and it is deemed admitted. See LCvR 7(h).

-3-

leash regulation.  The assault charge was "no-papered" by the U.S. Attorney's office.

Based on these events, on February 21, 2006, Wasserman filed suit in the Superior Court alleging that on February 20, 2005, Rodacker, "acting under color of law but without actual or lawful authority, intentionally, maliciously and without privilege assaulted, battered and imprisoned [him] against the laws of the . . . District [of Columbia] and the Constitution of the United States."  (Notice of Removal of Civil Action, Compl. ¶ 2.)  The case was removed to this court and the United States was added as a defendant to the action under 28 U.S.C. § 2679(d).  The defendants filed a motion under Fed. R. Civ. P. 12(b)(1) to dismiss the complaint for lack of jurisdiction over the common law claims arguing that Wasserman has not exhausted administrative remedies.  Defendants also moved under Rule 12(b)(6) to dismiss for failure to state a claim for which relief can be granted, asserting that Rodacker enjoys qualified immunity, and that Wasserman's claims are barred by the doctrine of collateral estoppel[2] and a one-year statute of limitations.[3]

_____

[2]  Collateral estoppel, or issue preclusion, serves as a bar against subsequent litigation of issues, not claims, that have been previously determined by a court.  Defendants assert collateral estoppel because Wasserman elected under D.C. Code § 5-335.01(a) to "post and forfeit an amount as collateral . . . and thereby obtain a full and final resolution" of the two misdemeanor dogs off leash charges.  However, defendants fail to establish how by the use of the post-and-forfeit procedure, the issues raised in Wasserman's claims for civil damages here were

-4-

Wasserman has filed a motion for sanctions against defendants'
counsel based on contentions made in defendants' motion to
dismiss and the attachments to it.

DISCUSSION

I.   MOTION TO DISMISS

     A.   Common law claims

     Under the Federal Employees Liability Reform and Tort
Compensation Act of 1988, 28 U.S.C. § 2679(d)(1), "when a federal

---

previously litigated and actually and necessarily determined by
another court.  See Yamaha Corp. of Am. v. United States, 961
F.2d 245, 254 (D.C. Cir. 1992) (reciting elements required to
establish issue preclusion).  Further, defendants cite to no
authority from any court in the District of Columbia holding, and
no language in the post-and-forfeit statute suggesting, that an
individual who utilizes the post-and-forfeit procedure to avoid
criminal conviction thereby forfeits his rights to bring a civil
action against the arresting officer or the government.

     [3]  Defendants argue that because Wasserman did not file suit
on his constitutional claims stemming from his February 20, 2005
arrest until February 21, 2006, his action should be barred by a
one-year statute of limitations that should govern Bivens
actions.  See Bivens v. Six Unknown Named Agents of Fed. Bureau
of Narc., 403 U.S. 388 (1971).  February 20, 2006 was a federal
holiday, though, and Rule 6 of the District of Columbia Superior
Court Rules of Civil Procedure allowed for Wasserman's complaint
to be timely filed on the next business day following the federal
holiday.  In any event, the limitation period did not begin to
run until after he was released from detention.  See D.C. Code
§ 12.302 ("when a person entitled to maintain an action is, at
the time the right of action accrues . . . imprisoned -- he or
his proper representative may bring action within the time
limited after the disability is removed"); Fernandors v. Dist. of
Columbia, 382 F. Supp. 2d 63, 68 (D.D.C. 2005) (holding that
"imprisonment," as provided in D.C. Code § 12.302, includes post-
arrest detention (citing Dist. of Columbia v. Tinker, 691 A.2d
57, 64 (D.C. 1997) (finding that § 12.302 tolls the statute of
limitations from the moment of plaintiff's arrest))).

-5-

employee is sued for a wrongful or negligent act, the United States Attorney General, or by designation the United States Attorney in the district where the claim is brought, may certify that the employee was acting at the time within the scope of his or her employment."[4] <u>Stokes v. Cross</u>, 327 F.3d 1210, 1213 (D.C. Cir. 2003) (citing 28 C.F.R. § 15.3(a) ("The Federal employee's employing Federal agency shall submit a report to the United States Attorney for the district embracing the place where the civil action or proceeding is brought fully addressing whether the employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose . . . .")). "Upon certification . . ., any civil action or proceeding commenced upon such claim in a State court shall be removed . . . to the district court of the United States . . . [and] shall be deemed to be an action . . . brought against the United States under the provisions of this title . . ., and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). In essence, certification "converts the lawsuit into an action against the United States under the Federal Tort Claims Act." <u>Haddon v. United States</u>, 68 F.3d 1420, 1423 (D.C. Cir. 1995).

---

[4] Certification under 28 U.S.C. § 2679(d) has been made in this case and is not contested. (<u>See</u> Notice of Removal of Civil Action ¶ 3.)

-6-

The FTCA gives district courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Where the act that led to the commencement of a civil action was committed by a law enforcement officer, the FTCA applies to "any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."  28 U.S.C. § 2680(h).  However, "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ."  28 U.S.C. § 2675(a).  The FTCA's exhaustion of administrative remedies requirement is a "jurisdictional prerequisite."  Alexander v. United States, Civ. Action No. 06-1190 (EGS), 2006 WL 2788993, at *2 (D.D.C. Sept. 26, 2006); see Davis v. United States, 84 Fed. Appx. 97 (D.C. Cir. 2003) (holding that exhaustion of administrative remedies is a prerequisite to filing an FTCA claim in district court).

-7-

Instead of addressing the FTCA's exhaustion requirement, Wasserman claims that because he has not waived his right to trial by jury under the Seventh Amendment, and because the FTCA requires that claims against the government be tried by the Court without a jury, the FTCA should not apply.  However, the Seventh Amendment right to trial by jury is not applicable in cases against the United States under the FTCA once the government employee is certified as having acted within the scope of her employment.  See Osborn v. Haley, 127 S. Ct. 881, 900 (2007); Kimbro v. Velten, 30 F.3d 1501, 1509 n.4 (D.C. Cir. 1994).  As a result, since Wasserman has neither alleged nor established that he exhausted administrative remedies as required under the FTCA, his common law claims against the defendants will be dismissed for lack of subject matter jurisdiction.

    B.   Constitutional claims

    "In deciding a 12(b)(6) motion, the Court may typically consider only 'the facts alleged in the complaint[.]'" Coles v. Harvey, 471 F. Supp. 2d 46, 49 (D.D.C. 2007) (quoting Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)). However, Rule 12(b)(6) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]"  Fed. R. Civ. P. 12(b)(6).  Since matters outside of the complaint concerning the

-8-

constitutional claims have been submitted and accepted, the motion to dismiss those claims will be treated as one for summary judgment.

Summary judgment may be granted under Rule 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of demonstrating an absence of a genuine issue of material fact, while the nonmovant must demonstrate "specific facts showing that there is a genuine issue for trial." Celotex v. Catrett, 477 U.S. 317, 324 (1986). In considering whether the movant has met its burden, a court must give the nonmovant the benefit of all justifiable inferences from the evidence in the record. Littlejohn/LAM Supply Corp. v. Provident Bank, 357 F. Supp. 2d 45, 47 (D.D.C. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Int'l Action Ctr. v. United States, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified

-9-

immunity defense was developed in order to protect government officials from the burden of having to defend lawsuits based on insubstantial claims.  See Harlow, 457 U.S. at 818.  When evaluating a claim of qualified immunity from suit on a claim of a constitutional deprivation, "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  Conn v. Gabbert, 526 U.S. 286, 290 (1999); see Arrington v. United States, 473 F.3d 329, 339 (D.C. Cir. 2006).  In order for the right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In resolving the immunity question, courts assume the truth of the plaintiff's allegations in assessing whether the official's conduct violated clearly established law.  See Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

Wasserman alleges that Rodacker assaulted him in violation of the Constitution.  While the complaint fails to specify what provisions of the Constitution Rodacker allegedly violated, the defendants appropriately construed Wasserman's claims as alleging violations of the Fourth Amendment brought under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narc., 403 U.S. 388

-10-

(1971).  They claim, though, that Rodacker enjoys qualified

immunity from <u>Bivens</u> claims here.  In opposition, Wasserman

argues in essence that Rodacker violated his clearly established

and clearly known rights not to be arrested without probable

cause, not to be subject to unreasonably lengthy detention, and

not to be subject to excessive force during an arrest.

    1.    Probable cause for warrantless arrest

   "A warrantless arrest of an individual in a public place for

a felony, or a misdemeanor committed in the officer's presence,

is consistent with the Fourth Amendment if the arrest is

supported by probable cause."  <u>Maryland v. Pringle</u>, 540 U.S. 366,

370 (2003) (citing <u>United States v. Watson</u>, 423 U.S. 411, 424

(1976); <u>Atwater v. Lago Vista</u>, 532 U.S. 318, 354 (2001) ("If an

officer has probable cause to believe that an individual has

committed even a very minor criminal offense in his presence, he

may, without violating the Fourth Amendment, arrest the

offender.")).  "Whether probable cause exists depends upon the

reasonable conclusion to be drawn from the facts known to the

arresting officer at the time of the arrest."  <u>Devenpeck v.</u>

<u>Anthony</u>, 543 U.S. 146, 152 (2004).  Probable cause is found where

"the facts and circumstances within [the officer's] knowledge and

of which [he] had reasonably trustworthy information were

sufficient to warrant a prudent man in believing that the

-11-

petitioner had committed or was committing an offense." <u>Beck v.</u>
<u>Ohio</u>, 379 U.S. 89, 91 (1964).

        a.    <u>Assault on a police officer</u>

        "Whoever without justifiable and excusable cause assaults,
resists, opposes, impedes, intimidates, or interferes with any
. . . member of any police force operating in the District of
Columbia . . . shall be fined not more than $5,000 or imprisoned
not more than 5 years, or both."  D.C. Code § 22-405(a).[5]  A
valid arrest under this statute does not require that an
individual use force against a law enforcement officer.  <u>See</u>
<u>Hudson v. Dist. of Columbia</u>, Civil Action No. 02-2217 (RMC), 2005
WL 1378905, at *6 (D.D.C. June 9, 2005) (explaining that under
D.C. Code § 22-405(a), it is a crime to resist, oppose, impede,
or interfere with any law enforcement officer and that violation
of this section does not require that the person being arrested
use force).  While "the statute encompasses 'nonviolent
obstruction of a police officer in the performance of his duty,'
. . . a person who simply speaks out to a police officer, without
more, does not violate the statute."  <u>In re C.L.D., Jr.</u>, 739 A.2d
353, 356 (D.C. 1999) (quoting <u>Jones v. United States</u>, 385 F.2d
296, 298 n.2 (D.C. Cir. 1967)) (internal citation omitted).[6]  For

_____

        [5]  This was the version of the statute that was in place at
the time of Wasserman's arrest in February 2005, although this
section was amended on October 27, 2006.  <u>See</u> 53 D.C. Reg. 8610.

        [6]  The statute interpreted by this case was found at D.C.
Code § 22-505(a).  Section 22-505 was recodified in 2001 as D.C.

-12-

an individual's conduct to warrant arrest under § 22-405(a), that conduct "must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty." Id. at 357 (citing Ransom v. United States, 630 A.2d 170 (D.C. 1993), where the evidence was sufficient to establish that the defendant resisted arrest within the meaning of the statute "where, during flight, he pulled gun from waistband and turned to police officers with gun in hand"). "The key is the active and oppositional nature of the conduct for the purpose of thwarting a police officer in his or her duties." Id. Mere frustration of purpose is not enough to justify an arrest under § 22-405(a). Id. at 357-58 (holding that where juvenile ignored police officer's command to stay, used profanities, and walked away, he did not resist, oppose, or impede within the meaning of the statute).

Wasserman claims that all he did was tell Rodacker that he neither wanted to nor had to answer questions from her and continue to walk away. He says that once Rodacker caught up to him and placed her hand on his shoulder, he immediately stopped, stood still, and offered no resistance. While Wasserman's act of walking away may have been uncooperative, merely walking away from a law enforcement officer who is attempting to engage in

_____

Code § 22-405, the statute under which Wasserman was charged.

-13-

dialogue is not enough to justify probable cause for an arrest
for assault on a police officer under § 22-405(a).  See In re
C.L.D., 729 A.2d at 357.  However, Rodacker claims she grabbed
his arm when he refused her command that he stop, and that he
tried to pull his arm out of her grip.  This presents a genuine
dispute about a material fact, namely, whether he did "actively
interpos[e] some obstacle that precluded the officer from
questioning him or attempting to arrest him" under § 22-405(a).
Id. at 358.  While this dispute might preclude summary judgment
on the issue of probable cause to arrest for assault on a police
officer, it does not resolve the larger question of whether
qualified immunity shields Rodacker on any other ground for
making the arrest.

> b.    Dogs off leash

"No person owning, keeping, or having custody of a dog in
the District shall permit the dog to be on any public space in
the District . . . unless the dog is firmly secured by a
substantial leash."[7]  D.C. Mun. Regs. tit. 24, § 900.3.  A
violation of this regulation subjects the violator to "a fine of
not more than three hundred dollars ($300), or . . . imprisonment
not exceeding ten (10) days."  Id. at § 900.9.

---

[7]  This regulation has never been invalidated and it
currently appears in the District of Columbia Municipal
Regulations.  The leash regulation was most recently amended in
2005.  See 52 D.C. Reg. 9087 (Oct. 14, 2005).

-14-

Wasserman does not allege that Rodacker did not see him in a public park with two dogs that were not secured by leashes. Rather, Wasserman claims, but cites to no supporting authority, that Rodacker lacked probable cause to arrest him because the leash regulation should be found to be invalid.  Probable cause exists where an arrest is effectuated based upon a presumptively valid regulation violated in the officer's presence, even where that regulation is later determined to be invalid.  See Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (finding probable cause existed for an arrest, where the city ordinance under which petitioner was arrested was later determined to be unconstitutional, because "[a]t [the time of the arrest], . . . there was no controlling precedent that this ordinance was or was not constitutional").  When Rodacker observed Wasserman in the public park, with two unleashed dogs, the regulation under which she arrested Wasserman appeared in the District of Columbia Municipal Regulations and had not been invalidated.  In light of the uncontested fact that Rodacker observed Wasserman in violation of the existing leash regulation, she had probable cause to arrest him and committed no violation of clearly established law in doing so.

    2.   Detention

The Fourth Amendment secures "[t]he right of the people to be secure in their persons . . . against unreasonable . . .

-15-

seizures." U.S. Const. amend. IV. "An excessive length of
detention may be sufficient to violate the reasonableness
requirement of the Fourth Amendment." Chortek v. City of
Milwaukee, 356 F.3d 740, 746 (7th Cir. 2004). "[A] policeman's
on-the-scene assessment of probable cause provides legal
justification for arresting a person suspected of crime, and for
a brief period of detention to take the administrative steps
incident to arrest." Gerstein v. Pugh, 420 U.S. 103, 113-14
(1975). In addition, "the Fourth Amendment requires a judicial
determination of probable cause as a prerequisite to extended
restraint of liberty following arrest." Id. at 114. While this
judicial determination should be prompt, which "generally means
within 48 hours of the warrantless arrest," Powell v. Nevada, 511
U.S. 79, 80 (1994), it need not be immediate. See County of
Riverside v. McLaughlin, 500 U.S. 44, 53-54 (1991); see also
Atwater, 532 U.S. at 352 (holding that "anyone arrested for a
crime without formal process, whether for felony or misdemeanor,
is entitled to a magistrate's review of probable cause within 48
hours"). "In evaluating whether the delay in a particular case
is unreasonable, however, courts must allow a substantial degree
of flexibility. Courts cannot ignore the often unavoidable
delays in transporting arrested persons from one facility to
another, handling late-night bookings where no magistrate is
readily available, obtaining the presence of an arresting officer

-16-

who may be busy processing other suspects or securing the premises of an arrest, and other practical realities." McLaughlin, 500 U.S. at 56-57.

Wasserman claims, and defendants concede (see Def.'s Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") at 14 n.8), that but for the assault on a police officer charge, he would have been released after booking and would not have been held overnight. (Opp'n at 15.) He argues that his continued detention after booking cannot be justified by his arrest for violating the leash regulation. (See id.) Wasserman's initial detention was justified, given the existence of probable cause to believe that Wasserman violated the leash regulation. The fact that violation of the leash regulation was a misdemeanor and that Wasserman was detained overnight does not alone present a constitutional violation. Even though District of Columbia law or police procedures may have allowed for, or even required, Wasserman's immediate post-arrest release for violation of the leash regulation, this protection was not constitutionally required. See Bryant v. City of New York, 404 F.3d 128, 138 (2d Cir. 2005) (holding that although New York law allowed officers to issue a ticket rather than keeping defendants in custody overnight, all that was constitutionally required was that defendants not be held longer than 48 hours pending a neutral magistrate's probable cause determination); see also Atwater, 532 U.S. at 352; Chortek,

-17-

356 F.3d at 748.  Moreover, although not all detentions pending a
probable cause determination "pass[] constitutional muster simply
because it is provided within 48 hours," the arrested individual
must demonstrate that a delay of less than 48 hours pending the
probable cause hearing was unreasonable.  McLaughlin, 500 U.S. at
56.  "Examples of unreasonable delay are delays for the purpose
of gathering additional evidence to justify the arrest, a delay
motivated by ill will against the arrested individual, or delay
for delay's sake."  Id.  Wasserman makes no such showing.  Thus,
Wasserman has established no Fourth Amendment violation in regard
to his overnight detention.

    3.   Excessive force

    "[U]se of force is contrary to the Fourth Amendment if it is
excessive under objective standards of reasonableness."  Saucier
v. Katz, 533 U.S. 194, 202 (2001).  Under this standard "an
officer has the authority to use 'some degree of physical
coercion or threat thereof' during the course of an arrest, and
'not every push or shove, even if it may later seem unnecessary
in the peace of a judge's chambers,' violates the Fourth
Amendment."  Rogala v. Dist. of Columbia, 161 F.3d 44, 54 (D.C.
Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 395-97
(1989)).  The test for reasonableness "requires careful attention
to the facts and circumstances of each particular case, including
the severity of the crime at issue, whether the suspect poses an

-18-

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  "An officer will only be held liable if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." Rogala, 161 F.3d at 54 (citing Wardlow v. Pickett, 1 F.3d 1297, 1303 (D.C. Cir. 1993)). Compare, e.g., DeGraff v. Dist. of Columbia, 120 F.3d 298 (D.C. Cir. 1997) (refusing to dismiss claim of excessive force based on factual allegations that unresisting plaintiff was unnecessarily carried by officers to their destination, pressed against a police vehicle, and handcuffed to a mailbox), with, e.g., Saucier, 533 U.S. 194 (2001) (granting officer qualified immunity and finding no excessive force where during an arrest, military police officer grabbed protester from behind, dragged him by his arms to a police van and threw him in); Scott v. Dist. of Columbia, 101 F.3d 748 (D.C. Cir. 1996) (finding no excessive force was used by police officers who reasonably believed plaintiff was escaping custody and thwarted plaintiff's efforts by striking him, slamming him on the ground, placing their knees on his neck, back, and lower legs, handcuffing him and dragging him to the police vehicle).

Wasserman alleges that in conducting the arrest, Rodacker "twisted [his] left arm behind his back and forced it upward,"

-19-

which resulted in pain in his shoulder.  (Opp'n at 2, 16.)  Under
the circumstances, the force that Wasserman describes was not so
extreme that "no reasonable officer could have believed in the
lawfulness of [her] actions."  Scott, 101 F.3d at 759 (internal
quotations omitted).  Wasserman failed to comply with Rodacker's
repeated lawful orders to stop.  The action he says she took was
little different from how she described placing him in a
"compliance hold."  (See Mot. to Dismiss, Ex. 1 at 3.)  Even if
Wasserman had not previously tried to yank free from her grasp,
Rodacker's force was not excessive.  Moreover, Wasserman alleges
neither that this pain caused him to seek medical attention, nor
that he suffered an injury as a result of the arrest.  Cf.
Saucier, 533 U.S. at 209 (stating that the conclusion that the
officer had not used excessive force in arresting plaintiff was
supported by the fact that "the force was not so excessive that
respondent suffered hurt or injury").

Wasserman has not shown that there exist genuine issues of
material fact or that he is entitled to relief on his claims of
unlawful arrest and detention and the use of excessive force as a
matter of law.  Rodacker is protected by qualified immunity and
summary judgment will be granted for defendants on Wasserman's
constitutional claims.

-20-

II.  MOTION FOR SANCTIONS

"In considering a motion for sanctions, the court is given 'wide discretion' in determining whether there are . . . reasons to warrant sanctions." Brannock Assoc., Inc. v. Capitol 801 Corp., 807 F. Supp. 127, 135 (D.D.C. 1992) (quoting Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C. Cir. 1985)).  "The imposition of Rule 11 sanctions is not something the court takes lightly; Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings." Taylor v. Blakey, No. Civ. A. 03-173 (RMU), 2006 WL 279103, at *6 (D.D.C. Feb. 6, 2006) (citing Trout v. Garrett, 780 F. Supp. 1396, 1428 (D.D.C. 1991), for the proposition that "the relatively blunt instrument of sanctions against individual attorneys ought to be applied with restraint").

Wasserman argues that Rule 11 sanctions are warranted against defendants' counsel based upon six contentions made in the memorandum in support of defendants' motion to dismiss and in various attachments to that motion.  While the government has prevailed above on its major dispositive arguments concerning jurisdiction and qualified immunity, Wasserman characterizes five lesser government arguments among the parties' dueling factual and legal contentions as frivolous.  All have been carefully examined independently and in the context of this litigation. Although the government did not prevail on those arguments, none

-21-

rises to the level of sanctionable representations.  The sixth
contention about which Wasserman complains involves the only
sanctionable conduct identified.  However, that conduct has
previously been addressed and has already resulted in sanctions
being imposed.  <u>See</u> <u>Wasserman v. Rodacker</u>, Civil Action No. 06-
1005 (RWR), 2007 WL 274748 (D.D.C. Jan. 27, 2007) (striking six
exhibits to defendants' motion to dismiss).  As no further action
is warranted, Wasserman's motion will be denied.

<u>CONCLUSION AND ORDER</u>

Wasserman has failed to allege exhaustion of administrative
remedies under the FTCA and therefore defendants' motion to
dismiss his common law claims for lack of subject matter
jurisdiction will be granted.  Given that Rodacker observed
Wasserman walking two unleashed dogs, did not use excessive force
in arresting Wasserman for violation of the leash regulation, and
detained Wasserman for a reasonable time pending arraignment in
Superior Court, Rodacker is entitled to qualified immunity on
Wasserman's constitutional claims and summary judgment will be
entered for defendants.  Because defendants' sanctionable conduct
previously has been addressed, Wasserman's motion for Rule 11
sanctions will be denied.

A final, appealable Order accompanies this Memorandum
Opinion.

-22-

SIGNED this 19th day of July, 2007.


                          _____/s/_____
                          RICHARD W. ROBERTS
                          United States District Judge